# GROUND LEASE

*THIS GROUND LEASE* ("Lease") dated this 9 day of August, 2007, between Nick Karagan Elane Karexxx) _____ (hereinafter, whether one or more, "Landlord") and  Hands On Premium Car Wash, LLC, an Indiana limited liability company ("Tenant").

1.   **EFFECTIVE·DATE.**  The effective date of this Lease ("Effective Date") shall be the date of final execution of this Lease.

2.   **DESCRIPTION OF PROPERTY.**  In consideration of the mutual covenants contained herein, Landlord hereby leases to Tenant and Tenant hereby leases from Landlord the property in the City of St. John, County of Lake and State of Indiana, as legally described and shown in Exhibit "A" attached hereto and incorporated herein by reference, having frontage along US Highway 41 (commonly known as 8445 Wicker Avenue); containing approximately fifty thousand (50,000) square feet and/or one and fourteen hundredths (1.14) acres, including roads, streets, or public rights-of-way, together with (a) all rights, easements, servitudes, rights-of-way, and appurtenances belonging or appertaining thereto, (b) all right, title and interest of Landlord in and to any and all roads, streets, alleys and ways, bounding such property, and (c) all buildings and other improvements thereon, if any ("Property").

The Property shall be subject to a more definitive legal description as shall be obtained by Tenant·from an accurate ALTA/ACSM Minimum Standard Detail Survey acceptable to Tenant, at Tenant's cost.

3.   **TERM.**  The term of this Lease shall commence on the Effective Date, and unless the term is terminated sooner as provided in this Lease, shall terminate twenty (20) years after the Commencement Date, subject to Tenant's options to extend the term.

4.   **EXTENSIONS.**  Tenant shall have the option of extending the Term for four (4) additional periods of five (5) years each ("Extension(s)"), commencing at midnight on the date on which the Term or any extension expires.. Tenant shall be deemed to have exercised its option to extend, and the term of this Lease shall automatically be extended unless Tenant notifies Landlord in writing of its election not to extend this Lease at least ninety (90) days prior to the expiration of the term then in effect or any Extension thereof.

5.   **CONSTRUCTION OF PROJECT BY TENANT**.  Tenant shall complete the construction of the improvements on the Property consisting of a building approximately 7,800 square foot in size to be used for a car wash, automotive detail shop and deli restaurant (collectively, "Tenant's Intended Use") constructed according to the Tenant's plans and specifications, together with curb cuts and off-street parking and signage acceptable to Tenant, including without limitation, Tenant's identification pole sign (which may need to be a part of a development sign), building sign and directional/entrance-exit signs (hereinafter referred to as the "Project").  The entire cost and expense of the Project shall be borne and paid by Tenant, including all liability (during construction of the Project only) and property (including "builder's risk") insurance.  Tenant shall complete the Project not less than six (6) months after (a) Landlord secures the Governmental Approvals (as hereinafter defined in Section 8); (b)  Tenant is issued a building permit for the Project; and (c) the completion of the Landlord's Work; whichever is the last to

# EXHIBIT A

*D M 8-9-07*
*PWK 8-9-07*

*ENGINEERED CLEAN Air only*

occur. The excavated spoil from the Project may be stock piled on lots 1, 3 or 4 by Tenant.

6. **INDEMNIFICATION AGAINST LIENS.** It is agreed and understood that no party shall permit or allow others to permit the Property or related easements or rights-of-way referred herein to provide access to the Property to be encumbered with a lien or claim of a mechanic or materialman. Each party does hereby indemnify, protect, defend and hold the other party harmless from and against any claims, losses, demands, liabilities, suits, costs, and damages, including consequential damages and attorney's fees of counsel selected by the indemnified party and other costs of defense, incurred, arising against, or suffered by the indemnified party or its assigns as a direct or indirect consequence of the filing of a mechanic or materialman lien.

7. **RENT.** Tenant shall pay to Landlord the following rent, per annum (the "Rent"), in equal monthly installments:

   (a) **NO RENT DURING CONSTRUCTION.** Notwithstanding anything contained herein to the contrary, no Rent shall be due for the period that commences on the Effective Date and ends on the last of the following to occur (the "Commencement Date"):  (i) satisfaction of the Conditions Precedent set forth in Section 8 below, (ii) Landlord providing Tenant with fully signed Non-Disturbance and Attornment Agreements (hereinafter defined) and with a fully signed Memorandum of Lease, (iii) satisfactory title as set forth in Section 10 below, and (iv) Landlord's completion of the Landlord's Work and Tenant's timely completion of the Project.

   In the event the Commencement Date of this Lease shall not have occurred within one (1) year after the Effective Date, this Lease shall terminate and the parties shall be released from further liability.

   (b) **RENT DURING INITIAL TERM.** Tenant agrees to pay Landlord rent in equal monthly installments in advance on the first day of each and every calendar month following the Commencement Date and thereafter during the term of this Lease, as follows (hereinafter referred to as "Rent"):

|  | Annual | Monthly |
|---|---|---|
| Rent for Years 1-5: | $ 55,000.00 | $ 4,583.34 |
| Rent for Years 6-10: | $ 65,000.00 | $ 5,416.67 |
| Rent for Years 11-15: | $ 70,000.00 | $ 5,833.34 |
| Rent for Years 16-20: | $ 75,000.00 | $ 6,250.00 |

   The first payment of Rent shall be due on the Commencement Date. In the event that the Commencement Date falls on a day other than the first day of a calendar month, the Rent for the first and last months of this Lease shall be prorated.

   (c) **RENT DURING EXTENSIONS.** In the event Tenant exercises any of the Extensions, the Rent for such Extension shall be payable in equal monthly installments in advance on the first day of each and every calendar month during such Extension, as follows:

|  | Annual | Monthly |
|---|---|---|
| 1st Extension | $ 80,000.00 | $ 6,666.67 |
| 2nd Extension | $ 85,000.00 | $ 7,083.34 |
| 3rd Extension | $ 90,000.00 | $ 7,500.00 |
| 4th Extension | $ 95,000.00 | $ 7,916.67 |

8.    **CONDITIONS PRECEDENT** . Landlord hereby acknowledges that Tenant's initial plans are to engage in the Tenant's Intended Use (as defined hereinabove) and the construction of the Project according to Tenant's plans and specifications, together with curb cuts and off-street parking and signage acceptable to Tenant, including without limitation, Tenant's identification pole sign (which may need to be a part of a development sign), building sign and directional/entrance-exit signs and thereafter for any lawful use. Therefore, Tenant's obligation to pay Rent are subject to the satisfaction of the following conditions and covenants:

(a)    Landlord, at its cost and expense, shall obtain the approval of all public or governmental authorities as to all matters relating to zoning, subdivision, lot splits, development standard variances and site or development plan approval (hereinafter collectively, "Governmental Approvals"), as will permit the Tenant to operate the Property in accordance with Tenant's Intended Use and its Project. Landlord hereby covenants and agrees to file for and pursue such Governmental Approvals in good faith and with all due diligence. The cost of building permits only are Tenant's responsibility.

(b)    The water and gas mains, electric power and telephone lines and sanitary and storm sewers being located in the public right of way adjacent to the Property and available and adequate for Tenant's Intended Use. If any of said utilities are not located at the property line of the Property or are not available and adequate for Tenant's Intended Use, Landlord hereby covenants and agrees to extend same, in the public right of way or other location, to the property line, at Landlord's sole cost, within sixty (60) days after Tenant delivers its plans and specifications for said utilities to Landlord and Tenant waives all contingencies, except for utilities, but in no event later than thirty (30) days prior to the date Tenant takes vacant possession of the Property.

(c)    Tenant obtaining all necessary governmental permits, licenses, easements and approvals, of any type and from any necessary party, for Tenant's Intended Use, to which end Landlord shall execute such documents, make such appearances and do such other things as Tenant may reasonably request.

(d)    Tenant obtaining, if needed after reviewing Landlord's engineering drawing from Torringa Engineering, an ALTA/ACSM Minimum Standard Detail Survey reasonably satisfactory to Tenant bearing a legal description, made by a licensed surveyor, and showing, among other things, the area, dimensions and location of the Property to the nearest monuments, streets, alleys on all sides, the topography, the location of all available utilities in adjoining streets, alleys or property, the location of all recorded and apparent easements against or appurtenant to the Property, certifying the

---

Ground Lease    3    Hands On Premium Car Wash, LLC

applicable zoning and flood zone classifications and not disclosing any condition rendering the Property unusable, for Tenant's Intended Use.

(e)    Tenant, at it's expense but with Landlord's cooperation, shall conduct such review as Tenant deems desirable of the Property and the suitability of the Property for Tenant's Intended Use. At any time after the Effective Date, Tenant and its surveyors, engineers, soil testing companies and other agents shall have the right to enter upon the Property for the purpose of obtaining the survey, engineering studies, soil tests, and inspections as to the condition of the Property and any improvements thereon. Tenant agrees to indemnify and hold harmless Landlord against any cost, expense and damages incurred or suffered by Landlord in connection with such activities. Tenant, or its agents shall have liability insurance coverage.

(f)    Tenant obtaining ingress and egress to public thoroughfares adequate, in Tenant's reasonable opinion, for Tenant's Intended Use. Landlord shall pay for the cost of constructing the driveway to the Property and the cost of any retention pond required by the Town of St. John, Indiana.

(g)    The installation of sanitary sewer, potable water, electric, and telephone utilities stubbed to the property line of the Property.

In the event the foregoing conditions of this Lease have not been satisfied or complied with within one hundred and twenty (120) days, or if the conditions or contingencies do not meet with Tenant's approval or if they disclose matters which would make the Property unsuitable for the purposes stated in this Lease, Landlord or Tenant may, at any time after said time period, terminate this Lease. Landlord and Tenant covenant to act in good faith and use due diligence to satisfy all conditions for which they are responsible, and neither party shall have the right to terminate this Lease unless it has so performed. If Landlord elects to terminate this Lease as provided for in this section, Tenant shall have thirty (30) days after receiving Landlord's termination notice to waive, in writing, the foregoing conditions in this section. If Tenant waives the conditions in this section, the foregoing conditions are waived and the Commencement Date is triggered, provided that all other conditions precedent have been satisfied pursuant to Section 7. If Tenant does not waive the conditions in this section, this Lease will terminate and be of no further force or effect thirty (30) days after Landlord's notice of termination is received by Tenant.

9.    **SITE IMPROVEMENTS.** Landlord, at its sole cost and expense, shall perform or cause to be performed to completion, the following (hereinafter collectively referred to as "Landlord's Work"):

(a)    The installation of an eight inch (8") water main around lot 2 servicing lots 1, 3 and 4.

(b)    Storm water management facilities including sewer lines and retention or detention basins together with lift station pump and forcemain up to and including CB7 and CB3.

(c)     Sanitary sewer lines servicing lots 1-4, inclusive, with connections as specified by Torrenga Engineering and stubbed to the Property.

(d)     All lot corners shall be staked by an Indiana licensed surveyor.

(e)     The installation of all private roadways adjacent to the Property providing access to public streets and rights-of-way (with required fill), and all related curb cuts (including the INDOT specifications for the cut to Wicker Avenue), curbing and related landscaping.

(f)     The installation of electric and telephone utilities stubbed to the property line of the Property.

The Landlord's Work shall be completed no later than sixty (60) days after the satisfaction of the conditions set forth in Section 8 hereinabove.  The Landlord's Work shall be performed in a manner which is generally customary for shopping centers in Lake County, Indiana and the region utilizing customary and standard design, engineering and construction methods, standards and specifications to provide for ingress and egress to the Property.  Landlord's Work shall be in accordance with all local standards and ordinances.

10.    **TITLE INSURANCE.**  Landlord shall provide to Tenant, at Landlord's expense, (a) a current Commitment for Leasehold Title Insurance ("Title Commitment") covering the Property issued by Ticor Title Insurance Company (the "Title Company"), whereby the Title Company commits to issue to Tenant an ALTA Leasehold Policy of Title Insurance on the current form of the American Land Title Association (the "Title Policy"), in an amount equal to the fair market value of the land and building with the standard exceptions to title deleted and subject only to exceptions agreed to by Tenant in writing; and (b) true and legible copies of all instruments listed or referred to as exceptions on the Title Commitment.  Upon final execution of this Lease, Landlord shall deliver to Tenant any prior title evidence, such as a current abstract or title policy, it may have to expedite further examination of title.  If the Title Commitment discloses any encumbrances or other matters affecting title (including mineral interests) not satisfactory to Tenant, Landlord shall have thirty (30) days from the date of Tenant's notice of such defects to make a good faith effort to cure such defects and to furnish a later report showing the defects as cured or removed.  If such defects cannot be cured within said thirty (30) days, Tenant may, at its election, accept the leasehold interest with the objections or Tenant may terminate this Lease, in which case the parties shall be released from any further liability hereunder and this Lease shall thereafter be null and of no further force or effect.

11.    **NON-DISTURBANCE AND ATTORNMENT.**  Landlord will obtain from every senior landlord, mortgagee and holder of a deed of trust upon the Property within sixty (60) days after the Effective Date, an agreement in recordable form acceptable to Tenant wherein the senior landlord(s), mortgagee(s) and holder(s) of the deed(s) of trust agree not to disturb Tenant's possession, deprive Tenant of any rights and increase Tenant's obligations, under this Lease ("Non-Disturbance and Attornment Agreement").  Landlord agrees not to further mortgage or encumber the fee or its leasehold estate from the Effective Date to the date of recording of a Memorandum of Lease unless Landlord obtains a Non-Disturbance and Attornment Agreement.

Upon the failure of Landlord to provide Tenant with an acceptable Non-Disturbance and Attornment Agreement pertaining to every senior lease, mortgage and deed of trust prior to Tenant's commencement of construction of the building, Tenant may terminate this Lease.

12.    **REAL ESTATE TAXES** .  Tenant shall pay before they become delinquent real estate taxes imposed during the Term and any Extensions upon or against the Property and the building and/or other improvements constructed on the Property by Tenant ("Real Estate Taxes").  Nothing herein contained shall require Tenant to pay (a) corporation, franchise, income, estate, gift and inheritance taxes or charges imposed on rent or other similar taxes, charges or impositions which may be levied or assessed against Landlord, fee owner, or their successor in title or (b) real estate taxes on easement parcel(s).  If, for Real Estate Tax purposes, the Property is assessed as part of a larger tract of land, Landlord shall use its best efforts to cause the Property to be separately assessed and taxed.  If Landlord cannot cause the Property to be separately assessed and taxed, such assessments and taxes shall be equitably allocated.

Real Estate Taxes payable by Tenant shall be paid not later than the date on which such Real Estate Taxes become delinquent.  A receipted tax bill shall be delivered to Landlord upon request.  In the event Tenant fails to pay Real Estate Taxes within the time provided, Landlord may, after fifteen (15) days written notice, pay same, in which event Tenant shall remain liable to and obligated to repay Landlord the amount so advanced together with interest thereon at the rate of ten percent (10%) per annum.  In the event any Real Estate Taxes may be payable in installments, Tenant shall have the right to pay same as such installments fall due.  Real Estate Taxes for the year in which the Term shall begin and the year in which this Lease shall terminate shall be prorated so that Tenant shall pay only those portions thereof which correspond with the portion of said years as are within the Term, as may have been extended.

Tenant shall have the right, at its own cost and expense, to initiate and prosecute any proceedings permitted by law for the purpose of obtaining an abatement of or otherwise contesting the validity or amount of Real Estate Taxes assessed or levied upon the Property and the building and/or other improvements constructed on the Property by Tenant.  If required by law, Tenant may take such action in the name of Landlord who shall cooperate with Tenant shall fully indemnify and save Landlord harmless from all loss, cost, damage and expense incurred by or to be incurred by Landlord as a result thereof, and further provided Tenant shall, at Landlord's request, escrow or post a bond for the full amount of the Real Estate Taxes claimed pending such proceedings.

13.    **INSURANCE.**  From the Effective Date and continuing during the Term and any Extensions, Tenant shall protect, indemnify and save harmless Landlord from and against any and all liability to third parties incurred by any act or neglect of Tenant, or any of its agents, servants, or employees, in, on, or about the Property, and shall at all times at its own cost protect Landlord with commercial general liability insurance, in the amount of One Million Dollars ($1,000,000.00) combined single limit (bodily injury and property damage).  Tenant will, within thirty (30) days of written request, deliver to Landlord a certificate showing such insurance to be then in effect.

---

Ground Lease                                                    Hands On Premium Car Wash, LLC

14.   **LANDLORD'S TITLE AND QUIET ENJOYMENT** . Landlord represents and warrants that Landlord is seized in fee simple title to the Property, free, clear and unencumbered. Landlord covenants that so long as Tenant fulfills the conditions and covenants required of it to be performed, Tenant will have peaceful and quiet possession thereof. Landlord further represents and warrants that it has good right, full power and lawful authority to enter into this Lease for the Term and any Extensions.

15.   **IMPROVEMENTS AND ALTERATIONS.**

    (a)   Landlord covenants that it shall (i) immediately demolish and remove all existing, if any, in accordance and in compliance with all local, state and federal building, demolition and environmental codes, laws and ordinances(ii) deliver sole and vacant possession of the Property to Tenant, free and clear of all tenancies and parties in possession within ten (10) days after Tenant notifies Landlord that all conditions precedent have been satisfied and Tenant provides Landlord with such standards and specifications. In the event Landlord fails to perform the work required of it under this Section and deliver vacant possession to Tenant on a timely basis, Tenant, at its option, may perform such work and take such action as may be necessary to obtain such vacant possession and the costs therefore shall be deducted from Tenant's Rent.

    (b)   From and after the Effective Date, Tenant shall have the right from time to time to construct a building and/or other improvements upon the Property and to alter, renovate, add, remodel, modify, change the building as Tenant may deem desirable. The building and/or other improvements upon the Property shall be and remain the property of Tenant during the Term and any Extensions, and for a period of fifteen (15) days after the termination or expiration of this Lease. Tenant shall not be required to remove the building and/or other improvements upon the Property and Tenant's failure to do so after the expiration of such period shall be deemed to be an abandonment thereof, whereby title shall become vested in the Landlord.

16.   **LIENS.** Landlord and Tenant covenant each with the other not to permit any judgment, attachment and/or lien to be filed against the Property except for any liens permitted expressly by the terms of this Lease. Should any judgment, attachment and/or lien of any nature be filed against the Property, except as expressly permitted by this Lease, the party from whose fault or alleged debt such lien arises shall within thirty (30) days cause such judgment, attachment and/or lien to be removed by substitution of collateral or otherwise.

17.   **LEASEHOLD MORTGAGE.** Notwithstanding any other provision of this Lease to the contrary, Tenant shall have the unrestricted right to execute and deliver a mortgage, deed of trust, pledge and/or collateral assignment of this Lease ("Mortgage") as security for any indebtedness in any form whatsoever. In the event Tenant shall execute and deliver a Mortgage, and if the holder of the indebtedness secured by this Lease ("Mortgagee") notifies Landlord of the execution of such Mortgage, and the name and place for service of notices upon such Mortgage, then and in such event, Landlord hereby agrees for the benefit of Tenant and such Mortgagee from time to time:

---

(a) That Landlord will give to any Mortgagee simultaneously with service on Tenant a duplicate of any and all notices or demands given by Landlord to Tenant and no such notice to Tenant shall be effective unless a copy is so serviced upon Mortgagee.

(b) Mortgagee shall have the privilege of performing any of Tenant's covenants or of curing any defaults by Tenant or of exercising any election, option or privilege conferred upon Tenant by the terms of this Lease.

(c) Landlord shall not terminate this Lease or Tenant's right of possession for any default of Tenant if, within a period of thirty (30) days after the expiration of the period of time within which Tenant might cure such default, such default is cured to be cured by Mortgagee or, if within a period of thirty (30) days after the expiration of the period of time within which Tenant might commence to eliminate the cause of such default, Mortgagee diligently commences to eliminate the cause of such default.

(d) No liability for the payment of rent or the performance of any of Tenant's covenants and obligations of this Lease shall attach to or be imposed upon any Mortgagee, while not in possession of the Property, all such liability being hereby expressly waived by Landlord.

(e) With exception of those portions of this Lease dealing with rent and term, Landlord shall, if requested by Tenant, not unreasonably refuse to make any clarifications and/or corrections to this Lease, as may be required by Mortgagee.

(f) No provisions of this Lease as may restrict the use of the Property to less than for any lawful purpose, require the Property to be used for a particular purpose, inhibit free assignment or subletting or require or imply specified times of business operation shall be binding upon a Mortgagee in possession or its successors in interest, except Tenant, its parent, subsidiary or affiliated companies.

18. FIRST RIGHT OF REFUSAL. Landlord hereby grants to Tenant a first right of refusal to purchase from Landlord the Property. If and when Landlord decides to sell the Property and receives a bona fide offer to purchase from any third party, in writing, prior to accepting said offer, Landlord shall forward said written offer to purchase to Tenant. Tenant is hereby granted thirty (30) days after receipt of notice of such third party written offer to Landlord in which to notify Landlord of Tenant's acceptance of the terms of such third party offer to Landlord by submitting to Landlord, Tenant's written offer in the amount of the third party offeror's purchase price. This sale from Landlord to Tenant shall be consummated by closing within thirty (30) days after the date of Tenant's acceptance notice to Landlord, or such longer time as provided in Landlord's bona fide offer received by such third party. Landlord shall supply to Tenant at closing a title insurance policy in the amount of the purchase price, subject only to taxes, easements and restrictions, highways and legal right-of-way.

19. DEFAULT. In the event Tenant shall fail to pay the Rent when due or shall fail to perform any of its other obligations under this Lease, after notice of such default.

shall have been given as provided below, Landlord may as its sole and exclusive remedy elect either:

(a)    to re-enter the Property by summary proceedings or similar proceedings and re-let the Property, using its best efforts therefor, and receiving the rent therefrom, applying the same first to the payment of Rent accruing hereunder, the balance, if any, to be paid to Tenant; but, Tenant shall remain liable for the equivalent of the amount of all Rent reserved herein less the receipts of re-letting, if any, and such amount shall be due and payable to Landlord as damages or Rent, as the case may be, on the successive rent days provided above, and Landlord may recover such amount periodically on such successive days;

(b)    to terminate this Lease and to resume possession of the Property wholly discharged from this Lease; or

(c)    demand a late payment fee of Three Hundred Dollars ($300.00) per month for each failure to pay Rent.

Such election shall be made by written notice to Tenant at any time on or before the doing of any act or the commencement of any proceedings to recover possession of the Property by reason of the default then existing and shall be final. If Landlord shall elect to terminate this Lease, all rights and obligations of Tenant relating to the unexpired portion of this Lease shall cease. Within ten (10) days after receipt by Tenant of notice of election by Landlord to terminate this Lease, the parties shall by an instrument in writing, in recordable form, terminate this Lease and Tenant shall surrender and deliver to Landlord the Property, including the building and other improvements, except trade fixtures, signs, equipment and other personal property. Upon any default by Tenant in so doing, Landlord shall have the right to re-enter the Property by summary proceedings or similar proceedings.

Neither bankruptcy, insolvency, nor the appointment of a receiver or trustee shall affect this Lease so long as the obligations of Tenant are performed by Tenant, its successors or assigns.

No default hereunder shall be deemed to have occurred on the part of Tenant until thirty (30) days after written notice of such default shall have been given to Tenant, and Tenant within such time shall have failed to remedy such default. If any default by Tenant, except payment of the Rent, cannot reasonably be cured within thirty (30) days after notice then Tenant shall have additional time as may be reasonably necessary.

20.    **CONDEMNATION.** From and after the Effective Date, Tenant shall have the following rights in the event of a taking of the entire Property or any part thereof, by reason of any exercise of the power of eminent domain, including any transfer in lieu thereof:

(a)    **TOTAL PERMANENT.** In the event of a taking of the entire Property or, in the judgment of Tenant, a substantial portion as would render the balance of the Property not suitable for Tenant's use, this Lease shall terminate upon the date that possession is surrendered to the condemning authority, at which time all rights and obligations between the parties shall cease and Rent and

Ground Lease                                                      Hands On Premium Car Wash, LLC

other charges payable by Tenant under this Lease shall be apportioned. The taking of any portion of the building, twenty percent (20%) or more of the then existing parking area, or the loss of the rights of ingress and egress as then established, shall be at Tenant's election, but not exclusively considered, such a substantial taking as would render the use of the Property not suitable for Tenant's use. Notwithstanding any provision of this Lease or by operation of law that leasehold improvements may be or shall become the property of Landlord at the termination of this Lease, the loss of the building and other improvements paid for by Tenant, the loss of Tenant's leasehold estate and such additional relief as may be provided by law shall be the basis of Tenant's damages against the condemning authority if a separate claim therefor is allowable under applicable law, or the basis of Tenant's damages to a portion of the total award if only one award is made.

(b) **PARTIAL PERMANENT.** In the event of a taking of less than the entire Property or, in the judgment of Tenant, less than a substantial portion as would render the balance of the Property not suitable for Tenant's use, Tenant shall be entitled to a reduction of Rent in such amount as shall be just and equitable. In consideration of such reduction of Rent, Tenant waives any claim for damage to or loss of its leasehold estate, all of such award being payable to Landlord, who shall use so much thereof as may be necessary to restore the Property as nearly as possible to its condition immediately prior to the taking. Tenant shall have the option to perform such restoration and Landlord shall upon Tenant's election provide the whole of such award or such portion thereof as may be necessary for Tenant to accomplish the restoration. Notwithstanding any provision of this Lease or by operation of law that leasehold improvements may be or shall become the property of Landlord at the termination of this Lease, the loss of the building or other improvements paid for by Tenant and such additional relief as may be provided by law shall be the basis of Tenant's damages against the condemning authority if a separate claim therefor is allowable under applicable law, or the basis of Tenant's damages to a portion of the total award if only one award is made.

(c) **TOTAL TEMPORARY.** In the event of a taking of the entire Property or, in the judgment of Tenant, a substantial portion as would render the balance of the Property not suitable for Tenant's use, for a period of one (1) year or less, this Lease shall be suspended or tolled from the time the Property is surrendered to the condemning authority and recommence when possession is restored to Tenant. Tenant shall be entitled to the entire award granted for the fee owner, Landlord and Tenant. In consideration of such entire award, Tenant shall not be entitled to any reduction of Rent or other charges payable by Tenant under this Lease. If such taking shall extend beyond one (1) year, the taking shall, at the option of Tenant, be considered permanent and Tenant shall be entitled to all rights, damages and awards pursuant to Section 20(a) of this Lease.

(d) **PARTIAL TEMPORARY.** In the event of a taking of less than the entire Property or, in the judgment of Tenant, less than a substantial portion as would render the balance of the Property not suitable for Tenant's use, for a period of one (1) year or less, Tenant shall be entitled to the entire award granted for the fee owner, Landlord and Tenant. In consideration of such

Aug-21-2007 02:32pm   From-FIRST NATIONAL BANK OF ILLINOIS MOKENA      708-478-3834      T-731   P.013/024   F-089

entire award, Tenant shall not be entitled to any reduction of Rent or other charges payable by Tenant under this Lease.

(e)     **GENERAL.**  Should Landlord and Tenant be unable to agree as to the division of any singular award or the amount of any reduction of Rents and other charges payable by Tenant under this Lease, such dispute shall be submitted for resolve to the court exercising jurisdiction of the condemnation proceedings, each party bearing its prospective costs for such determination. Landlord shall not agree to any settlement in lieu of condemnation with the condemning authority without Tenant's consent.

Landlord represents and warrants that at the Effective Date it has no actual or constructive knowledge of any proposed condemnation of any part of the Property. In the event that subsequent to the Effective Date, but prior to the Commencement Date, a total or partial condemnation, either permanent or temporary, is proposed by any competent authority, Tenant shall be under no obligation to commence or continue construction of the building and other improvements and rent and other charges, if any, payable by Tenant under this Lease shall abate until such time as it can be ascertained that the Property shall not be affected in Tenant's sole discretion and Tenant shall be entitled to all rights, damages and awards pursuant to the appropriate provisions of this Section 20.

21.     **LITIGATION.**  In the event of litigation between the parties with respect to this Lease, the performance of their respective obligations hereunder or the effect of a termination under this Lease, the losing party shall pay all costs and expenses incurred by the prevailing party in connection with such litigation, including, but not limited to, reasonable attorneys' fees of counsel selected by the prevailing party. Notwithstanding any provision of this Lease to the contrary, the obligations of the parties under this section shall survive termination of this Lease.  Whenever Landlord or Tenant shall be in default of this Lease, and such default shall cause either party to incur any damages or expenses, such damages or expenses so incurred, with legal interest, and including penalties, costs and reasonable attorneys' fees, may be added or deducted from the next accruing rental payment(s) due.

22.     **COMPETITIVE USES.**

(a)     With the exception of the Property leased to Tenant, Landlord covenants that it will not lease, rent or permit to be occupied as Tenant's Intended Use, any premises or real estate owned, controlled, leased or occupied by Landlord, its legal representatives, successors or assigns, not presently occupied as such, within a distance of a five (5) mile radius of the Property.  For purposes of this section, the term "owned" shall also include any indirect ownership as through partnership, land trust, corporations, and the like.

(b)     Landlord does further covenant and agree, that it will not lease, rent or permit to be occupied any premises or real estate within five hundred feet (500') of the Property and owned, controlled, leased or occupied by Landlord, its legal representatives, successors or assigns, not presently occupied as such a store, adult book store, adult theater, adult amusement facility, any facility selling or displaying pornographic materials or having such displays, any use involving the use, storage, disposal or handling of

hazardous materials or underground storage tanks, or any use which creates a nuisance.

(c)   In the event that there is a breach of any of the provisions of this section, Tenant shall have the following rights and remedies, none of which shall be exclusive of the others or any other remedy otherwise available to Tenant:

   i.    Tenant may institute proceedings to enjoin the violation in its name or in the name of Landlord.

   ii.   If such conflicting use continues for a period of thirty (30) days after written notice thereof shall have been given by Tenant to Landlord, Tenant may, at any time thereafter, elect to terminate this Lease, and upon such election, this Lease shall, on the date fixed in the notice of such election, be terminated and Tenant shall be released and discharged of and from any and all further liability hereunder.

   iii.  So long as such condition exists, and Tenant has not elected to terminate this Lease, Tenant's only obligation with respect to rental shall be the payment of one-half (½) the then applicable Rent, so long as such condition shall continue.

   iv.   Tenant may hold Landlord liable for any costs and expenses, including counsel fees, sustained or incurred in connection with any proceedings instituted by Tenant to enforce the provision of this Section, and in the event Landlord does not institute and proceed diligently with suit to enjoin such conflicting use may hold Landlord liable for any and all other damages sustained or to be sustained by reason of Landlord's breach.

23.   **ASSIGNMENT OR TRANSFER BY LANDLORD OR TENANT**   .   No assignment or transfer of this Lease by Landlord shall be binding on Tenant unless the assignee or transferee shall assume and agree to be bound by the terms of this Lease and until notice of assignment or transfer together with an executed copy of such assignment or transfer instrument is received by Tenant. Tenant shall have the right to assign, sublet or transfer any or all of its rights and privileges under this Lease at any time during the term of this Lease or any extensions with Landlord's consent and approval, which shall not be unreasonably withheld or delayed and Landlord shall expressly acknowledge and agree to the release and novation of Tenant's obligations under this Lease.

24.   **NOTICE.** All notices and demands herein required shall be in writing and shall be sent by either (a) United States Certified Mail, return receipt requested, postage prepaid, or (b) national overnight delivery service with return receipt, delivery charge prepaid, to Landlord at Nick and Elaine Karagan 2046 Birchwood Drive Highland, Indiana 46322 and to Tenant at 636 Cambridge Court, No. 2B, Munster, Indiana 46321. Notices sent by United States Certified Mail as set forth above shall be effective three (3) days after the same is deposited with the United States Postal Service, postage prepaid. Notices sent by national overnight courier service shall be effective one (1) day after depositing the same with such courier service, delivery fee prepaid, marked for next day delivery. Either party may change the

address for which notices are given, by providing to the other party such change of address as with any other notice.

25.    **HAZARDOUS SUBSTANCES.**

(a)    **LANDLORD'S REPRESENTATIONS AND WARRANTIES.** Landlord represents and warrants to the best of his knowledge without investigation the following:

i.    The Property does not presently contain and is free from all chemical substances or pollutants known to be hazardous wastes, hazardous substances, hazardous constituents, toxic substances or related materials, whether solid, liquid or gaseous, including but not limited to asbestos, radioactive materials, oil, gasoline, diesel fuel and other hydrocarbons, and any other substances defined as "hazardous wastes", "hazardous substances", "toxic substances", "pollutants", "contaminants", or other similar designations, or any other material, the removal, storage or presence of which is regulated or required and/or the maintenance of which is penalized by the Resources Conservation Recovery Act, 42 U.S.C. §6901, et seq., the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §9601, et seq., the Toxic Substances Control Act, 15 U.S.C. §2601, et seq., the Clean Water Act, 33 U.S.C. §1251, et seq., the Safe Drinking Water Act, 42 U.S.C. §300(f)-300(j) - 10, the Clean Air Act, 42 U.S.C. §7401, et seq., or any other local, state or federal agency, authority or governmental unit (collectively, "Hazardous Substances").

ii.    The Property has not in the past been used for storage, manufacture or sale of Hazardous Substances or for any activity involving Hazardous Substances.

iii.    No Hazardous Substances are located in the vicinity of the Property.

iv.    Landlord has not transported, or caused to be transported, any Hazardous Substances to or from the Property.

v.    Landlord has not received and is not aware of any notification from any federal, state, county or city agency or authority relating to Hazardous Substances, in or near the Property.

(b)    **LANDLORD'S INDEMNITY.** Landlord shall indemnify, defend and hold harmless Tenant from and against any and all liability arising from any and all claims, demands, litigation, or governmental action involving any of the following:

i.    Any breach of the representations and warranties contained in this Section 26.

ii.    The presence or suspected presence of Hazardous Substances on or in the Property, unless such presence is due solely to the acts of

Tenant or the acts of any party other than Landlord, its agents and employees, occurring after the Effective Date.

Without limiting the generality of the foregoing, this indemnification shall specifically cover fines, penalties, sums paid in settlement of claims or litigation, fees for attorneys, consultants and experts (to be selected by Tenant) and costs for investigation, clean-up, removal or restoration.

26.   **BROKERS' INDEMNITY.** Landlord hereby covenants and warrants that there are no real estate brokers involved in this transaction other than Diversified Commercial Real Estate and Investment Company (a division of Rose Real Estate Inc.) and Landlord hereby agrees to indemnify, defend (with counsel selected by Tenant) and hold Tenant harmless from any and all claims, costs or damages incurred by Tenant resulting from any person or firm claiming to have negotiated, instituted or brought about this Lease other than the foregoing describe broker(s).

27.   **APPLICABLE LAW.** This Lease shall be governed by and construed under the laws of the State of Indiana.

28.   **COVENANTS.** Landlord represents, covenants and warrants, in addition to any other representations, covenants and warranties contained in this Lease, that (a) Landlord is seized in full fee simple title to the Property and Landlord has the due power and authority to enter into this Lease without the consent or intervention of any other parties; (b) execution of this Lease by Landlord and construction and operation of Tenant's Intended Use on the Property will not violate any law or ordinance or the terms of any agreements that Landlord or its predecessors in title may have with any other parties, including leases, restrictive covenants, exclusives, mortgages, stand still agreements, and cease and desist orders and any by-laws of Landlord; (c) the Property is not subject to any use or occupancy restrictions (except those imposed by applicable zoning laws and regulations), special taxes and assessments; (d) there are no actions, suits or proceedings pending or threatened against, by or affecting Landlord which affect title to the Property or which questions the validity or enforceability of this Lease or of any action taken by Landlord under this Lease, in any court or before any governmental authority, domestic or foreign; and there are no pending, threatened or contemplated condemnation actions involving all or any portion of the Property, (e) there are no leases, including without limitation, billboard leases, or other agreements for use, occupancy or possession presently in force with respect to all or any portion of the Property; (f) the Property is not listed nor proposed for listing on any National Wetlands Inventory maps nor is the Property contained within a suspected "wetland" area; and (g) all information and data furnished by Landlord to Tenant with respect to the Property will be true, correct, complete and not misleading effective as of the Commencement Date. All of the covenants, warranties, representations and agreements herein contained shall survive termination of this Lease and shall run with the land and extend to and be binding upon the heirs, executors, administrators, successors and assigns of the respective parties.

29.   **ESTOPPEL CERTIFICATE.** Tenant and Landlord agree at any time and from time to time, upon not less than ten (10) business days' prior written request from the other party, to execute, acknowledge and deliver to the requesting party a statement in writing, in form and content reasonably acceptable to both parties, an estoppel certificate certifying that this Lease is unmodified and in full force and

effect (or if there have been modifications, that the same is in full force and effect as modified and stating the modifications), the dates to which Rent has been paid and certifying that it is not in default (or if a default is alleged, stating the nature of the alleged default), and further certifying such other matters as the requesting party shall require. It is intended that any such statement delivered pursuant to this Section may be relied upon by any prospective purchaser, lender, subtenant, assignee or any entity which is a party to a potential merger, consolidation with or to the acquisition of substantially all of the assets or stock of Landlord or Tenant. In the event either party shall fail to execute and deliver any such instrument within the foregoing time period as requested, such party hereby irrevocably appoints the requesting party as its attorney-in-fact to execute such instrument in its name, it being agreed that such assignment is one coupled with an interest and the statements contained in such instrument shall be deemed to be true and correct and binding on such party, who shall be estopped from denying or contesting the facts contained in such instrument.

30.   **TENANT'S CONDUCT OF BUSINESS.**  Notwithstanding anything contained in this Lease to the contrary, no term or provision of this Lease shall be construed as creating an obligation for Tenant to open or operate its business in the Property. Tenant shall have the right to remove Tenant's furniture, fixtures, equipment and inventory and cease operations in the Property at any time and from time to time and at Tenant's sole discretion. However, the right to cease to operate its business shall not affect Tenant's obligation to pay all amounts due hereunder and to perform all covenants and obligations hereunder. Furthermore, in no event shall Tenant be liable to Landlord for damages as a result of operating other stores in the area surrounding the Property or any other area, nor shall Tenant be limited or restricted in any way from opening or operating other stores in the area surrounding the Property or any other area.

31.   **MISCELLANEOUS.**

(a)   This Lease contains the entire agreement between the parties. No rights are conferred upon Landlord until this Lease has been executed by Tenant. Neither Landlord nor Tenant nor any of their agents have made any statement, promises or agreements verbally or in writing in conflict with the terms of this Lease. Any and all representations by either of the parties or their agents made during negotiations prior to execution of this Lease and which representations are not contained in this Lease shall not be binding upon either of the parties.

(b)   All terms and words used in this Lease, regardless of the number and gender in which they are used, shall be deemed and construed to include any other number, singular or plural, and any other gender, masculine, feminine or neuter, as the context or sense of this Lease or any portion of this Lease may require, the same as if such words had been fully and properly written in the number and gender.

(c)   This Lease may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, but such counterparts together shall constitute but one and the same instrument.

Aug-21-2007 02:35pm    From-FIRST NATIONAL BANK OF ILLINOIS MOKENA    708-478-3834    T-731    P.018/024    F-089

(d)     Whenever Tenant may deduct costs from the rent pursuant to any Section of this Lease, such rent may be deducted from the next accruing rental payment(s) due.

(e)     Landlord and Tenant are not and shall not be considered joint venturers nor partners and neither shall have power to bind or obligate the other except as set forth in this Lease.

(f)     In the event Tenant continues to occupy the Property after the last day of the Term, as may have been extended, and Landlord elects to accept rent thereafter, a tenancy from month to month only shall be created.

(g)     Any legal proceedings initiated by reason of an alleged default of this Lease by either Landlord or Tenant must be commenced within one (1) year from the date that such alleged default occurred.

(h)     If any provision of this Lease or the application thereof to any person or circumstances shall, to any extent, be invalid or unenforceable, the remainder of this Lease, or the application of such term or provision to persons whose circumstances are other than those as to which it is held invalid or unenforceable, shall not be affected thereby.

(i)     No modification, alteration or amendment of this Lease shall be binding unless in writing and executed by the parties.

(j)     The head notes to the Sections of this Lease are inserted only as a matter of convenience and for reference, and in no way confine, limit or proscribe the scope or intent of any Section of this Lease, nor in any way affect this Lease.

(k)     This Lease shall be binding upon and inure to the benefit of the parties, their successors and assigns.

(l)     If Tenant is delayed or prevented from performing any of its obligations under this Lease by reason of strike, lockouts, labor troubles, failure of power, riots, insurrection, war, acts of God or any other cause beyond Tenant's control, the period of such delay or such prevention shall be deemed added to the time period herein provided for the performance of any such obligation by Tenant.

(m)     In the event any time period provided for in this Lease expires on a weekend or legal holiday (being defined as any holiday recognized by the United States Postal Service), the time period shall be automatically extended to the next business day.

(n)     This Lease shall be effective as of the date it is signed by all parties hereto (the "Effective Date"). This Lease shall not be binding on either party hereto until it is signed by all parties.

---

Ground Lease                                    Hands On Premium Car Wash, LLC

*IN WITNESS WHEREOF*, the parties hereto have duly executed this Ground Lease as of the day and year first above written.

Tenant:                                              Landlord:

HANDS ON PREMIUM
CAR WASH, LLC

By: _____                    By: _____
    Name: Douglas. Miller                             Name: PETER N. KARAGAN
    Title: President                                   Title: POA FOR N.de KARAGAN
                                                              ELAINE KARAGAN

August 8, 2007 (4:12pm)        X:\HWB\Hands On Premium 16108\St. John Indiana-I\Documents\Ground Lease Agreement 2007-08-08.wpd

## EXHIBIT "A"

### [ATTACH LEGAL DESCRIPTION AND/OR SITE PLAN]

## FIRST AMENDMENT TO GROUND LEASE

THIS FIRST AMENDMENT TO GROUND LEASE ("Amendment") effective the 1st day of June, 2020, is by and between **ELAINE KARAGAN** ("Landlord") and **HANDS ON PREMIUM CAR WASH, LLC**, an Indiana limited liability company ("Tenant").

## R E C I T A L S:

WHEREAS, Hands On Premium Car Wash, as Tenant, and Nick Karagan and Elaine Karagan, as Landlord, entered into that certain Ground Lease dated August 9, 2007 (the "Lease"), with respect to that certain premises commonly described as 8445 Wicker.Avenue, St. John, Indiana (the "Leased Premises");

WHEREAS, at the time that the Lease was executed, the Leased Premises were titled to Nick Karagan and Elaine Karagan, as husband and wife;

WHEREAS, Nick Karagan is now deceased with Elaine Karagan taking over as the sole title owner of the Leased Premises and the sole Landlord under the Lease; and

WHEREAS, Tenant and Landlord have agreed to amend the Lease as hereinafter set forth and to confirm and ratify the Lease in all other respects.

NOW THEREFORE, for and in consideration of these premises and other good and valuable considerations, it is agreed as follows:

1.    Recitals Incorporated. The foregoing recitals are hereby incorporated within and made an integral part of this Amendment as if fully set forth herein.

2.    Defined Terms. Capitalized terms utilized in this Amendment but not defined or re-defined herein shall have the meanings attributed to such terms in the Lease.

3.    Amendment to Sections 7(b) and 7(c) of the Lease. Effective as of June 1, 2020, Section 7(b) of the Lease is amended so that the monthly rent installments for the month of June 2020 and all subsequent months shall be paid in advance on June 15, 2020 and on or before the fifteenth (15th) day of each subsequent calendar month. Section 7(c) is further amended by replacing the phrase "on the first day of each and every calendar month" with the amended phrase of "on the fifteenth (15th) day of each and every calendar month".

4.    New Notice Address for Tenant. Section 24 of the Lease is amended by deleting Tenant's address of "636 Cambridge Court, No. 2B, Munster, Indiana 46321" and replacing same with "8445 Wicker Avenue, St. John, Indiana 46373".

5.    Amendment to EXHIBIT "A" of the Lease. Effective as of August 9, 2007, EXHIBIT "A" of the Lease is amended by deleting "[ATTACH LEGAL DESCRIPTION AND/OR SITE PLAN]" and replacing same with the following:

1

Lot 2 in Gardenia Gardens, an Addition to the Town of St. John, as per plat thereof, recorded in Plat Book 102 page 6, in the office of the Recorder of Lake County, Indiana.

6.    Amendment to EXHIBIT "A" of the Memorandum of Lease.  Effective as of August 9, 2007, EXHIBIT A of the Memorandum of Lease attached to the Lease is amended by

a.    inserting the following after the "LEGAL DESCIPTION OF THE PROPERTY":

Lot 2 in Gardenia Gardens, an Addition to the Town of St. John, as per plat thereof, recorded in Plat Book 102 page 6, in the office of the Recorder of Lake County, Indiana.

b.    inserting "45-11-21-351-019.000-035" on the line after "TAX I.D. NUMBER:"; and

c.    inserting "8445 Wicker Ave., St. John, IN 46373" on the line after "Address of Property:".

7.    Attorneys' fees arising from Tenant's breach of the Lease.  Notwithstanding any terms and provisions in the Lease to the contrary, in the event that Tenant breaches any obligation under Lease, including but not limited to Tenant's failure to timely pay rent in accordance with the terms and provisions of this Lease, and such breach lasts more than five (5) business days, upon the passing of such five (5) business day grace period, Tenant shall then be responsible to reimburse Landlord all reasonable attorneys' fees and costs incurred by Landlord relating to the preparation of any notice of default and the resolution of such default.  The reasonable attorneys' fees and costs recouped by Landlord pursuant to this Amendment shall be in addition to any and all other costs and expenses that Landlord may recover under Section 21 of the Lease.

8.    Counterparts. This Amendment may be executed in multiple counterparts via facsimile, each of which shall constitute an original, but all of which shall constitute but one instrument.  Electronic and/or facsimile signatures of this Amendment shall be deemed original signatures.

9.    Ratification. In the event of any conflict between the terms and provisions of this Amendment and the original terms and provisions of the Lease, the terms and provisions of this Amendment shall prevail.  Except as expressly amended hereby, all terms and provisions of the Lease remain in full force and effect and are hereby ratified and reaffirmed by Tenant and Landlord.

WITNESS the hands and seals of the duly authorized representatives of the undersigned as of the date and year next to each such signature.

LANDLORD:

TENANT:

**HANDS ON PREMIUM CAR WASH, LLC**

By: _____

**ELAINE KARAGAN by Peter Karagan
as attorney-in-fact, pursuant to that Power
of Attorney of Nick Karagan and Elaine
Karagan to Peter Karagan dated November
16, 2006 and included as an attachment to
that Affidavit of Peter Karagan recorded
with the Lake County Recorder's Office on
February 22, 2008 as Instrument Number
2008 012749**

Name: _____

Title: _____