## PURCHASE AND SALE AGREEMENT FOR GROUND LEASE

This Purchase and Sale Agreement for Ground Lease ("Agreement") is made as of 6/28/2024, 2024 ("Effective Date"), between **Hands on Premium Carwash, LLC**, an Indiana limited liability company and **Gentle Touch Car Wash LLC**, an Indiana limited liability company (collectively "Seller") and **The Duke of Oil, Ltd.** ("Buyer").

1. **AGREEMENT OF SALE AND PURCHASE**. Buyer agrees to purchase from Seller the following:

    A.  **Ground Lease.** That certain *Ground Lease* between **Hands on Premium Carwash, LLC** and **Nick Karagan and Elaine Karagan** ("Real Estate Owner") dated August 9, 2007, a copy of which is attached hereto and made an integral part hereof as **Exhibit A** ("Ground Lease"). A *Memorandum of Lease* was recorded in connection with the Ground Lease with the Lake County Indiana Recorder on February 22, 2008 as Document No. 2008-012750 and another *Memorandum of Lease* between **Hands on Premium Carwash, LLC** and **Gentle Touch Car Wash, LLC** was recorded with the Lake County Indiana Recorder on November 25, 2008 as Document No. 2008-0080285. The Ground Lease is for an initial term of twenty years (20) from August 9, 2007, and ending on August 8, 2027, with four (4), five (5) year renewal options and the Ground Lease has a right of first refusal option in the event the proposed sale of the real estate commonly known as 8445 Wicker Avenue, St. John, Indiana 46373 ("Real Estate") subject to the Ground Lease.

    B.  **Personal Property, Building, Fixtures, and Improvement.** All of Seller's interest in the building, improvements, equipment, fixtures, personal property, and related located on the Real Estate ("Appurtenant Rights"), all of which is subject to the terms and conditions of the Ground Lease.

The Ground Lease and Appurtenant Rights are collectively referred to as the "**Property**".

2. **PURCHASE PRICE**. Based upon the following considerations and terms, the Buyer shall pay to Seller, and Seller hereby agrees to accept from Buyer, the total Purchase Price of $600,000.00 ("**Purchase Price**"). Seller, and each of the, shall agree and direct the Title Insurer on the split of the net proceeds of the Purchase Price.

3. **PAYMENT OF PURCHASE PRICE.** The Purchase Price is payable by Buyer to Seller in the following manner and at the following times:

    A. **Earnest Money.** At the time of the execution of this Agreement, by signature below, Seller acknowledges that Buyer has deposited the total amount of $11,966.00 ("Earnest Money") with Buyer pursuant to a *Pre-Settlement Agreement for Advanced Deposits* dated June 24, 2024, which Earnest Money shall be applied on the Closing Date against the Purchase Price.

    B. **Cash at Closing.** On the Closing Date Buyer shall pay to Seller the Purchase Price by federal wire transfer funds, plus or minus prorations, less the Earnest Money.

4. **TITLE INSURANCE.** Prior to Closing, Seller agrees to provide a commitment for an ALTA leasehold (or assignment of leasehold interest or equivalent alternative) title

**EXHIBIT F**

insurance policy ("**Title Commitment**") issued by Chicago Title Insurance Company ("**Title Insurer**") for the Title Policy to be issued to Buyer at the Closing, in the full amount of the purchase price.

      5.    **TITLE DEFECTS.** If the title commitment discloses exceptions that are not acceptable to Buyer, then Seller will have ten (10) days from receipt of notice of Buyer's objections to such documents to have the exceptions removed from the commitment or to have the Title Insurer commit to insure against loss or damage that may be occasioned by such exceptions. Seller agrees to use its commercially reasonable efforts to have such exceptions removed or have the Title Insurer commit to insure over such exceptions. If Seller fails to have the exceptions removed or have the Title Insurer commit to insure over such exceptions or defects, Buyer may elect to (i) terminate this Agreement and promptly receive a return of the Earnest Money or (ii) may elect to take title as it then is with the right to deduct liens or encumbrances of a definite amount from the Purchase Price to be paid at the Closing Date, or (iii) extend the Closing Date by successive thirty (30) day periods, during which time Seller agrees to diligently attempt to cure such defects.

      6.    **REAL ESTATE TAXES AND ASSESSMENTS**. General real estate taxes, special assessments and all other levies and charges against the Property (collectively, the "**Taxes**") are paid by the Tenant under the terms of the Ground Lease. All Real Estate taxes assessed for any prior calendar year and remaining unpaid shall be paid by the Seller, and all Real Estate taxes assessed for the current calendar year shall be prorated between the Seller and the Buyer on a calendar-year basis as of the day of Closing. If the tax rate for Real Estate taxes assessed in the current year has not been determined at the time of the closing of the transaction, the tax rate shall be assumed to be **105%** of the prior year for the purposes of such proration and credit for due but unpaid real property taxes. *The Buyer and the Seller agree that such tax proration shall be final at Closing regardless of future tax bills and liabilities and BUYER assumes the responsibility for the payment of any taxes due and payable after the closing without further contribution from SELLER.*

      7.    **CONTINGENCIES.** This Agreement and Buyer's obligation to close is subject to Seller satisfying each of the following conditions set forth below at or before the Closing Date. Seller shall diligently pursue the satisfaction of all conditions precedent and contingencies which are its responsibility to perform.

      (a)    Seller satisfying all outstanding mortgages, loans, UCC filings (including, but not limited to filing 202211012994874 & 202302093030583), and other outstanding debt related to the Ground Lease and Appurtenant Rights. This condition may be satisfied with written approval from any entity that Seller owes money to confirming that such debt and the amount will be satisfied out of the Closing proceeds and any recorded documents with the Lake County Recorder's office and the Indiana Secretary of State's office will be released.

      (b)    Seller coordinating and obtaining Real Estate Owner's consent to (1) the assignment of the Ground Lease and (2) Buyer's intended use of the Real Estate.

      (c)    The Seller agrees that the Appurtenant Rights shall be delivered at closing to the Buyer in its present condition, ordinary wear and tear and casualty excepted. The Seller shall maintain the Appurtenant Rights between the time of the execution of this Agreement and the Closing in substantially the same condition as exists now. Further,

Seller covenants that Seller will not remove any of the Appurtenant Rights from the Real Estate as such Appurtenant Rights existed as of May 23, 2024.

    (d)    The Seller shall provide any survey in its possession to Buyer.

In the event that Seller is unable to satisfy the above contingencies prior to the Closing Date, then Buyer at its sole option may terminate this Agreement with a return of its Earnest Money or with Sellers' written agreement may extend the Closing Date.

**8.    CLOSING DATE.** The closing shall take place on or before July 22, 2024, or as agreed to in writing by the Parties ("**Closing Date**"), at the office of the Title Insurer.

**9.    EMINENT DOMAIN.** Seller agrees to immediately notify Buyer of any notice of eminent domain proceeding affecting all or a substantial portion of the Property. Upon such occurrence, Buyer shall, at its option, have the right to (a) terminate this Agreement, in which event the Earnest Money will be returned to the Buyer; or (b) complete the transaction, in which event Seller shall deliver to Buyer an executed assignment of all condemnation awards payable as a result of such condemnation, in form and substance satisfactory to Buyer

**10.    BROKERAGE FEES.** Neither party has dealt with any broker or finder entitled to any fees in connection with this transaction. Seller and Buyer each agree to indemnify and hold the other harmless from and against any and all claims or demands of other brokers with respect to any finder's or brokerage fees or commissions or other compensation asserted by any person, firm or corporation, in connection with this Agreement or the transaction contemplated by this Agreement, asserted by, through or as a result of the actions of Seller or Buyer. Buyer has disclosed to Seller that Thelma Nolan, Kalpesh Patel, and Bharat Shah (representatives of Buyer) are licensed realtors in Indiana.

**11.    POSSESSION.** Possession of the Property will be delivered to Buyer on the Closing Date.

**12.    DEFAULT.**

    (a)    In the event of a default by Seller under this Agreement, Buyer may at its option elect to enforce the terms of this Agreement by an action for specific performance, exercise any other right or remedy available to it at law or in equity, and/or terminate this Agreement. In all events, Buyer's rights and remedies will always be non-exclusive and cumulative: the exercise of one remedy shall not be exclusive of or constitute a waiver of any other.

    (b)    In the event of a default by Buyer and a termination of this Agreement without fault of Seller, the Earnest Money and all interest accrued will be paid to Seller as liquidated damages and as Seller's sole and exclusive remedy. The parties agree that the actual amount of any such damages would be difficult if not impossible to determine because of the uncertainties of the real estate market and fluctuating property values and differences of opinion with reference to such matters and that the Earnest Money constitutes a reasonable estimate by the parties of the damages that Seller will incur in the event of a default by Buyer.

**13.    NOTICES.** All notices required or desired to be given under this Agreement must be in writing and delivered by messenger or express delivery service and shall be deemed delivered

when delivered by messenger or express delivery service or one day after being faxed or deposited, postage prepaid, in the United States Post Office facilities, addressed as follows:

| | | |
|---|---|---|
| A. | If to Buyer: | The Duke of Oil, Ltd<br>Attn: President<br>8202 Calumet Ave.<br>Munster, IN 46321 |
| | With a copy to: | Timothy R Kuiper<br>Austgen Kuiper Jasaitis P.C.<br>130 N. Main St.<br>Crown Point, IN 46307<br>tkuiper@austgenlaw.com |
| B. | If to Seller: | Hands on Premium Car Wash LLC &<br>Gentle Touch Car Wash LLC<br>651 Hillbrich Court<br>Dyer, IN 46311 |
| | With a copy to: | _____ |

or to such other address as either party may from time to time designate by written notice to the other party.

**14. APPLICABLE LAW.** This Agreement is governed by and construed in accordance with the laws of the State of Indiana.

**15. SURVIVAL OF AGREEMENT.** All representations, warranties and covenants contained in this Agreement will continue and will be true and correct on and as of the Closing Date with the same force and effect as if made at that time. This Agreement and all such representations, warranties and covenants will survive the Closing Date.

**16. SUCCESSORS AND ASSIGNS.** This Agreement inures to the benefit of and shall be binding upon the parties and their respective successors and assigns.

**17. COUNTERPARTS.** This Agreement may be executed in any numbers of counterparts; each such counterpart shall be deemed to be an original document, but all such counterparts together will constitute but one Agreement.

**18. PROVISIONS SEVERABLE.** The unenforceability or invalidity of any provision or provisions of this Agreement will not render any other provision or provisions contained in this Agreement unenforceable or invalid.

**20. ENTIRE AGREEMENT.** This Agreement embodies and constitutes the entire agreement and understanding among the parties with respect to the purchase transaction

4

contemplated, and all prior agreements, understandings, representations and warranties are merged into this Agreement.

**21.** **ATTORNEYS' FEES.** If Buyer breaches this Agreement, Seller shall be entitled to recover, in addition to any remedies available under this Agreement, all reasonable costs and expenses, including attorney fees, incurred by Seller due to Buyer's breach. If Seller breaches this Agreement, Buyer shall be entitled to recover, in addition to any remedies available (including specific performance), all reasonable costs and expenses, including attorney fees, incurred by Buyer due to Seller's breach.

**22.** **INTERPRETATION.** Unless otherwise provided in this Agreement, the following rules of construction and interpretation apply to this Agreement: (a) headings and captions are for convenient reference only and in no way define or limit the terms of this Agreement; (b) use of the word "including" shall not be interpreted to exclude anything else when following any general statement and shall not be construed to limit such statement to the specific items identified immediately after the word "including" to similar items regardless of whether non-limiting language (e.g., **"without limitation"**, **"but not limited to"**) appear; rather use of the word "including" shall be deemed to refer to all other things that could reasonably fall within the broadest possible scope of the applicable general statement; (c) use of the words "will" and "shall" denote a mandatory duty, have the same meaning and are interchangeable unless the context requires otherwise; (d) use of the word "may" denotes a discretionary right, not an obligation or duty; (e) the singular of any word is interchangeable with the plural and vice-versa; (f) the neuter, masculine and feminine of any word are interchangeable with each other; and (g) references to Sections and Subsections are references to Sections and Subsections, as the case may be, of this Agreement.

**23.** **AUTHORITY.** The undersigned persons executing this Agreement acknowledge and warrant that they are fully empowered to execute and deliver this Agreement, and that all necessary actions for the making of this Agreement has been taken and done. Seller shall provide all documentation required by the title company to confirm authority to sign this Agreement and execute the closing documents.

**[REMAINDER OF PAGE INTENTIONALLY BLANK-SIGNATURE PAGE FOLLOWS]**

**SELLER**

**Hands on Premium Car Wash LLC**

By:_____
Douglas Michael Miller, President

Date: _____

**Gentle Touch Car Wash LLC**

By:_____
Douglas Michael Miller, President

Date: _____

**BUYER :**
**The Duke of Oil, Ltd.**

By: _*Kalpesh Patel*_
Kalpesh Patel, President

Date: __6/28/2024__

# EXHIBIT A

# GROUND LEASE