## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | | |
|---|---|---|
| HANDS ON PREMIUM CAR WASH, LLC | ) ) ) | CASE NO: 25-20255 |
| Debtor | ) | |

| | | |
|---|---|---|
| HANDS ON PREMIUM CAR WASH, LLC | ) ) | |
| Plaintiff | ) ) | |
| vs. | ) ) | ADVERSARY NO: 25-02013 |
| ELAINE KARAGAN | ) ) | |
| Defendant | ) | |

### ELAINE KARAGAN'S ANSWER TO COMPLAINT

Defendant Elaine Karagan, ("Karagan") by counsel, for her answer to Plaintiff Hands On Premium Car Wash, LLC's (the "Debtor", "Plaintiff" or "Hands On") Complaint, and states:

1. On February 18, 2025, Debtor, an Indiana Limited Liability Company, filed a Petition for Relief under Chapter 11 of Title 11 of the United States Code.

**ANSWER:  Karagan admits the allegations in legal paragraph 1.**

2. Defendant is a resident of Lake County, Indiana.

**ANSWER:  Karagan admits the allegations in legal paragraph 2.**

### Jurisdiction and Venue

3. This Court has jurisdiction over this Adversary proceeding pursuant to 28 U.S.C. §1334(b) because this adversary proceeding arises under, arises in, and is related to a Chapter 11 case, *In re Hands On Premium Car Wash, LLC*, Cause No: 25-20255, which is pending in the United States Bankruptcy Court for the Northern District of Indiana, Hammond Division.  Venue is proper

1

in this Court pursuant to 28 U.S.C. §1409(a) in that Debtor's Chapter 11 case is pending in this district and division.

**ANSWER:  Karagan admits the allegations in legal paragraph 3.**

4.      This matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A)(H) and (O).

**ANSWER:  Karagan admits the allegations in legal paragraph 4.**

**Factual Allegations**

5.      Defendant as Landlord and Plaintiff as Tenant are parties to a Ground Lease dated August 9, 2007, which was amended by a First Amendment to Ground Lease dated June 1, 2020, (the Ground Lease and the First Amendment to Ground Lease are hereinafter collectively referred to as the "Lease"); a true and accurate copy of which are attached hereto as Exhibit "A". The Lease commonly relates to the property known as 8445 Wicker Avenue, St. John, Indiana ("Premises").

**ANSWER:  Karagan admits the allegations in legal paragraph 5.**

6.      The Lease was originally between Nick Karagan and Elaine Karagan as Landlord, but Nick Karagan passed away on November 19, 2019. As a result of Nick Karagan's passing, Elaine Karagan became the sole owner of the Premises and the sole Landlord under the Lease.

**ANSWER:  : Karagan admits the allegations in legal paragraph 6.**

7.      Shortly thereafter, Plaintiff commenced construction of a structure that housed a car wash, car detailing, and at that time a restaurant. A list of the final costs for the construction of the building and the equipment that was located in the building is attached hereto, incorporated herein and marked as Exhibit B.

**ANSWER:  Karagan is without sufficient knowledge or information to respond; therefore, Karagan denies the allegations in legal paragraph 7.**

8.      To finance the construction of the building and the purchase of the equipment, the Plaintiff borrowed from First National Bank of Illinois ("Wintrust"), the sum of $923,675.00, an

SBA guaranteed loan in the amount of $555,000.00 ("SBA-1") and from its owners, an investment in the amount of $369,470.00. There are still balances owed on the Wintrust obligation and the original SBA-1.

**ANSWER:  Karagan is without sufficient knowledge or information to respond; therefore, Karagan denies the allegations in legal paragraph 8.**

9.      On or about September 20, 2021, resulting from the financial difficulties Debtor was experiencing from being closed during Covid, it obtained a loan from the SBA as part of the Community Advantage Initiative in the original amount of $175,000.00, ("SBA-2").

**ANSWER:  Karagan is without sufficient knowledge or information to respond; therefore, Karagan denies the allegations in legal paragraph 9.**

10.      Hands On Premium Car Wash, LLC ("Hands On") was initially incorporated on July 27, 2006, as an Indiana Limited Liability Company. Accountants for the business suggested that Hands On should lease the building and equipment to an operating entity.  To that end, Gentle Touch Car Wash, LLC was incorporated as an Indiana Domestic Liability Company, approximately 9 months later on May 25, 2007.  Hands On was administratively dissolved on February 3, 2012 and Gentle Touch was administratively dissolved on December 15, 2010. Thereafter, on March 24, 2014, Hands On Premium Car Wash, LLC (the current "Debtor") was formed and a Certificate of Organization was issued. On March 24, 2014, approximately 6 hours after the incorporation of Debtor, Gentle Touch Car Wash, LLC was incorporated.  Copies of the Articles of Organization for both entities are attached hereto, incorporated herein and marked as Exhibit "C" for Debtor and Exhibit "D" for Gentle Touch.

**ANSWER:  Karagan is without sufficient knowledge or information to respond; therefore, Karagan denies the allegations in legal paragraph 10.**

11.      Thereafter, Plaintiff continued to lease the Real Estate and Equipment to Gentle

Touch and it continued to operate the business.

**ANSWER:  Karagan is without sufficient knowledge or information to respond; therefore, Karagan denies the allegations in legal paragraph 11.**

12.     During the year 2023, it became apparent that as a result of Covid and adverse weather conditions, that the Debtor could not continue to operate effectively and the sale of the business was explored.

**ANSWER:  Karagan is without sufficient knowledge or information to respond; therefore, Karagan denies the allegations in legal paragraph 12.**

13.     Late in November of 2023, Plaintiff met with Duke of Oil representatives regarding the assignment of Debtor's land lease with Karagan, and the sale of the building and equipment. This was a preliminary meeting and Duke of Oil expressed interest but needed more information regarding the Lease. Duke of Oil advised it had no problem with the Lease because it leased most of its locations and further said it knew Peter Karagan who was acting as attorney-in-fact and representative of Defendant in all the transactions.

**ANSWER:  Karagan is without sufficient knowledge or information to respond; therefore, Karagan denies the allegations in legal paragraph 13.**

14.     The Plaintiff continued to meet with Duke of Oil who was expending money on plans and acknowledged it had talked to the Landlord's representative, Peter Karagan. Due to the fact that Duke of Oil had planned to perform oil changes in the location, it required a variance. On January 30, 2024, representatives of Debtor and Duke of Oil met with the Building Department of the Town of St. John to negotiate approval of the proposed Plans. Approval was obtained and Plans were to go before the Town Board with both representatives of Duke of Oil and Debtor being present.

**ANSWER:  Karagan is without sufficient knowledge or information to respond; therefore, Karagan denies the allegations in legal paragraph 14.**

15.     In early March 2024, the Plans were significantly changed and the project required redrafted plans to submit to the Town of St. John. Debtor's principal shepherded the project through the meetings with the Town of St. John. During this period of time, Duke of Oil acknowledged conversations with Peter Karagan. On March 6, 2024, Duke of Oil and representatives of Debtor went to the Town of St. John meeting and final hearing was set to take place on April 3, 2024 with the St. John Town Council.

**ANSWER:  Karagan is without sufficient knowledge or information to respond; therefore, Karagan denies the allegations in legal paragraph 15.**

16.     On April 9, 2024, a Letter of Intent was signed; a copy of the Letter of Intent is attached hereto, made part hereof, and marked Exhibit "E ". It was for the amount of $500,000.00 which was not sufficient to liquidate the current liens against the Premises.

**ANSWER:  Karagan is without sufficient knowledge or information to respond; therefore, Karagan denies the allegations in legal paragraph 16.**

17.     A meeting was held on April 10, 2024, with Wintrust, who is in the first position, which advised Duke of Oil representatives that it was not willing to take a "haircut". On April 24, 2025, the Town of St. John Council gave final approval to the proposed project.

**ANSWER:  Karagan is without sufficient knowledge or information to respond; therefore, Karagan denies the allegations in legal paragraph 17.**

18.     Negotiations were ongoing through May of 2024, with the lending institutions. A final amount was arrived at wherein Wintrust would agree to accept $319,318.37, Business Development Group-SBA1 would accept $171,707.21; taxes due at that time in the amount of $24,344.00 would be paid, and that Bankable-SBA2 would accept $139,781.46 for a total of

$655,201.00.

**ANSWER: Karagan is without sufficient knowledge or information to respond; therefore, Karagan denies the allegations in legal paragraph 18.**

19.    By June 17, 2024, the Letter of Intent increased to $600,000.00 but still was not sufficient to cover the debts and taxes.

**ANSWER:  Karagan is without sufficient knowledge or information to respond; therefore, Karagan denies the allegations in legal paragraph 19.**

20.    Late in June of 2024, Duke of Oil paid two payments of rent in the amount of $5,833.00 per month and late fees of $300.00. Debtor's business was such that customers knew there was going to be a sale and Debtor had previously sold numerous coupons which were now being utilized so there was not sufficient cash flow to pay rent and other expenses.

**ANSWER:  Karagan is without sufficient knowledge or information to respond; therefore, Karagan denies the allegations in legal paragraph in 20.**

21.    On June 28, 2024, the proposed agreement was sent to Debtor, a copy of which is attached hereto, made a part hereof and marked Exhibit "F".

**ANSWER:  Karagan is without sufficient knowledge or information to respond; therefore, Karagan denies the allegations in legal paragraph 21.**

22.    Thereafter, Debtor's counsel advised Duke of Oil that certain aspects of the Contract were not acceptable; namely that Gentle Touch was to be a party. Counsel for Debtor requested a conference with the Duke of Oil and Wintrust to attempt a resolution of the various issues. Duke of Oil refused to participate in any conference.

**ANSWER:  Karagan is without sufficient knowledge or information to respond; therefore, Karagan denies the allegations in legal paragraph 22.**

23.    Karagan's counsel advised Debtor's counsel that during this period of time, Duke of Oil's counsel had suggested that Karagan declare a default, terminate the contract and they would just deal with Defendant. This refusal of Duke of Oil to meet or discuss led Debtor's counsel

to send an email, a copy of said email is attached hereto, made a part hereof, and marked as Exhibit "G".

**ANSWER:   Karagan is without sufficient knowledge or information to respond; therefore, Karagan denies the allegations in legal paragraph 23.**

24.     On or about August 20, 2024, after discussing the filing of bankruptcy for Gentle Touch, Debtor proposed to Duke of Oil's counsel to use a state court quiet title action or the filing of Chapter 11 for Debtor and using Duke of Oil as a stalking horse bidder to sell the property free and clear.

**ANSWER:   Karagan is without sufficient knowledge or information to respond; therefore, Karagan denies the allegations in legal paragraph 24.**

25.     On August 28, 2024, Plaintiff's counsel forwarded a copy of the revised contract to Duke of Oil's counsel; a copy of the revised Contract is attached hereto, made a part hereof and marked as Exhibit "H".

**ANSWER:   Karagan is without sufficient knowledge or information to respond; therefore, Karagan denies the allegations in legal paragraph 25.**

26.     On August 29, 2024, in response to a question posed by Duke of Oil's counsel, an email forwarding a copy of the Lease between Debtor and Gentle Touch was forwarded to Duke of Oil's counsel; copies of said email and Lease are attached hereto, made a part hereof and marked as Exhibit "I".

**ANSWER:   Karagan is without sufficient knowledge or information to respond; therefore, Karagan denies the allegations in legal paragraph 26.**

27.     On September 12, 2024, Duke of Oil responded with a statement that creditors of Gentle Touch would have to be noticed in any suit.  A copy of that email and the email response of Debtor's counsel, are attached hereto, made a part hereof, and marked as Exhibit "J".  To date there has not been any response received to this last email from Debtor's counsel.

**ANSWER:   Karagan is without sufficient knowledge or information to respond; therefore,**

**Karagan denies the allegations in legal paragraph 27.**

28.     During the time of negotiations with Duke of Oil, Debtor continued to look for additional purchasers. On September 17, 2024, it received a Letter of Intent for purchase price of the building and equipment for the sum of $690,000.00. However, this was conditioned upon the sale of the underlying real estate and a proposal was submitted to Defendant.

**ANSWER:  Karagan is without sufficient knowledge or information to respond; therefore, Karagan denies the allegations in legal paragraph 28.**

29.     On September 25, 2024, a copy of the offer was forwarded to Defendant's counsel. This offer was not accepted because Karagan's counsel advised the Defendant had no interest in selling the real estate. Continued negotiations between the additional purchaser and the Debtor culminated on October 15, 2024, when an amended purchase contract was presented to Karagan by Debtor's counsel. This offer was for $690,000.00 and did not include the purchase of the real estate. It did include as a condition for an additional five year extensions at $5,000.00 annual increments (the amount of annual increments provided for in the Lease).  In response to this offer, the Landlord forwarded a Notice dated October 15, 2024, of termination of the Lease. A copy of the email and Notice is attached hereto, made a part hereof and marked as Exhibit "K".

**ANSWER:  Karagan admits as to the allegations in the first sentence of legal paragraph 29. Karagan is without sufficient knowledge or information to respond to the second and third sentences of paragraph 29; therefore, Karagan denies the allegations in the second and third paragraphs of legal paragraph 29. Karagan Admits that the termination notice was mailed out on October 15, 2024, but such termination notice was sent as a result of prior uncured breaches of the Lease, therefore Defendant denies the implied allegation that the termination notice was in any way related to Plaintiff's effort to sell its leasehold interest and all other remaining allegations in paragraph 29.**

30.     On information and belief that the actions of the Duke of Oil in requiring conditions which could not have been complied with as part of its offer to purchase and its failure to respond to Debtor's September 12, 2024, email and Defendant's termination letter in response to a better offer to purchase Debtor's interest in the Lease and equipment was part of a scheme to

fraudulently divest Debtor of its leasehold interest in the building and equipment.

**ANSWER:  Karagan denies the allegations in legal paragraph 30.**

31.    On information and belief that Landlord intends to lease the property if it is successful in terminating Debtor's Lease to Duke of Oil.

**ANSWER:  Karagan denies the allegations in legal paragraph 31.**

32.    The termination requirement of the Lease requires the transfer of all the building and equipment to Landlord upon termination.  It further provides that there is no additional rent accruing at the time. The value of the equipment and building as evidenced by the construction and purchase prices, and listed on the Debtor's Schedules are significantly greater than the amount due and owing to the Defendant which would be ten months rent at $5,833.00 per month plus real estate taxes in the approximate amount of $28,500.00.

**ANSWER:  The Lease speaks for itself; therefore, Karagan admits those portions of legal paragraph 32 that are consistent with the Lease and denies those portions of legal paragraph 32 that are inconsistent with the Lease.**

**COUNT I**
**Avoidance of Unlawful Terminations**
**(Actual Fraudulent Transfer Actions-11 U.S.C. §§ 548, 550 and 551)**

33.    Plaintiff restates and realleges Paragraphs 1 through 32 of this Complaint as if fully set forth herein.

**ANSWER:  Karagan incorporates herein her answers to legal paragraphs 1 through 32 above, as if fully set out herein.**

34.    The purported termination of the Lease occurred within two years of the date of filing of Debtor's Petition.

**ANSWER:  Karagan admits the allegations in legal paragraph 34 with respect to the termination of the Lease occurring within two years of the date of the Debtor's Petition, but Karagan denies that the termination was "purported." The Lease was terminated pursuant to the terms and provisions of the Lease in accordance with the applicable Indiana law; therefore, Karagan denies any allegations arising from the word "purported."**

35.     Unlawful termination constitutes transfers of Debtor's property interest.

**ANSWER: Karagan denies the allegations in legal paragraph 35.**

36.     The unlawful and fraudulent termination was made with actual intent to hinder, delay or defraud the creditors of Debtor and to take the Debtor's Property.

**ANSWER: Karagan denies the allegations in legal paragraph 36.**

37.     Debtor received less than reasonably equivalent value in exchange for the unlawful termination.

**ANSWER: Karagan denies the allegations in legal paragraph 37.**

38.     The transfers were made with the actual intent to hinder, delay and defraud creditors of the Debtor in that the transfers were made in furtherance of the Defendant's scheme to divest the Debtor of its interest in the land lease and the building and equipment and transfer the same to a third party for a lesser amount.

**ANSWER: Karagan denies the allegations in legal paragraph 38.**

39.     That, alternatively, the transfers were fraudulent without an actual intent to hinder, delay and defraud creditors for the reason that the Debtor did not receive reasonably equivalent value in exchange for the transfers because the amount of any debt owed to the Defendant were significantly less than the value of the assets.

**ANSWER: Karagan denies the allegations in legal paragraph 39.**

40.     Debtor was insolvent on the date of the unlawful terminations or became insolvent as a result thereof, were engaged in a business or transaction or were about to engage in a business or transaction for which any property remaining with Debtor was unreasonably small capital, and intended to incur a belief that it would incur debts that were beyond their ability to pay as such debts matured.

**ANSWER:  Karagan is without sufficient knowledge to Debtor's solvency; therefore, Karagan**

denies that Debtor was insolvent; and Karagan denies remainder of allegations in legal paragraph 40.

41.     Defendant is the initial transferee of the unlawful terminations.

**ANSWER:  Karagan denies the allegations in legal paragraph 41.**

WHEREFORE, Karagan requests that the Court enter an order wherein Debtor takes nothing as to its allegations set forth in Count I, and as the Court finds just equitable and appropriate.

Respectfully submitted,

By:     */s/ James M. Yannakopoulos*
        James M. Yannakopoulos (#25164-45)

## COUNT II
## CLAIM AGAINST DEFENDANT FOR FRAUDULENT CONVEYANCE PURSUANT TO INDIANA CODE §32-2-7-14 AND 11 U.S.C. §544.

Plaintiff restates and realleges Paragraphs 1 through 41 of this Complaint as if fully set forth herein.

**ANSWER:  Karagan incorporates herein her answers to legal paragraphs 1 through 41 above, as if fully set out herein.**

42.     The transfers were fraudulent as to the creditors of Debtor that arose prior to the date of those transfers and are now creditors and claimants in Debtor's bankruptcy case.

**ANSWER:  Karagan denies the allegations in legal paragraph 42.**

43.     That the transfers are recoverable to present or future creditors of the Debtor.

**ANSWER:  Karagan denies the allegations in legal paragraph 43.**

WHEREFORE, Karagan requests that the Court enter an order wherein Debtor takes nothing as to its allegations set forth in Count II, and as the Court finds just equitable and appropriate.

Respectfully submitted,

By:     /s/ James M. Yannakopoulos
       James M. Yannakopoulos (#25164-45)
       Koransky, Bouwer & Poracky, PC
       425 Joliet Street, Suite 425
       Dyer, Indiana 46311
       T: (219) 865-6700
       E: JYannako@KBLegal.com

## AFFIRMATIVE DEFENSE I

## Defense arising from 11 U.S.C. § 365(c)(3)

1.      At the heart of this adversary case, is a commercial ground lease between Defendant Elaine Karagan ("Karagan"), as Landlord, and Debtor/Plaintiff Hands On Premium Car Wash, LLC ("Hands On"), as the Tenant, which has been defined as the Lease in the Adversary Complaint.

2.      Prior to the Petition being filed with this Court, Hands On breached the Lease on various grounds, including but not limited to (a) failing to pay real estate taxes, pursuant to the terms of the Lease, and (b) by failing to provide Karagan with a certificate of insurance as required under the Lease.

3.      On July 9, 2024, Karagan caused a first notice of default (the "First Default Notice") to be issued to Hands On, First National Bank of Illinois, N.A. ("First National"), and Old Plank Trail Community Bank N.A. ("Old Plank") (First National and Old Plank are hereinafter collectively referred to as the "Bank").

4.      The First Default Notice notified Hands On that it had thirty days to cure certain Lease defaults arising from Hands On's failure to pay the property taxes for the Premises and Hands On's failure to provide a copy of a certificate of insurance to Karagan, as required under the Lease.

5.      Hands On failed to cure the property tax and certificate of insurance defaults set forth in the First Default Notice.

6. On August 14, 2024, Karagan caused a second notice of default (the "Second Default Notice") to be issued to Hands On and the Bank.

7. The Second Default Notice notified Hands On that it had thirty days to cure certain Lease defaults arising from Hands On's failure to pay the rent due on July 15, 2024, as required under the Lease.

8. Hands On failed to cure the rent payment default set forth in the Second Default Notice, and Hands On never paid any of the monthly rent amounts and other amounts that accrued under the Lease after the Second Default Notice was sent out.

9. To date, Hands On has failed to timely cure any of the previously noticed defaults, as set forth in the First and Second Default Notices.

10. Because Hands On never paid the delinquent property taxes related to the Premises, Karagan had to pay certain real estate taxes to avoid the Premises going into a tax sale.

11. Due to the ongoing defaults that remained uncured, Karagan exercised her right to terminate the Lease, pursuant to the terms and provisions of the Lease in accordance with the appliable Indiana law.

12. On October 15, 2024, Karagan exercised her right to terminate the Lease, pursuant to the terms and provisions of the Lease, and Karagan caused a notice of termination (the "First Termination Notice") to be issued to Hands On and the Bank.

13. Out of an abundance of caution, Karagan also sent a second termination notice to Hands On and Bank (the "Second Termination Notice") on December 16, 2024.

14. Hands On had no involvement in Karagan's decision to terminate the Lease.

15. Under Section 19 of the Lease, Hands On had until October 25, 2024, to surrender the Premises to Karagan.

16.     Section 19 of the Lease also calls for the surrender of all building and other improvements on the Premises, upon termination of the Lease.

17.     Due to the termination of the Lease, Karagan is entitled to immediate possession of the Premises.

18.     Because Karagan terminated the ground lease on October 15, 2024, Karagan currently has pending before this Court a separate Motion for Relief from Stay, or in the alternative, Abandonment [Bankr. Dock. 21] (the "Motion for Stay Relief").

19.     Many of the same arguments presented by Karagan with respect to the Motion for Stay Relief also apply to this Adversary Complaint.

20.     Hands On has filed its Adversary Complaint in an effort to either (i) revive and salvage the terminated ground lease or (ii) somehow recover some sort of monetary relief after Hands On breached the ground lease and after Karagan exercised her right to terminate the Lease.

21.     11 U.S.C. § 365(c)(3) in conjunction with the cases interpreting same (a) prevents Hands On from revising the Lease through any sort of post-petition assumption of the ground lease and (b) prevents Hands On from pursuing any fraudulent transfer claims arising from the terminated ground lease under the bankruptcy code.

22.     As other courts have explained, allowing Hands On to pursue any fraudulent transfer claim in this case would contradict the express provisions of 11 U.S.C. § 365(c)(3), which provides, "The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if . . . such lease is of nonresidential real property and has been terminated under applicable non-bankruptcy law prior to the order for relief." 11 U.S.C. § 365(c)(3).

23.     The termination of the Lease in this case did not involve either a collusive termination of the Lease or a lease between related parties.

24.     Therefore, any attempts to argue that the termination of the Lease was a fraudulent transfer, must fail, because Karagan terminated the Lease prior to the petition date and because 11 U.S.C. 365(c)(3) prevents Hands On from undoing the termination.

WHEREFORE, because the Lease relates to commercial property and because the Lease was terminated prior to the petition, Plaintiff can recover nothing from Count I of its complaint.

Respectfully submitted,

By:     */s/ James M. Yannakopoulos*
        James M. Yannakopoulos (#25164-45)

### AFFIRMATIVE DEFENSE II

### Defense arising from I.C. § 32-18-2-18(e)(1)

1.     Count II of the Hands On's Adversary Complaint seeks relief under Ind. Code § 32-2-7-14 and 11 U.S.C. § 544.

2.     The problem with such count is that Ind. Code § 32-2-7-14 has been repealed.

3.     Presumably, Hands On is seeking relief under Indiana's adoption of the Uniform Voidable Transactions Act, which may previously have been contained under I.C. § 32-2-7-14, and which can now be found under I.C. § 32-18-2-14 and I.C. § 32-18-2-15.

4.     However, I.C. § 32-18-2-18(e)(1), provides, "A transfer is not voidable under section 14(a)(2) or section 15 of this chapter if the transfer results from: (1) termination of a lease upon default by the debtor when the termination is permitted by the lease and applicable law . . .."

5.     Because Karagan terminated Hand On's lease interest in the Premises pursuant to the terms and provisions of the Lease as explained above, and because I.C. § 32-18-2-18(e)(1) prevents lease terminations to be subjected to fraudulent transfer claims under I.C. § 32-18-2-14(a)(2) and I.C. § 32-18-2-15, Hands On may only proceed at this time under I.C. § 32-18-2-14(a)(1).

WHEREFORE, because this case relates to a termination of a lease, Hands On is not in a

position to recover under any constructive fraud theories arising from I.C. § 32-18-2-14(a)(2) and I.C. § 32-18-2-15.

Respectfully submitted,

By:    */s/ James M. Yannakopoulos*
      James M. Yannakopoulos (#25164-45)

## AFFIRMATIVE DEFENSE III

### Defense arising from lack of actual intent from Hands On under I.C. § 32-18-2-14(a)(1)

1.    I.C. § 32-18-2-14(a)(1), provides that "A transfer made or an obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: (1) with actual intent to hinder, delay, or defraud any creditor of the debtor . . .."  I.C. § 32-18-2-14(a)(1).

2.    Hands On lacked any actual intent to hinder, delay, or defraud any creditor, with respect to the termination of the Lease, because Hands On had no part in the termination of the Lease.  Except for the fact that the breaches of the Lease by Hands On led to the termination of the Lease, Karagan exercised her right to unilaterally terminate the Lease without any input from Hands On.

3.    A reading of I.C. § 32-18-2-14(a)(1), provides that for a transfer to be voided under this section "the debtor [must have] made the transfer or incurred the obligation: (1) with actual intent to hinder, delay, or defraud any creditor of the debtor . . .."

4.    The Adversary Complaint is void of any allegation that shows Hands On made the transfer with actual intent to hinder, delay, or defraud any creditor.  The only paragraph in the Adversary Complaint dealing with any allegations of hindering, delaying, or defrauding any creditor of the debtor, can be found in paragraph 36, which reads, "The unlawful and fraudulent

termination was made with actual intent to hinder, delay, or defraud the creditors of Debtors and to take Debtor's Property."  Adversary Complaint, Paragraph 36.

5.     Contrary to the broad allegations in Paragraph 36 of the Adversary Complaint, no allegations in the Adversary Complaint can support any sort of effort to hinder, delay, or defraud on the part of Hands On, because the Adversary Complaint is void of any allegation of intent to hinder, delay, or defraud on the part of Hands On.

6.     The termination of the Lease was simply Karagan exercising her contractual rights to declare the lease in default and to terminate the Lease in accordance with the terms and provisions of the Lease, as permitted under Indiana law.

7.     Based on the factual allegations of the Adversary Complaint, it appears that the debtor is trying to assert that Karagan attempted to hinder, delay, or defraud the debtor's creditor's by somehow trying to get Hands On off the Premises and then do some sort of new lease with Duke of Oil.

8.     Even if we assume such facts to be true, such facts fail to allege any wrongdoing on the part of Karagan, let alone any wrongdoing on the part of Hands On.

9.     Even if the Complaint did allege wrongdoing on the part of Karagan, they would be irrelevant.

10.     Although Karagan to date has been unable to find any direct citation in Indiana on this point, an opinion interpreting a similar provision under the Uniform Voidable Transactions Act, as adopted by Pennsylvania, confirms that the relevant section on intent to hinder, delay, or defraud "considers only the debtor's intent in making the transfer, not [the] transferee's intent, which is irrelevant."  *Chestnut Street Consolidated, LLC v. Dawara*, 619 F. Supp. 3d 489, 505-506 (E.D. Penn. 2022).

11.    Hands On was not involved in the decision to terminate the lease, because Karagan unilaterally exercised her rights to declare a breach under the Lease and to terminate the Lease.

12.    Therefore, Hands On had no opportunity to hinder, delay, or defraud any creditors because it had no say in Karagan's election to terminate the Lease.

WHEREFORE, because Hands On had no input on the termination of the Lease, Hands On did not act with any actual intent when the Lease was terminated; therefore, Plaintiff can recover nothing from its complaint under I.C. § 32-18-2-14(a)(1).

Respectfully submitted,

By:    */s/ James M. Yannakopoulos*
James M. Yannakopoulos (#25164-45)

## AFFIRMATIVE DEFENSE IV

### Defense arising from I.C. § 32-18-2-20 and Unclean Hands

1.    I.C. § 32-18-2-20 provides, "Unless superseded by this chapter, the principles of law and equity, including the law merchant and the law relating to principal and agent, equitable subordination, estoppel, laches, fraud, misrepresentation, duress, coercion, mistake, insolvency, or other validating or invalidating cause, supplement this chapter."

2.    In this case, Hands On was a tenant who breached the Lease, and whose breaches then resulted in the termination of the Lease.

3.    Hands On can point to no wrongdoing on the part of Karagan as the landlord in her efforts to declare the Lease in default and to terminate the Lease.

4.    Now that Hands On has breached the Lease, the tenant is trying to use the Uniform Voidable Transactions Act to undo the termination of the Lease that was done in accordance with the Lease previously agreed to by the Tenant.

5.    In this instance, the equitable principal of unclean hands should prevent Hands On from now seeking to undo a lease termination caused by Hands On's own defaults under the Lease.

18

6.     Therefore, I.C. § 32-18-2-20 should prevent Hands On from prevailing in any action presently before the Court when it comes to this Court with unclean hands.

WHEREFORE, because Hands On first breached the Lease, which led to Karagan terminating the Lease, Hands On does not have clean hands, and the equitable doctrine of unclean hands prevents Hands On from any recovery under Count II of the Complaint.

Respectfully submitted,

By:    */s/ James M. Yannakopoulos*
        James M. Yannakopoulos (#25164-45)

## AFFIRMATIVE DEFENSE V

### Defense arising from lack of actual intent on the part of Debtor

1.     As an alternative defense, in the event that the Court does not find in Karagan's favor with respect to Affirmative Defense I, then Karagan presents this alternative defense.

2.     11 U.S.C. § 548(a)(1)(A) provides:

> (a)(1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily--
> (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted . . .. 11 U.S.C. § 548(a)(1)(A)

3.     The plain text of 11 U.S.C. § 548(a)(1)(A) requires that the debtor/transferor make a transfer "with actual intent to hinder, delay or defraud . . .." *Id.*

4.     "First, it is the conduct of the transferor, i.e., the Debtor, which must be established to have been fraudulent, not the transferee . . .." *In re Pinto Trucking Service, Inc.*, 93 B.R. 379, 386 (Bankr. E.D. Penn. 1988).

5.      In this case, Hands On did not make any transfer "with actual intent to hinder, delay or defraud . . .." as required under 11 U.S.C. § 548(a)(1)(A).

6.      In this case, the transfer was the result of Hands On's own breach of the Lease, and Karagan unilaterally exercised her right to terminate the Lease pursuant to the terms and provisions of the Lease, in accordance with Indiana law.

Wherefore, because Hands On lacked the actual intent to hinder, delay or defraud, when the Lease was terminated on account of Karagan unilaterally exercising her right to terminate the Lease, Karagan respectfully requests that Hands On take nothing through Count I of its adversary complaint.

Respectfully submitted,

By:    */s/ James M. Yannakopoulos*
         James M. Yannakopoulos (#25164-45)

## AFFIRMATIVE DEFENSE VI

## Defense arising from adequate consideration

1.      As an alternative defense, in the event that the Court does not find in Karagan's favor with respect to Affirmative Defense I, then Karagan presents this alternative defense.

2.      11 U.S.C. § 548(a)(1)(B)(i) provides:

> (a)(1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily--
> * * *
> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation . . ... 11 U.S.C. § 548(a)(1)(B)(i)

3.      In the event that the Court were to somehow find that Karagan's termination of the Lease constituted a potential transfer subject to 11 U.S.C. 548(a)(1)(B)(i), then Kargan's position is that Hands On received reasonably equivalent value in exchange for the termination

of the Lease on account of Hands On being released from its obligation to pay monthly rent and all other amounts that it was obligated to pay for under the terms and provisions of the Lease.

Wherefore, because Hands On received reasonable equivalent value when Hands On was released from its obligations to pay (a) future rents and (b) all other future amounts that would have been paid under the Lease, Hands On received reasonable equivalent value and therefore it can take nothing through Count I of its adversary complaint.

Respectfully submitted,
By:    */s/ James M. Yannakopoulos*
       James M. Yannakopoulos (#25164-45)

## AFFIRMATIVE DEFENSE VII

### Reservation of additional defenses and denial of all other allegations

1,      Discovery has yet to be completed and Karagan reserves the right to add additional defenses at a later date.

2.      To the extent that certain allegations in the Complaint were not either expressly admitted or denied hereinabove, then any such allegations are hereby denied.

Respectfully submitted,
**KORANSKY, BOUWER & PORACKY, P.C.**
BY: */s/* James M. Yannakopoulos
James M. Yannakopoulos (#25164-45)
425 Joliet St. Ste. 425
Dyer, IN 46311
Telephone: (219) 865-6700
Facsimile:  (219) 865-5839
E-mail: jyannako@kblegal.net

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 24, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which sent notification of such filing to all counsel and parties with copies being sent via first class mail postage prepaid for those parties who do not receive email notices according to the CM/ECF System.

Via CM/ECF email to:
Daniel L. Freeland - dlf9601@aol.com

By:   /s/ *James M. Yannakopoulos*
James M. Yannakopoulos (#25164-45)