**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| HANDS ON PREMIUM CAR WASH, LLC, | ) | CASE NO: 25-20255 |
| Debtor. | ) | |
| | ) | |
| HANDS ON PREMIUM CAR WASH, LLC, | ) | |
| Plaintiff, | ) | |
| vs. | ) | ADVERSARY NO: 25-02013 |
| ELAINE KARAGAN, | ) | |
| Defendant. | ) | |

## <u>DEFENDANTS' MEMORANDUM IN SUPPORT OF SUMMARY JUDGEMENT</u>

### <u>TABLE OF CONTENTS</u>

Page Number

Table of Contents ................................................................................................... i

Statement of Issues ............................................................................................ ii-iv

Table of Authorities ............................................................................................ v-vi

Defendants' Memorandum In Support of Summary Judgment ................................................ 1-18

i

**STATEMENT OF ISSUES**

**A.      The termination of the Lease in this case did not involve either a collusive termination of the Lease or a lease between related parties.  Therefore, any attempts to argue that the termination of the Lease was a fraudulent transfer, must fail, because Karagan terminated the Lease prior to the petition date and because 11 U.S.C. 365(c)(3) prevents Hands On from undoing the termination.**

Hands On breached the Lease, and Karagan was within her rights to terminate the Lease. After the Lease was terminated, in accordance with Indiana law and the terms and provisions of the Lase, Hands On seeks to somehow either undo the pre-petition termination of the Lease or obtain a monetary award through a misguided fraudulent transfer claim.  However, fraudulent transfers under the Bankruptcy Code should only be applied to deal with terminations of leases in instances where the leases have been terminated in a collusive effort between the landlord and the tenant or in instances where the landlord and tenant are related.  If this were not the case, then 11 U.S.C. § 365, which only permits the assumption of valid leases existing at the time of the bankruptcy petition, would be completely undermined.  Therefore, because of 11 U.S.C. § 365 does not allow for tenants to assume or reject a lease that has been terminated pre-petition, Hands On cannot assert any rights through the Lease that was terminated well before Hands On filed its bankruptcy petition.

**B.      Because of the limitations under Ind. Code § 32-18-2-18(e), because the Adversary Complaint is void of any efforts on the part of Hands On to hinder, delay, or defraud, and because of Hand's On's own unclean hands, Hand's On's state fraudulent transfer claims must also fail.**

Hands On also seeks relief under I.C. § 32-2-7-14 and 11 U.S.C. § 544, but I.C. § 32-2-7-14 was repealed.  Presumably, Hands On seeks relief under Indiana's version of the Uniform Voidable Transactions Act codified in I.C. § 32-18-2-14 and I.C. § 32-18-2-15.  However, "[a] transfer is not voidable under section 14(a)(2) or section 15 of this chapter if the transfer results from: (1) termination of a lease upon default by the debtor when the termination is permitted by

ii

the lease and applicable law . . ..” I.C. § 32-18-2-18(e)(1) Because Karagan terminated Hand

On's lease interest in the Premises pursuant to the terms and provisions of the Lease, Hands On

can only seek relief under I.C. § 32-18-2-14(a)(1).

However, I.C. § 32-18-2-14(a)(1) deals with the Hands On's intent in making the transfer,

and not Karagan's intent.  Hands On had no input in Karagan's decision to terminate the Lease;

therefore, there is no actual fraud at issue under I.C. § 32-18-2-14(a)(1).  Moreover,  I.C. § 32-

18-2-20 provides, "Unless superseded by this chapter, the principles of law and equity . . .

supplement this chapter."  In this case, you have a tenant who breached the Lease, and whose

breaches then resulted in the termination of the Lease.  The equitable principal of unclean hands

prevents Hands On from now seeking to undo a lease termination caused by its own breach of

the Lease.  Therefore, I.C. § 32-18-2-20 should prevent Hands On from prevailing in any action

presently before the Court when it comes to this Court with unclean hands.

**C.    Alternatively, even if the Court were to reject the preceding arguments, and instead, the Court were to review whether Hands On received less than reasonable equivalent value when the Lease was Terminated, the elimination of Tenant's obligations to pay real estate, rent, and other expenses related to the Premises constitutes reasonable equivalent value.**

Alternatively, even if this Court were to reject the preceding arguments that prevent any

recovery by Hands On under 11 U.S.C. § 548(a)(B)(i),  the Cour may still reject any such claims

because Hands On received reasonable equivalent value when it was released from its future

Lease obligations.  With the Lease terminating on October 15, 2024, Hands On was released

from having to pay $273,065.07, attributed to rent and property taxes along and not inclusive of

additional amounts could also be tacked on for insurance premiums, utility expenses, and other

amounts that would become due and owing as a result of the Lease and the occupancy of the

Premises.  Hands on cannot provide any evidence to support its claims that its release of at least

$273,065.07 attributed to rent and taxes, alone, was not reasonably equivalent to any lost improvements that Hands On may have surrendered through the termination of the lease. Therefore, any claims for relief under either 11 U.S.C. § 548(a)(B)(i), must fail.

iv

## TABLE OF AUTHORITIES

**Cases**

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) …………………………………………..…...…. 7
*In re Fruehauf Trailer Corp.*, 444 F. 3d 203, 211 (3d Cir. 2006) ……………………………... 16
*Kopelman v. Halvajian (In re Triangle Laboratories, Inc.),* 663 F.2d 463, 467–68
(3d Cir.1981) …………………………………………………………………………………… 9
*Becker v. Tenenbaum-Hill Assoc., Inc.,* 914 F.2d 107, 110 (7th Cir.1990) ……………………... 7
*Great Lakes Quick Lube L.P.*, 816 F.3d 482 (7th Cir. 2016) ……………………………… 11, 12
*Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1214 (7th Cir.1983) …………………………………. 9
*Rozskowiak v. Village of Arlington Heights*, 415 F.3d 608, 612 (7th Cir. 2005) ………………... 7
*421 Willow Corporation t/a The Electric Factory*, 2003 WL 22318022, 6
(E.D. Penn. 2003) ………………………………………………………………..…… 10, 11
*Chestnut Street Consolidated, LLC v. Dawara*, 619 F. Supp. 3d 489, 505-506
(E.D. Penn. 2022) ……………………………………………………………..……... 14
*In Re: Coast Cities Trust Sales, Inc.*, 147 B.R. 674, (D. N.J. 1992) ……………………...…… 10
*In re White*, 559 B..R. 787 (Bankr. N.D. Ga. 2016) …………………………………….. 16, 17
*In Re. Pazzo Pazzo, Inc.*, 2019 WL 1858845, 3 (Bankr. D. N.J. 2019) …………………...… 11
*Robinson v. Chicago Housing Authority*, 1995 WL 360706 (N.D. Ill. 1995) …………………... 9
*In re 130/40 Essex Street Development Corp.*, 2008 WL 4845639, 6 (Bankr. S.D.N.Y.) …….. 11
*In re Durso Supermarkets, Inc.*, 193 B.R. 682 (Bankr. S.D.N.Y. 1996) …………..…….…... 11
*In re: Haines*, 178 B.R. 471 (Bankr. W.D. Mo. 1995) ………………………………………... 10
*In re: Jermoo's Inc.*, 38 B.R. 197, 204 (Bankr. W.D. Wisc. 1984) ……………………...…… 9

**Statutes**

11 U.S.C. § 365 …………………………………………………...…………………………… 10
11 U.S.C. § 365 …………………………………………………………………………………… 12
11 U.S.C. § 365(c)(3) ……………………………………………………...…….. 2, 6, 11, 18
11 U.S.C. § 365(d)(3) …………………………………………………………….…………… 17
11 U.S.C. § 544 ……………………………………………………………………...…… 6, 12
11 U.S.C. § 548 …………………………………………………………………….......… 6, 9, 10, 11
11 U.S.C. § 548(a)(B)(i) …………………………………………………………….. 15, 17
11 U.S.C. § 550 ………………………………………………………………….……… 6
11 U.S.C. § 551 …………………………………………………………………………….. 6
11 U.S.C. § 553(a) …………………………………………………………………………... 17
I.C. § 32-2-7-14 …………………………………………………………………………...… 12
I.C. § 32-18-2-14 …………………………………………………………………….…… 6, 12
I.C. § 32-18-2-14(a)(1) ………………………………………………………..……….. 2, 3, 12, 13, 18
I.C. § 32-18-2-14(a)(2) …..……………………………………………………….. 2, 12
I.C. § 32-18-2-15 …………………………………………………………………….. 2, 12
I.C. § 32-18-2-18(c) …...…………………………………………………………..…… 11
I.C. § 32-18-2-18(e) …....…………………………………………………………………… 2
I.C. § 32-18-2-18(e)(1) …...………………………………………………………………... 12
I.C. § 32-18-2-20 ………………………………………………………………… 14, 15

**Rules**

Fed. R. Civ. P. 56 …………………………………………………………...…… 2, 7, 8
Fed. R. Civ. P. 56(e) …………………………………………………………….. 7
Fed. R. Bankr. P. 7056 …………………………………………………...…… 2, 7
Ind. L.B.R. B-7056-1 ……………………………………………………….… 7

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| HANDS ON PREMIUM CAR WASH, LLC, | ) | |
| Debtor. | ) | CASE NO: 25-20255 |
| | ) | |
| _____ | | |
| HANDS ON PREMIUM CAR WASH, LLC, | ) | |
| Plaintiff, | ) | |
| vs. | ) | ADVERSARY NO: 25-02013 |
| ELAINE KARAGAN, | ) | |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

Adversary Defendant Elaine Karagan ("**Karagan**"), by counsel, files this Memorandum of Law in Support of Motion for Summary Judgment, pursuant to Fed. R. Bankr. P. 7056, along with Fed. R. Civ. P. 56. For this Memorandum of Law in Support, Karagan states the following:

**INTRODUCTION**

At issue in this case is a commercial ground lease, between Karagan, as Landlord, and Debtor Hands On Premium Car Wash, LLC ("**Hands On**"), as the Tenant. The ground lease covers the property located at 8445 Wicker Avenue, St. John, Indiana (the **"Premises"**). In breach of the ground lease, Hands On failed to provide Karagan with a certificate of insurance and failed to pay Karagan monthly rent. Karagan then terminated the ground lease on October 15, 2024. Because of such termination, Karagan has the right to possess the Premises free and clear of said ground lease, and Hands On maintains a holdover possessory interest of the Premises in violation of the ground lease. Prior to this adversary case, Karagan had pending before this Court a separate Motion for Relief from Stay, or in the alternative, Abandonment [Bankr. Dock. 21] (the "**Motion for Stay Relief**").

Page **1** of **25**

Many of the same arguments presented by Karagan with respect to the Motion for Stay Relief also apply to this Motion for Summary Judgment. In essence, Hands On has filed its Adversary Complaint to either (i) somehow revive and salvage the terminated ground lease, which cannot be revived or (ii) somehow recover some sort of monetary relief, after Hands On's own breach of the lease led to the termination of the lease. For this Motion for Summary Judgment, Karagan's position remains that 11 U.S.C. § 365(c)(3) in conjunction with the cases interpreting same (a) prevents Hands On from reviving the lease through any sort of post-petition assumption and (b) prevents Hands On from pursuing any fraudulent transfer claims arising from the terminated lease under the bankruptcy code.

As other courts have explained, allowing Hands On to pursue any fraudulent transfer claim in this case would contradict the express provisions of 11 U.S.C. § 365(c)(3), which provides, "The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if . . . such lease is of nonresidential real property and has been terminated under applicable non-bankruptcy law prior to the order for relief." 11 U.S.C. § 365(c)(3). Because the Lease relates to commercial property and because the Lease was terminated prior to the petition, Karagan respectfully requests that the Adversary Complaint be denied summarily, pursuant to Fed. R. Bankr. P. 7056 and Fed. R. Civ. P. 56.

With respect to any efforts to prevail under the Indiana Uniform Voidable Transactions Act, Ind. Code § 32-18-2-18(e) prevents Hands On from reviving the terminated lease interest through any fraudulent transfer claims under Indiana law under I.C. § 32-18-2-14(a)(2) and I.C. § 32-18-2-15. Moreover, to prevail under the remaining possible avenue of I.C. § 32-18-2-14(a)(1), Hands On would have to assert that Hands On acted with an intent to hinder, delay, or

2

defraud its creditors.  However, there is no evidence or fact to infer any intent to hinder, delay, or defraud creditors on the part of Hands On, and the facts confirm that Karagan acted unilaterally to declare the Lease in default and to terminate the Lease.  Therefore, there is no basis for Hands On to prevail under any sort of actual fraud theory available to creditors under I.C. § 32-18-2-14(a)(1).  Alternatively, even if the Court were to reject the preceding arguments, and instead, the Court were to review whether Hands On received less than reasonable equivalent value when the Lease was Terminated, the elimination of Tenant's obligations to pay real estate, rent, and other expenses related to the Premises constitutes reasonable equivalent value.

## **FACTS**

Karagan is a resident of Lake County, Indiana.  Hands On is an Indiana domestic limited liability company and the debtor in the above captioned case.  On February 18, 2025, Hands On filed a Chapter 11 bankruptcy petition, which commenced the above-captioned case (hereinafter the "**Bankruptcy**").and neither party has contested the jurisdiction of this Court as to the adversary case at hand.

Prior to the Bankruptcy, Karagan, as Landlord, and Hands On, as Tenant, entered into a Ground Lease, dated August 9, 2007, which was amended by a First Amendment to Ground Lease dated June 1, 2020 (the Ground Lease and the First Amendment to Ground Lease are hereinafter collectively referred to as the "**Lease**"), a true and accurate copy of which is attached hereto as Exhibit A. The Lease relates to the property commonly known as 8445 Wicker Avenue, St. John, Indiana (the "**Premises**").  The Lease was originally between Nick Karagan and Elane Karagan, as Landlord, but Nick Karagan passed away on November 19, 2019.  As a result of Nick Karagan's passing, Elaine Karagan became the sole owner of the Premises and the sole Landlord under the Lease.

3

In the summer of 2024, Hands On breached the Lease on various grounds, initially by (a) failing to pay real estate taxes, pursuant to the terms of the Lease, and (b) by failing to provide Karagan with a certificate of insurance as required under the Lease.  On July 9, 2024, Karagan caused a first notice of default (the "**First Default Notice**") to be issued to Hands On, First National Bank of Illinois, N.A. ("**First National**"), and Old Plank Trail Community Bank N.A. ("**Old Plank**") (First National and Old Plank are hereinafter collectively referred to as the "**Bank**").  A true and correct copy of the First Default Notice is attached hereto as Exhibit B. The First Default Notice notified Hands On that it had thirty days to cure certain Lease defaults arising from Hands On's failure to pay the property taxes for the Premises and Hands On's failure to provide a copy of a certificate of insurance to Karagan, as required under the Lease. Hands On failed to cure the property tax and certificate of insurance defaults set forth in the First Default Notice.

On August 14, 2024, Karagan caused a second notice of default (the "**Second Default Notice**") to be issued to Hands On and the Bank.  A true and correct copy of the Second Default Notice is attached hereto as Exhibit C.  The Second Default Notice notified Hands On that it had thirty days to cure certain Lease defaults arising from Hands On's failure to pay the rent due on July 15, 2024, as required under the Lease.  Hands On failed to cure the rent payment default set forth in the Second Default Notice, and Hands On never paid any of the monthly rent amounts and other amounts that accrued under the Lease after the Second Default Notice was sent out. To date, Hands On has failed to timely cure any of the previously noticed defaults, as set forth in the First and Second Default Notices.

Because Hands On never paid the delinquent property taxes related to the Premises, Karagan had to pay certain real estate taxes to avoid the Premises going into a tax sale and

4

Karagan's receipts of her payment of the property taxes is attached hereto as Exhibit D. Thereafter, Karagan continued to pay the property tax bills, as confirmed by the tax bill and stamps attached hereto as Exhibits E, J, and K.

Because Hands On did not cure its Lease defaults, Karagan exercised her right to terminate the Lease pursuant to the terms and provisions of the Lease.  On October 15, 2024, Karagan terminated the Lease, and Karagan caused a notice of termination (the "**First Termination Notice**") to be issued to Hands On and the Bank.  A true and correct copy of the First Termination Notice is attached hereto as Exhibit F.  Out of an abundance of caution, Karagan also sent a second termination notice to Hands On and Bank (the "**Second Termination Notice**") on December 16, 2024. A true and accurate copy of the Second Termination Notice is attached hereto as Exhibit G.  Hands On had no involvement in Karagan's decision to terminate the Lease.

Under Section 19 of the Lease, Hands On had until October 25, 2024, to surrender the Premises to Karagan, and Section 19 of the Lease also calls for the surrender of all building and other improvements on the Premises, upon termination of the Lease.  Due to the termination of the Lease, Karagan is entitled to immediate possession of the Premises and seeking immediate possession the Premises free and clear of any interest of Hands On.  Karagan filed a complaint to evict Hands On from the Premises on December 13, 2024, with the Lake Superior Court sitting in Hammond, Indiana, which was docketed under Cause No. 45D01-2412-PL-000761 (the "**State Court Litigation**").  A true and correct copy of the State Court Complaint is attached hereto as Exhibit H.  (Please note that due to the exhibits to this Motion and the Exhibits to the State Court Complaint using letters, the exhibit stickers to the State Court Complaint were revised by adding S.C. in front of each State Court Complaint Exhibits, to distinguish such

exhibits from the exhibits used for this Motion.  The State Court Litigation was scheduled for an immediate possession hearing and show cause hearing on February 18, 2025, at 2:00 P.M. Central Time, pursuant to the Order Resetting Hearing on Immediate Possession and Order to Show Cause entered on February 10, 2026.  A true and accurate copy of such state court order is attached hereto as Exhibit I.  At 12:39 P.M. Central Time, Hands On filed its petition for relief under the above captioned bankruptcy case, and then in the State Court Litigation filed a Notice of Pendency of Bankruptcy and Automatic Stay of Proceedings, which effectively stayed the State Court Litigation.

Because 11 U.S.C. § 365(c)(3) in conjunction with the cases interpreting same (a) prevents Hands On from revising the Lease through any sort of post-petition assumption of the Lease and (b) prevents Hands On from pursuing any fraudulent transfer claims arising from the terminated ground lease, Karagan is pursuing a separate Motion for Stay Relief for the purpose of allowing the State Court Litigation to resume.  To counter the Motion for Stay Relief, Hands On filed the Adversary Complaint.  Hands On's Adversary Complaint is a two count complaint seeking relief under 11 U.S.C. §§ 548, 550 and 551 and a fraudulent conveyance pursuant to Ind. Code § 32-2-7-14 and 11 U.S.C. § 544.

Hands On cannot produce any evidence to deny the fact that Hands On breached the Lease by failing to provide the requisite insurance certificate and failing to pay monthly rent. Hands On can also provide no evidence that would deny Karagan's right to terminate the Lease after Hands On breached the Lease.  Moreover, rather than addressing Hands On's own unclean hands in this ongoing lease dispute, the Adversary Complaint alludes to some sort of conspiracy between Karagan and a potential purchaser of the Premises, while completely ignoring Hands On's breaches that led to the Lease termination.

6

The Adversary Complaint is also void of any reference to the Commencement Date of the Lease, which occurred on October 14, 2008, after the Town of Saint John issued a certificate of occupancy for the Premises, and the evidence confirms that Hands On has been absolved of all payment obligations due and owing under the Lease as of October 15, 2024, up to and including the termination of the Lease on October 13, 2028.  Therefore, as an alternative argument, Hands On fails to show that it did not receive reasonable equivalent value for any improvements that it may have lost as a result of the Lease termination.  For the reasons explained below, Karagan respectfully requests that this Court summarily deny the Adversary Complaint.  Pursuant to Fed. R. Bankr. P. 7056 and Fed. R. Civ. P. 56, Karagan has also attached hereto the Affidavit of Peter Karagan as <u>Exhibit  M</u>, and pursuant to N.D. Ind. L.B.R. B-7056-1, Karagan has also attached hereto a Statement of Material Facts as <u>Exhibit N</u>.

## **<u>STANDARD</u>**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. Pro. 56(a). "Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Rozskowiak v. Village of Arlington Heights*, 415 F.3d 608, 612 (7th Cir. 2005) citing Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  "If the moving party meets this burden, the nonmoving party must then go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e)." *Rozskowiak*, 415 F.3d 612 citing, *Becker v. Tenenbaum-Hill Assoc., Inc.,* 914 F.2d 107, 110 (7th Cir.1990).  Karagan's position is that Hands On is unable to cite to any facts or law that would refute Karagan's factual and legal positions; therefore, the requests for relief

set forth in Adversary Complaint should be denied pursuant to Fed. R. Civ. Pro. 56.

## ARGUMENT

**A.      The termination of the Lease in this case did not involve either a collusive termination of the Lease or a lease between related parties.  Therefore, any attempts to argue that the termination of the Lease was a fraudulent transfer, must fail, because Karagan terminated the Lease prior to the petition date and because 11 U.S.C. 365(c)(3) and prevents Hands On from undoing the termination.**

Hands On cannot overcome the fact that it first breached the Lease in the summer of 2024 and that Karagan was within her rights to terminate the Lease in October of 2024.  While Hands On may wish to overlook those facts, Karagan cannot, and Karagan has filed the attached exhibits and affidavit of Peter Karagan to evidence that Hands On breached the lease, which led to Karagan's lawful termination of the Lease.  Instead of directly challenging Karagan's assertion that Hands On breached the Lease and that Karagan was within her rights to terminate the Lease, Hands On seeks to ignore these critical facts and either (i) somehow undo Karagan's pre-petition termination of the Lease or (ii) somehow obtain a monetary award by arguing that Karagan's termination of the Lease constituted a fraudulent transfer.

However, fraudulent transfers under the Bankruptcy Code should only be applied to deal with terminations of leases in instances where the leases have been terminated in a collusive effort between the landlord and the tenant or in instances where the landlord and tenant are related.  In this case, there was no collusion between Karagan and Hands On as to the Lease termination.  Because Hands On breached the Lease, Karagan terminated the Lease.  Moreover, there is no relation between Karagan and Hands On beyond the relationship of landlord and tenant.

Karagan terminated the Lease in accordance with the terms and provisions of the Lease on October 15, 2024.  The Lease provides that in the event that Hands On failed to pay rent or

8

failed to "perform any of its other obligations under this Lease, after notice of such default shall have been given as provided below, Landlord may as its sole and exclusive remedy elect . . .(b) to terminate this Lease and to resume possession of the Property wholly discharged from this Lease . . .." See Lease, Pages 8 and 9, Section 19 and Subsection 19(b), attached as Exhibit A to the Motion. After the termination of the Lease, in accordance with the terms and provisions of the Lease, Hands On had "ten (10) days after receipt . . . of notice of election by Landlord to terminate this Lease" to "surrender and deliver to" Karagan the property subject to the Lease. See Lease, Page 9, Section 19, attached as Exhibit A to the Motion.

As the District Court for the Northern District of Illinois noted in *Robinson v. Chicago Housing Authority*, 1995 WL 360706, (N.D. Ill. 1995), "Where a contract has been validly terminated pre-bankruptcy, the debtors' rights to continued performance under the contract have expired. The filing of a petition under chapter 11 cannot resuscitate those rights. See *In re Triangle Laboratories, Inc.*, 663 F.2d at 467-68." *Robinson* at 3 quoting *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1214 (7th Cir.1983). As the District Court in *Robinson* also noted "§365 of the Bankruptcy Code addresses the rights of the debtor with respect to executory contracts and unexpired leases and provides the procedure by which such agreements may be continued in effect post-petition." *Robinson* at 3. "The structure of the Bankruptcy Code evidences the fact that Congress did not intend for debtors in Robinson's position to fall within §548." *Id.*

> It would be anomalous, to say the least, to expect that the drafters of a generally thrifty codification of bankruptcy law would devote a substantial section of the Code [11 U.S.C. § 365] to the subject of the assumption or rejection of executory contracts and unexpired leases, while at the same time allowing a portion of that subject to spill over into the section governing fraudulent transfers and obligations. There is no indication in the language of §365, §548, or the legislative history of the Code, that the drafters had such an unlikely intention. *Robinson* at 3, quoting *In re: Jermoo's Inc.*, 38 B.R. 197, 204 (Bankr. W.D. Wisc. 1984).

9

The case of *In re: Haines*, 178 B.R. 471 (Bankr. W.D. Mo. 1995) provides further insight into the matter.  "The avoidance of non-collusive prepetition lease terminations as fraudulent transfers presents significant policy considerations."  *Id*. at 475.  While the court in *Haines* acknowledges that fraudulent transfers can arise in certain lease terminations, the court in *Haines* noted that those cases involved situations involving either a settlement agreement to terminate the lease between the landlord or tenant or situations wherein the landlord and tenant were related corporations.  *Haines* at 476.  Therefore, in light of the law established under 11 U.S.C. § 365, the Court in *Haines* declined the debtor's attempts to undo a valid termination of a lease by simply filing a fraudulent transfer adversary complaint.  The *Haines* court wrote, "finding that an executory contract termination is a transfer for purposes of § 548 'would render virtually every validly terminated executory contract revivable by a debtor by simply initiating bankruptcy proceedings. Such a result is not only unwarranted but is contrary to the intent of the drafters of the code.'"  *Haines* at 477 quoting *In Re: Coast Cities Trust Sales, Inc.*, 147 B.R. 674, (D. N.J. 1992).  Ultimately, the court in *Haines* found

> § 365(c)(3) prohibits a debtor in possession from assuming a lease which was validly terminated before the bankruptcy proceeding was filed, that under the circumstances in this case a non-collusively terminated lease should not be avoided as a fraudulent transfer, and that the automatic stay should be terminated to permit defendant to enforce its state court judgment for possession of the premises. *Haines* at 473.

The distinctions set forth in the *Haines* case continue to be valid, and other courts continue to support that position.  See also *In re 421 Willow Corporation t/a The Electric Factory*, 2003 WL 22318022, 6 (E.D. Penn. 2003) ("Indeed, the only cases in this Circuit squarely addressing the interplay between the Bankruptcy Code's avoidance powers in Sections 547 and 548 and a debtor in possession's restriction under Section 365(c)(3) have demonstrated that a prepetition termination of a nonresidential lease cannot be avoided by the more general

10

provisions of Sections 547 and 548.");  See also *In Re. Pazzo Pazzo, Inc.*, 2019 WL 1858845, 3 (Bankr. D. N.J. 2019) ("The Option was properly terminated according to its terms before this bankruptcy case was filed. There was no collusion or cooperation between Speedwell and Berley. The fraudulent transfer provisions of § 548 of the Bankruptcy Code cannot be used under the facts here to revive a contractual interest in property that was terminated.")  See also *In re Durso Supermarkets, Inc.*, 193 B.R. 682 (Bankr. S.D.N.Y. 1996) ("Therefore, although I find that the termination of the lease between DSI and Mrs. D'Urso fell within the Section 101(54) definition of 'transfer,' the transfer, itself, was not a fraudulent conveyance."). See also *In re 130/40 Essex Street Development Corp.*, 2008 WL 4845639, 6 (Bankr. S.D.N.Y.) ("The Debtor cannot recover damages under a fraudulent conveyance theory because the Lease was validly terminated pre-petition under non-bankruptcy law. . . . This Court views Code § 365(c)(3), which expressly addresses the effect of a pre-petition termination of a non-residential lease, as the more specific section of the Code. It must be given effect to the extent it conflicts with the more general provisions of Code § 548.")

In prior hearings before this Court, Hands On has argued that somehow the termination of the lease on account of its term expiring is different than a termination resulting from the tenant's breach of the lease.  To date, Hands On has failed to provide any case law that would support such argument.  Karagan also acknowledges that based on prior briefings presented by the parties that the case of *Great Lakes Quick Lube L.P.*, 816 F.3d 482 (7th Cir. 2016) may be a case to support Hands On's position of being able to pursue a fraudulent transfer claim arising from a termination of a lease.

However, a reading of the opinion in the *Great Lakes Quick Lube L.P.* case reveals the collusive nature of the lease termination at issue in such case, because in that case the debtor

Great Lakes negotiated with its landlord for the termination of the two leases at issue 52 days before the petition date. *Great Lakes Quick Lube L.P.*, 816 F.3d 482, 483. Therefore, the collusion in a lease termination, which creates an exception to the general rule, as noted in *Haines*, applied to the fact situation of *Great Lakes Quick Lube L.P.*. In this case, Hands On cannot show any collusion between Karagan and Hands On that would allow the Court in this case to overlook the general rules established under 11 U.S.C. § 365(c).

**B.      Because of the limitations under Ind. Code § 32-18-2-18(e), because the Adversary Complaint is void of any efforts on the part of Hands On to hinder, delay, or defraud, and because of Hand's On's own unclean hands, Hand's On's state fraudulent transfer claims must also fail.**

Count II of the Hands On's Adversary Complaint seeks relief under I.C. § 32-2-7-14 and 11 U.S.C. § 544. The problem with such count is that Ind. Code § 32-2-7-14 has been repealed. Presumably, Hands On is seeking relief under Indiana adoption of the Uniform Voidable Transactions Act, which may previously have been contained under I.C. § 32-2-7-14, and which can now be found under I.C. § 32-18-2-14 and I.C. § 32-18-2-15. However, I.C. § 32-18-2-18(e)(1), provides, "A transfer is not voidable under section 14(a)(2) or section 15 of this chapter if the transfer results from: (1) termination of a lease upon default by the debtor when the termination is permitted by the lease and applicable law . . .." Because Karagan terminated Hand On's lease interest in the Premises pursuant to the terms and provisions of the Lease as explained above, and because I.C. § 32-18-2-18(e)(1) prevents lease terminations to be subjected to fraudulent transfer claims under I.C. § 32-18-2-14(a)(2) and I.C. § 32-18-2-15, Hands On may only proceed at this time under I.C. § 32-18-2-14(a)(1).

I.C. § 32-18-2-14(a)(1), provides that "A transfer made or an obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the

obligation: (1) with actual intent to hinder, delay, or defraud any creditor of the debtor . . ..” I.C. § 32-18-2-14(a)(1). However, even if the facts alleged in Hands On's complaint are presumed to be true, nothing in the Adversary Complaint can be read to show any actual intent to hinder, delay, or defraud any creditor of the debtor on the part of the debtor. A reading of I.C. § 32-18-2-14(a)(1), provides that for a transfer to be voided under this section “the debtor [must have] made the transfer or incurred the obligation: (1) with actual intent to hinder, delay, or defraud any creditor of the debtor . . ..” In reading the Adversary Complaint, the Adversary Complaint is void of any allegation that shows Hands On made the transfer with actual intent to hinder, delay, or defraud any creditor. The only paragraph in the Adversary Complaint dealing with any allegations of hindering, delaying, or defrauding any creditor of the debtor, can be found in paragraph 36, which reads, “The unlawful and fraudulent termination was made with actual intent to hinder, delay, or defraud the creditors of Debtors and to take Debtor's Property.” Adversary Complaint, Paragraph 36.

However, contrary to the broad allegations in Paragraph 36 of the Adversary Complaint, there is no evidence to support any sort of effort to hinder, delay, or defraud on the part of Hands On. In fact, as the evidence shows in the Affidavit attached with this memorandum and the documents attached there to, the termination of the Lease was simply Karagan exercising her contractual rights to declare the lease in default and to terminate the Lease in accordance with the terms and provisions of the Lease, as permitted under Indiana law. Based on the factual allegations of the Adversary Complaint, it appears that the debtor is trying to assert that Karagan attempted to hinder, delay, or defraud the debtor's creditor's by somehow trying to get Hands On off the Premises and then do some sort of new lease with Duke of Oil. Even if we assume such facts to be true, for argument's sake, such facts fail to allege any wrongdoing on the part of

13

Karagan.  No evidence exists to show that Karagan would have been prevented from exploring her options, while she lawfully exercised her right to terminate the Lease, let alone any wrongdoing on the part of Hands On.

Nevertheless, even if there did exist some sort of evidence to show wrongdoing on the part of Karagan, any such evidence would be irrelevant.  Although Karagan to date has been unable to find any direct citation in Indiana on this point, an opinion interpreting a similar provision under the Uniform Voidable Transactions Act, as adopted by Pennsylvania, confirms that the relevant section on intent to hinder, delay, or defraud "considers only the debtor's intent in making the transfer, not [the] transferee's intent, which is irrelevant."  *Chestnut Street Consolidated, LLC v. Dawara*, 619 F. Supp. 3d 489, 505-506 (E.D. Penn. 2022).  For arguments sake, if for some reason, the Court were to reject the arguments made in the preceding section, the same analysis would also apply to any allegations of actual fraud under the bankruptcy statutes.

The facts provided by Karagan  confirm that Hands On was not involved in the decision to terminate the lease.  Karagan unilaterally exercised her rights to declare a breach under the Lease and to terminate the Lease.  Therefore, Hands On had no opportunity to hinder, delay, or defraud any creditors because it had no say in Karagan's election to terminate the Lease.

It should also be noted that I.C. § 32-18-2-20 provides, "Unless superseded by this chapter, the principles of law and equity, including the law merchant and the law relating to principal and agent, equitable subordination, estoppel, laches, fraud, misrepresentation, duress, coercion, mistake, insolvency, or other validating or invalidating cause, supplement this chapter."  In this case, you have a tenant who breached the Lease, and whose breaches then resulted in the termination of the Lease.  Moreover, that same tenant can point to no wrongdoing

14

on the part of the landlord in her efforts to declare the Lease in default and to terminate the Lease. Now that the tenant has breached the Lease, the tenant is trying to use the Uniform Voidable Transactions Act to undo the termination of the Lease that was done in accordance with the Lease previously agreed to by the Tenant. In this instance, the equitable principal of unclean hands should prevent Hands On from now seeking to undo a lease termination caused by Hands On's own defaults under the Lease. Therefore, I.C. § 32-18-2-20 should prevent Hands On from prevailing in any action presently before the Court when it comes to this Court with unclean hands.

> **C.**     **Alternatively, even if the Court were to reject the preceding arguments, and instead, the Court were to review whether Hands On received less than reasonable equivalent value when the Lease was Terminated, the elimination of Tenant's obligations to pay real estate, rent, and other expenses related to the Premises constitutes reasonable equivalent value.**

Alternatively, even if this Court were to reject the preceding arguments that prevent any recovery by Hands On, the Cour may still reject any claims of less than reasonable equivalent value under 11 U.S.C. § 548(a)(B)(i). As a result of the Lease being terminated, Hands On was absolved of its obligations to pay monthly rent, real estate taxes and other obligations that would have continued to accrue until the Lease would have terminated through its own initial term, which was set to expire on October 13, 2028. With the Lease terminating on October 15, 2024, Hands On was absolved of its obligation to pay monthly rent at the per month amount of $6,250.00; therefore, with there being 36 months between the termination date of October 15, 2025, and the original lease term expiration of October 14, 2028, Hands On was absolved of its obligation to pay $225,000.00. Moreover, with respect to the property tax installments, the second installment of the 2023 pay 2024 property taxes due in November of 2024 totaled $6,361.58, and the first and second installments for the 2024 pay 2025 property taxes were

15

$7,601.70 and $5,886.09. Presuming those similar rates for the first and second installment of the 2025 pay 2026, 2026 pay 2027, and 2027 pay 2028 property taxes, there would have been at least three more first installments and two more second installments, due in May of 2025, 2026, 2027 and 2028, at a first installment rate of around $7,601.70, and due in November of 2025, 2026, and 2027, at a second installment rate of around $5,886.09, which in turn would have resulted in an additional absolved amount of $48,065.07 (($7,601.70x4)+($5,886.09 x 3), in addition to the total absolved amount of $273,065.07, attributed to rent and property taxes, additional amounts could also be tacked on for insurance premiums, utility expenses, and other amounts that would become due and owing as a result of the Lease and the occupancy of the Premises. However, just the $273,065.07 attributed to rent and taxes, alone confirms that through the termination of the Lease, Hands On was absolved of a significant amount through the terms and provisions under Section 19 that release Hands On from future Lease obligations after the Lease is terminated.

"The party bringing the fraudulent conveyance action bears the burden of proving each of these elements by a preponderance of the evidence." *In re Fruehauf Trailer Corp*., 444 F. 3d 203, 211 (3d Cir. 2006). Although the facts of this case are slightly different than the facts in the case of *In re White*, 559 B..R. 787 (Bankr. N.D. Ga. 2016), because the lease in such case was voluntarily terminated by the tenant and landlord, whereas the Lease in this case was terminated on account of Hands On's breach of the Lease the White Court's valuation of tenant's obligations that were released when the lease was terminated, should also be applied to this case. In the White case, the court wrote,

> Here, it is undisputed that Debtor received value in exchange for signing the Lease Termination Agreement. Under the Lease Agreement, Debtor was responsible *801 for paying property taxes, insurance, utilities and general maintenance for the Hillside Property. This obligation continued throughout the

16

term of the lease and Debtor could not unilaterally terminate the Lease Agreement to avoid the obligation. At the time of termination, Debtor owed $30,599.85 for taxes and $23,800.67 for insurance. After Debtor vacated the premises, Shechem spent $149,284 to repair the Hillside Property. Debtor was therefore liable for $203,684.52, and his liability would have continued to grow if he remained in possession of the property. *In re White*, 559 B..R. 787, 800 to 801.

Hands on cannot provide any evidence to support its claims that its release of at least $273,065.07 attributed to rent and taxes, alone, was not reasonably equivalent to any lost improvements that Hands On may have surrendered through the termination of the lease. Therefore, any claims for relief under either 11 U.S.C. § 548(a)(B)(i), must fail because there is no evidence to support same. Furthermore, any amounts recovered by Hands On would be setoff by all amounts that Hands On would owe to Karagan under 11 U.S.C. § 553(a), which allows a creditor to setoff amounts due and owing longer than 90 days from the petition date, which would include the rents and property taxes that would have accrued prior to November 20, 2024, and which would include the $6,250 monthly rents due on the 15th of each month for July, August, September, October and November of 2024, plus the $28.363.20 paid in real estate taxes by the landlord on August 23, 2024 and November 12, 2024, which all together total $59,613.20. Moreover, Karagan will maintain additional claims for post-petition Lease obligations under 11 U.S.C. § 366(d)(3), in the event that Hands On were to somehow undo Karagan's prior termination of the Lease, and those amounts would further offset any potential recoveries under 11 U.S.C. § 548(a)(B)(i).

## CONCLUSION

For all of the foregoing reasons, this Court should summarily deny all requested relief requested in the Hands On Adversary Complaint so that Karagan may proceed with the state court eviction proceedings and obtain full possession of the real estate that makes up the Premises in accordance with the terms and provisions of the Lease. First and foremost, Hands

17

On cannot revive the Lease, because the Lease was terminated well before the termination of the bankruptcy petition. To allow Hands On to somehow revive the Lease through any sort of claims under any fraudulent transfer claim would contradict a borrower's ability to assume a lease under 11 U.S.C. § 365(c)(3). This argument also does not address the fact that Hands On has failed to make a single rental payment, as required under 11 U.S.C. § 365(d)(3). Furthermore, Indiana law limits the ability of tenant to seek fraudulent transfer relief under the state statutes to just I.C. § 32-18-2-14(a)(1), which requires actual fraud on the part of Hands On in the termination of the Lease, and there is no evidence of any actual fraud on the part of Hands On, because the Lease was terminated by Karagan after Hands On breached the Lease. Moreover, Indiana law on unclean hands also prevents Hands On from seeking any relief under I.C. § 32-18-2-14(a)(1), because Hands On first breached the Lease. Finally, if for some reason the Court were to overlook the preceding arguments, the release of Hands On from future obligations under the Lease constituted reasonable equivalent value for whatever improvements may have been surrendered by Hands On. Therefore, there is no legal or factual basis for Hands On to prevail on any of its claims, and Karagan should be awarded a summary judgment in her favor, with such judgment denying all requested relief under the Adversary Complaint.

ADVERSARY DEFENDANT ELAINE
KARAGAN, by counsel,
**KORANSKY, BOUWER & PORACKY, P.C.**
BY: */s/* James M. Yannakopoulos
James M. Yannakopoulos (#25164-45)
425 Joliet St. Ste. 425
Dyer, IN 46311
Telephone: (219) 865-6700
Facsimile:  (219) 865-5839
E-mail: jyannako@kblegal.net

18

## CERTIFICATE OF SERVICE

I hereby certify that on April 16, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which sent notification of such filing to all counsel and parties with copies being sent via first class mail postage prepaid for those parties who do not receive email notices according to the CM/ECF System.

Via CM/ECF email to:

Daniel L. Freeland - dlf9601@aol.com

By: ___/s/ *James M. Yannakopoulos*___

James M. Yannakopoulos (#25164-45)