# GROUND LEASE

*THIS GROUND LEASE* ("Lease") dated this __9__ day of August, 2007, between **Nick Karagan** **Elaine Karagan** _____ (hereinafter, whether one or more, "Landlord") and Hands On Premium Car Wash, LLC, an Indiana limited liability company ("Tenant").

1.  **EFFECTIVE DATE.** The effective date of this Lease ("Effective Date") shall be the date of final execution of this Lease.

2.  **DESCRIPTION OF PROPERTY.** In consideration of the mutual covenants contained herein, Landlord hereby leases to Tenant and Tenant hereby leases from Landlord the property in the City of St. John, County of Lake and State of Indiana, as legally described and shown in Exhibit "A" attached hereto and incorporated herein by reference, having frontage along US Highway 41 (commonly known as 8445 Wicker Avenue); containing approximately fifty thousand (50,000) square feet and/or one and fourteen hundredths (1.14) acres, including roads, streets, or public rights-of-way, together with (a) all rights, easements, servitudes, rights-of-way, and appurtenances belonging or appertaining thereto, (b) all right, title and interest of Landlord in and to any and all roads, streets, alleys and ways, bounding such property, and (c) all buildings and other improvements thereon, if any ("Property").

    The Property shall be subject to a more definitive legal description as shall be obtained by Tenant from an accurate ALTA/ACSM Minimum Standard Detail Survey acceptable to Tenant, at Tenant's cost.

3.  **TERM.** The term of this Lease shall commence on the Effective Date, and unless the term is terminated sooner as provided in this Lease, shall terminate twenty (20) years after the Commencement Date, subject to Tenant's options to extend the term.

4.  **EXTENSIONS.** Tenant shall have the option of extending the Term for four (4) additional periods of five (5) years each ("Extension(s)"), commencing at midnight on the date on which the Term or any extension expires.. Tenant shall be deemed to have exercised its option to extend, and the term of this Lease shall automatically be extended unless Tenant notifies Landlord in writing of its election not to extend this Lease at least ninety (90) days prior to the expiration of the term then in effect or any Extension thereof.

5.  **CONSTRUCTION OF PROJECT BY TENANT .** Tenant shall complete the construction of the improvements on the Property consisting of a building approximately 7,800 square foot in size to be used for a car wash, automotive detail shop and deli restaurant (collectively, "Tenant's Intended Use") constructed according to the Tenant's plans and specifications, together with curb cuts and off-street parking and signage acceptable to Tenant, including without limitation, Tenant's identification pole sign (which may need to be a part of a development sign), building sign and directional/entrance-exit signs (hereinafter referred to as the "Project"). The entire cost and expense of the Project shall be borne and paid by Tenant, including all liability (during construction of the Project only) and property (including "builder's risk") insurance. Tenant shall complete the Project not less than six (6) months after (a) Landlord secures the Governmental Approvals (as hereinafter defined in Section 8); (b) Tenant is issued a building permit for the Project; and (c) the completion of the Landlord's Work; whichever is the last to


EXHIBIT
A

Engineered Clean Fill only PWk 8-9-07    PWk 8-9-07

occur. The excavated spoil'from the Project may be stock piled on lots 1, 3 or 4 by Tenant.

6.    **INDEMNIFICATION AGAINST LIENS.** It is agreed and understood that no party shall permit or allow others to permit the Property or related easements or rights-of-way referred herein to provide access to the Property to be encumbered with a lien or claim of a mechanic or materialman. Each party does hereby indemnify, protect, defend and hold the other party harmless from and against any claims, losses, demands, liabilities, suits, costs, and damages, including consequential damages and attorney's fees of counsel selected by the indemnified party and other costs of defense, incurred, arising against, or suffered by the indemnified party or its assigns as a direct or indirect consequence of the filing of a mechanic or materialman lien.

7.    **RENT.** Tenant shall pay to Landlord the following rent, per annum (the " Rent"), in equal monthly installments:

(a)    **NO RENT DURING CONSTRUCTION.** Notwithstanding anything contained herein to the contrary, no Rent shall be due for the period that commences on the Effective Date and ends on the last of the following to occur (the "Commencement Date"): (i) satisfaction of the Conditions Precedent set forth in Section 8 below, (ii) Landlord providing Tenant with fully signed Non-Disturbance and Attornment Agreements (hereinafter defined) and with a fully signed Memorandum of Lease, (iii) satisfactory title as set forth in Section 10 below, and (iv) Landlord's completion of the Landlord's Work and Tenant's timely completion of the Project.

In the event the Commencement Date of this Lease shall not have occurred within one (1) year after the Effective Date, this Lease shall terminate and the parties shall be released from further liability.

(b)    **RENT DURING INITIAL TERM.** Tenant agrees to pay Landlord rent in equal monthly installments in advance on the first day of each and every calendar month following the Commencement Date and thereafter during the term of this Lease, as follows (hereinafter referred to as "Rent"):

|  | Annual | Monthly |
|---|---|---|
| Rent for Years 1-5: | $ 55,000.00 | $ 4,583.34 |
| Rent for Years 6-10: | $ 65,000.00 | $ 5,416.67 |
| Rent for Years 11-15: | $ 70,000.00 | $ 5,833.34 |
| Rent for Years 16-20: | $ 75,000.00 | $ 6,250.00 |

The first payment of Rent shall be due on the Commencement Date. In the event that the Commencement Date falls on a day other than the first day of a calendar month, the Rent for the first and last months of this Lease shall be prorated.

(c)    **RENT DURING EXTENSIONS.** In the event Tenant exercises any of the Extensions, the Rent for such Extension shall be payable in equal monthly installments in advance on the first day of each and every calendar month during such Extension, as follows:

|  | Annual | Monthly |
|---|---|---|
| 1st Extension | $ 80,000.00 | $ 6,666.67 |
| 2nd Extension | $ 85,000.00 | $ 7,083.34 |
| 3rd Extension | $ 90,000.00 | $ 7,500.00 |
| 4th Extension | $ 95,000.00 | $ 7,916.67 |

8.    **CONDITIONS PRECEDENT** .    Landlord hereby acknowledges that Tenant's initial plans are to engage in the Tenant's Intended Use (as defined hereinabove) and the construction of the Project according to Tenant's plans and specifications, together with curb cuts and off-street parking and signage acceptable to Tenant, including without limitation, Tenant's identification pole sign (which may need to be a part of a development sign), building sign and directional/entrance-exit signs and thereafter for any lawful use.    Therefore, Tenant's obligation to pay Rent are subject to the satisfaction of the following conditions and covenants:

(a)    Landlord, at its cost and expense, shall obtain the approval of all public or governmental authorities as to all matters relating to zoning, subdivision, lot splits, development standard variances and site or development plan approval (hereinafter collectively, "Governmental Approvals"), as will permit the Tenant to operate the Property in accordance with Tenant's Intended Use and its Project.  Landlord hereby covenants and agrees to file for and pursue such Governmental Approvals in good faith and with all due diligence.  The cost of building permits only are Tenant's responsibility.

(b)    The water and gas mains, electric power and telephone lines and sanitary and storm sewers being located in the public right of way adjacent to the Property and available and adequate for Tenant's Intended Use.  If any of said utilities are not located at the property line of the Property or are not available and adequate for Tenant's Intended Use, Landlord hereby covenants and agrees to extend same, in the public right of way or other location, to the property line, at Landlord's sole cost, within sixty (60) days after Tenant delivers its plans and specifications for said utilities to Landlord and Tenant waives all contingencies, except for utilities, but in no event later than thirty (30) days prior to the date Tenant takes vacant possession of the Property.

(c)    Tenant obtaining all necessary governmental permits, licenses, easements and approvals, of any type and from any necessary party, for Tenant's Intended Use, to which end Landlord shall execute such documents, make such appearances and do such other things as Tenant may reasonably request.

(d)    Tenant obtaining, if needed after reviewing Landlord's engineering drawing from Torringa Engineering, an ALTA/ACSM Minimum Standard Detail Survey reasonably satisfactory to Tenant bearing a legal description, made by a licensed surveyor, and showing, among other things, the area, dimensions and location of the Property to the nearest monuments, streets, alleys on all sides, the topography, the location of all available utilities in adjoining streets, alleys or property, the location of all recorded and apparent easements against or appurtenant to the Property, certifying the

Ground Lease

Hands On Premium Car Wash, LLC

3

applicable zoning and flood zone classifications and not disclosing any condition rendering the Property unusable, for Tenant's Intended Use.

(e)   Tenant, at it's expense but with Landlord's cooperation, shall conduct such review as Tenant deems desirable of the Property and the suitability of the Property for Tenant's Intended Use.  At any time after the Effective Date, Tenant and its surveyors, engineers, soil testing companies and other agents shall have the right to enter upon the Property for the purpose of obtaining the survey, engineering studies, soil tests, and inspections as to the condition of the Property and any improvements thereon. Tenant agrees to indemnify and hold harmless Landlord against any cost, expense and damages incurred or suffered by Landlord in connection with such activities. Tenant, or its agents shall have liability insurance coverage.

(f)   Tenant obtaining ingress and egress to public thoroughfares adequate, in Tenant's reasonable opinion, for Tenant's Intended Use. Landlord shall pay for the cost of constructing the driveway to the Property and the cost of any retention pond required by the Town of St. John, Indiana.

(g)   The installation of sanitary sewer, potable water, electric, and telephone utilities stubbed to the property line of the Property.

In the event the foregoing conditions of this Lease have not been satisfied or complied with within one hundred and twenty (120) days, or if the conditions or contingencies do not meet with Tenant's approval or if they disclose matters which would make the Property unsuitable for the purposes stated in this Lease, Landlord or Tenant may, at any time after said time period, terminate this Lease.  Landlord and Tenant covenant to act in good faith and use due diligence to satisfy all conditions for which they are responsible, and neither party shall have the right to terminate this Lease unless it has so performed.  If Landlord elects to terminate this Lease as provided for in this section, Tenant shall have thirty (30) days after receiving Landlord's termination notice to waive, in writing, the foregoing conditions in this section.  If Tenant waives the conditions in this section, the foregoing conditions are waived and the Commencement Date is triggered, provided that all other conditions precedent have been satisfied pursuant to Section 7.  If Tenant does not waive the conditions in this section, this Lease will terminate and be of no further force or effect thirty (30) days after Landlord's notice of termination is received by Tenant.

9.   **SITE IMPROVEMENTS**.  Landlord, at its sole cost and expense, shall perform or cause to be performed to completion, the following (hereinafter collectively referred to as "Landlord's Work"):

(a)   The installation of an eight inch (8") water main around lot 2 servicing lots 1, 3 and 4.

(b)   Storm water management facilities including sewer lines and retention or detention basins together with lift station pump and forcemain up to and including CB7 and CB3.

Ground Lease

Hands On Premium Car Wash, LLC

4

(c) Sanitary sewer lines servicing lots 1-4, inclusive, with connections as specified by Torrenga Engineering and stubbed to the Property.

(d) All lot corners shall be staked by an Indiana licensed surveyor.

(e) The installation of all private roadways adjacent to the Property providing access to public streets and rights-of-way (with required fill), and all related curb cuts (including the INDOT specifications for the cut to Wicker Avenue), curbing and related landscaping.

(f) The installation of electric and telephone utilities stubbed to the property line of the Property.

The Landlord's Work shall be completed no later than sixty (60) days after the satisfaction of the conditions set forth in Section 8 hereinabove. The Landlord's Work shall be performed in a manner which is generally customary for shopping centers in Lake County, Indiana and the region utilizing customary and standard design, engineering and construction methods, standards and specifications to provide for ingress and egress to the Property. Landlord's Work shall be in accordance with all local standards and ordinances.

10. **TITLE INSURANCE.** Landlord shall provide to Tenant, at Landlord's expense, (a) a current Commitment for Leasehold Title Insurance ("Title Commitment") covering the Property issued by Ticor Title Insurance Company (the "Title Company"), whereby the Title Company commits to issue to Tenant an ALTA Leasehold Policy of Title Insurance on the current form of the American Land Title Association (the "Title Policy"), in an amount equal to the fair market value of the land and building with the standard exceptions to title deleted and subject only to exceptions agreed to by Tenant in writing; and (b) true and legible copies of all instruments listed or referred to as exceptions on the Title Commitment. Upon final execution of this Lease, Landlord shall deliver to Tenant any prior title evidence, such as a current abstract or title policy, it may have to expedite further examination of title. If the Title Commitment discloses any encumbrances or other matters affecting title (including mineral interests) not satisfactory to Tenant, Landlord shall have thirty (30) days from the date of Tenant's notice of such defects to make a good faith effort to cure such defects and to furnish a later report showing the defects as cured or removed. If such defects cannot be cured within said thirty (30) days, Tenant may, at its election, accept the leasehold interest with the objections or Tenant may terminate this Lease, in which case the parties shall be released from any further liability hereunder and this Lease shall thereafter be null and of no further force or effect.

11. **NON-DISTURBANCE AND ATTORNMENT.** Landlord will obtain from every senior landlord, mortgagee and holder of a deed of trust upon the Property within sixty (60) days after the Effective Date, an agreement in recordable form acceptable to Tenant wherein the senior landlord(s), mortgagee(s) and holder(s) of the deed(s) of trust agree not to disturb Tenant's possession, deprive Tenant of any rights and increase Tenant's obligations, under this Lease ("Non-Disturbance and Attornment Agreement"). Landlord agrees not to further mortgage or encumber the fee or its leasehold estate from the Effective Date to the date of recording of a Memorandum of Lease unless Landlord obtains a Non-Disturbance and Attornment Agreement.

Upon the failure of Landlord to provide Tenant with an acceptable Non-Disturbance and Attornment Agreement pertaining to every senior lease, mortgage and deed of trust prior to Tenant's commencement of construction of the building, Tenant may terminate this Lease.

12. **REAL ESTATE TAXES** . Tenant shall pay before they become delinquent real estate taxes imposed during the Term and any Extensions upon or against the Property and the building and/or other improvements constructed on the Property by Tenant ("Real Estate Taxes"). Nothing herein contained shall require Tenant to pay (a) corporation, franchise, income, estate, gift and inheritance taxes or charges imposed on rent or other similar taxes, charges or impositions which may be levied or assessed against Landlord, fee owner, or their successor in title or (b) real estate taxes on easement parcel(s). If, for Real Estate Tax purposes, the Property is assessed as part of a larger tract of land, Landlord shall use its best efforts to cause the Property to be separately assessed and taxed. If Landlord cannot cause the Property to be separately assessed and taxed, such assessments and taxes shall be equitably allocated.

Real Estate Taxes payable by Tenant shall be paid not later than the date on which such Real Estate Taxes become delinquent. A receipted tax bill shall be delivered to Landlord upon request. In the event Tenant fails to pay Real Estate Taxes within the time provided, Landlord may, after fifteen (15) days written notice, pay same, in which event Tenant shall remain liable to and obligated to repay Landlord the amount so advanced together with interest thereon at the rate of ten percent (10%) per annum. In the event any Real Estate Taxes may be payable in installments, Tenant shall have the right to pay same as such installments fall due. Real Estate Taxes for the year in which the Term shall begin and the year in which this Lease shall terminate shall be prorated so that Tenant shall pay only those portions thereof which correspond with the portion of said years as are within the Term, as may have been extended.

Tenant shall have the right, at its own cost and expense, to initiate and prosecute any proceedings permitted by law for the purpose of obtaining an abatement of or otherwise contesting the validity or amount of Real Estate Taxes assessed or levied upon the Property and the building and/or other improvements constructed on the Property by Tenant. If required by law, Tenant may take such action in the name of Landlord who shall cooperate with Tenant shall fully indemnify and save Landlord harmless from all loss, cost, damage and expense incurred by or to be incurred by Landlord as a result thereof, and further provided Tenant shall, at Landlord's request, escrow or post a bond for the full amount of the Real Estate Taxes claimed pending such proceedings.

13. **INSURANCE.** From the Effective Date and continuing during the Term and any Extensions, Tenant shall protect, indemnify and save harmless Landlord from and against any and all liability to third parties incurred by any act or neglect of Tenant, or any of its agents, servants, or employees, in, on, or about the Property, and shall at all times at its own cost protect Landlord with commercial general liability insurance, in the amount of One Million Dollars ($1,000,000.00) combined single limit (bodily injury and property damage). Tenant will, within thirty (30) days of written request, deliver to Landlord a certificate showing such insurance to be then in effect.

14. **LANDLORD'S TITLE AND QUIET ENJOYMENT** .  Landlord represents and warrants that Landlord is seized in fee simple title to the Property, free, clear and unencumbered.  Landlord covenants that so long as Tenant fulfills the conditions and covenants required of it to be performed, Tenant will have peaceful and quiet possession thereof.  Landlord further represents and warrants that it has good right, full power and lawful authority to enter into this Lease for the Term and any Extensions.

15. **IMPROVEMENTS AND ALTERATIONS**.

   (a)   Landlord covenants that it shall (i) immediately demolish and remove all existing, if any, in accordance and in compliance with all local, state and federal building, demolition and environmental codes, laws and ordinances(ii) deliver sole and vacant possession of the Property to Tenant, free and clear of all tenancies and parties in possession within ten (10) days after Tenant notifies Landlord that all conditions precedent have been satisfied and Tenant provides Landlord with such standards and specifications.  In the event Landlord fails to perform the work required of it under this Section and deliver vacant possession to Tenant on a timely basis, Tenant, at its option, may perform such work and take such action as may be necessary to obtain such vacant possession and the costs therefore shall be deducted from Tenant's Rent.

   (b)   From and after the Effective Date, Tenant shall have the right from time to time to construct a building and/or other improvements upon the Property and to alter, renovate, add, remodel, modify, change the building as Tenant may deem desirable.  The building and/or other improvements upon the Property shall be and remain the property of Tenant during the Term and any Extensions, and for a period of fifteen (15) days after the termination or expiration of this Lease.  Tenant shall not be required to remove the building and/or other improvements upon the Property and Tenant's failure to do so after the expiration of such period shall be deemed to be an abandonment thereof, whereby title shall become vested in the Landlord.

16. **LIENS**.  Landlord and Tenant covenant each with the other not to permit any judgment, attachment and/or lien to be filed against the Property except for any liens permitted expressly by the terms of this Lease.  Should any judgment, attachment and/or lien of any nature be filed against the Property, except as expressly permitted by this Lease, the party from whose fault or alleged debt such lien arises shall within thirty (30) days cause such judgment, attachment and/or lien to be removed by substitution of collateral or otherwise.

17. **LEASEHOLD MORTGAGE**.  Notwithstanding any other provision of this Lease to the contrary, Tenant shall have the unrestricted right to execute and deliver a mortgage, deed of trust, pledge and/or collateral assignment of this Lease ("Mortgage") as security for any indebtedness in any form whatsoever.  In the event Tenant shall execute and deliver a Mortgage, and if the holder of the indebtedness secured by this Lease ("Mortgagee") notifies Landlord of the execution of such Mortgage, and the name and place for service of notices upon such Mortgagee, then and in such event, Landlord hereby agrees for the benefit of Tenant and such Mortgagee from time to time:

Ground Lease                                                                    Hands On Premium Car Wash, LLC

7

(a) That Landlord will give to any Mortgagee simultaneously with service on Tenant a duplicate of any and all notices or demands given by Landlord to Tenant and no such notice to Tenant shall be effective unless a copy is so serviced upon Mortgagee.

(b) Mortgagee shall have the privilege of performing any of Tenant's covenants or of curing any defaults by Tenant or of exercising any election, option or privilege conferred upon Tenant by the terms of this Lease.

(c) Landlord shall not terminate this Lease or Tenant's right of possession for any default of Tenant if, within a period of thirty (30) days after the expiration of the period of time within which Tenant might cure such default, such default is cured or caused to be cured by Mortgagee or, if within a period of thirty (30) days after the expiration of the period of time within which Tenant might commence to eliminate the cause of such default, Mortgagee diligently commences to eliminate the cause of such default.

(d) No liability for the payment of rent or the performance of any of Tenant's covenants and obligations of this Lease shall attach to or be imposed upon any Mortgagee, while not in possession of the Property, all such liability being hereby expressly waived by Landlord.

(e) With exception of those portions of this Lease dealing with rent and term, Landlord shall, if requested by Tenant, not unreasonably refuse to make any clarifications and/or corrections to this Lease, as may be required by Mortgagee.

(f) No provisions of this Lease as may restrict the use of the Property to less than for any lawful purpose, require the Property to be used for a particular purpose, inhibit free assignment or subletting or require or imply specified times of business operation shall be binding upon a Mortgagee in possession or its successors in interest, except Tenant, its parent, subsidiary or affiliated companies.

18. **FIRST RIGHT OF REFUSAL.** Landlord hereby grants to Tenant a first right of refusal to purchase from Landlord the Property. If and when Landlord decides to sell the Property and receives a bona fide offer to purchase from any third party, in writing, prior to accepting said offer, Landlord shall forward said written offer to purchase to Tenant. Tenant is hereby granted thirty (30) days after receipt of notice of such third party written offer to Landlord in which to notify Landlord of Tenant's acceptance of the terms of such third party offer to Landlord by submitting to Landlord, Tenant's written offer in the amount of the third party offeror's purchase price. The sale from Landlord to Tenant shall be consummated by closing within thirty (30) days after the date of Tenant's acceptance notice to Landlord, or such longer time as provided in Landlord's bona fide offer received by such third party. Landlord shall supply to Tenant at closing a title insurance policy in the amount of the purchase price, subject only to taxes, easements and restrictions, highways and legal right-of-way.

19. **DEFAULT.** In the event Tenant shall fail to pay the Rent when due or shall fail to perform any of its other obligations under this Lease, after notice of such default

shall have been given as provided below, Landlord may as its sole and exclusive remedy elect either:

(a)     to re-enter the Property by summary proceedings or similar proceedings and re-let the Property, using its best efforts therefor, and receiving the rent therefrom, applying the same first to the payment of Rent accruing hereunder, the balance, if any, to be paid to Tenant; but, Tenant shall remain liable for the equivalent of the amount of all Rent reserved herein less the receipts of re-letting, if any, and such amount shall be due and payable to Landlord as damages or Rent, as the case may be, on the successive rent days provided above, and Landlord may recover such amount periodically on such successive days:

(b)     to terminate this Lease and to resume possession of the Property wholly discharged from this Lease; or

(c)     demand a late payment fee of Three Hundred Dollars ($300.00) per month for each failure to pay Rent.

Such election shall be made by written notice to Tenant at any time on or before the doing of any act or the commencement of any proceedings to recover possession of the Property by reason of the default then existing and shall be final.  If Landlord shall elect to terminate this Lease, all rights and obligations of Tenant relating to the unexpired portion of this Lease shall cease.  Within ten (10) days after receipt by Tenant of notice of election by Landlord to terminate this Lease, the parties shall by an instrument in writing, in recordable form, terminate this Lease and Tenant shall surrender and deliver to Landlord the Property, including the building and other improvements, except trade fixtures, signs, equipment and other personal property. Upon any default by Tenant in so doing, Landlord shall have the right to re-enter the Property by summary proceedings or similar proceedings.

Neither bankruptcy, insolvency, nor the appointment of a receiver or trustee shall affect this Lease so long as the obligations of Tenant are performed by Tenant, its successors or assigns.

No default hereunder shall be deemed to have occurred on the part of Tenant until thirty (30) days after written notice of such default shall have been given to Tenant, and Tenant within such time shall have failed to remedy such default. If any default by Tenant, except payment of the Rent, cannot reasonably be cured within thirty (30) days after notice then Tenant shall have additional time as may be reasonably necessary.

20.     **CONDEMNATION.**  From and after the Effective Date, Tenant shall have the following rights in the event of a taking of the entire Property or any part thereof, by reason of any exercise of the power of eminent domain, including any transfer in lieu thereof:

(a)     TOTAL PERMANENT.  In the event of a taking of the entire Property or, in the judgment of Tenant, a substantial portion as would render the balance of the Property not suitable for Tenant's use, this Lease shall terminate upon the date that possession is surrendered to the condemning authority, at which time all rights and obligations between the parties shall cease and Rent and

other charges payable by Tenant under this Lease shall be apportioned. The taking of any portion of the building, twenty percent (20%) or more of the then existing parking area, or the loss of the rights of ingress and egress as then established, shall be at Tenant's election, but not exclusively considered, such a substantial taking as would render the use of the Property not suitable for Tenant's use. Notwithstanding any provision of this Lease or by operation of law that leasehold improvements may be or shall become the property of Landlord at the termination of this Lease, the loss of the building and other improvements paid for by Tenant, the loss of Tenant's leasehold estate and such additional relief as may be provided by law shall be the basis of Tenant's damages against the condemning authority if a separate claim therefor is allowable under applicable law, or the basis of Tenant's damages to a portion of the total award if only one award is made.

(b)   **PARTIAL PERMANENT.** In the event of a taking of less than the entire Property or, in the judgment of Tenant, less than a substantial portion as would render the balance of the Property not suitable for Tenant's use, Tenant shall be entitled to a reduction of Rent in such amount as shall be just and equitable. In consideration of such reduction of Rent, Tenant waives any claim for damage to or loss of its leasehold estate, all of such award being payable to Landlord, who shall use so much thereof as may be necessary to restore the Property as nearly as possible to its condition immediately prior to the taking. Tenant shall have the option to perform such restoration and Landlord shall upon Tenant's election provide the whole of such award or such portion thereof as may be necessary for Tenant to accomplish the restoration. Notwithstanding any provision of this Lease or by operation of law that leasehold improvements may be or shall become the property of Landlord at the termination of this Lease, the loss of the building or other improvements paid for by Tenant and such additional relief as may be provided by law shall be the basis of Tenant's damages against the condemning authority if a separate claim therefor is allowable under applicable law, or the basis of Tenant's damages to a portion of the total award if only one award is made.

(c)   **TOTAL TEMPORARY.** In the event of a taking of the entire Property or, in the judgment of Tenant, a substantial portion as would render the balance of the Property not suitable for Tenant's use, for a period of one (1) year or less, this Lease shall be suspended or tolled from the time the Property is surrendered to the condemning authority and recommence when possession is restored to Tenant. Tenant shall be entitled to the entire award granted for the fee owner, Landlord and Tenant. In consideration of such entire award, Tenant shall not be entitled to any reduction of Rent or other charges payable by Tenant under this Lease. If such taking shall extend beyond one (1) year, the taking shall, at the option of Tenant, be considered permanent and Tenant shall be entitled to all rights, damages and awards pursuant to Section 20(a) of this Lease.

(d)   **PARTIAL TEMPORARY.** In the event of a taking of less than the entire Property or, in the judgment of Tenant, less than a substantial portion as would render the balance of the Property not suitable for Tenant's use, for a period of one (1) year or less, Tenant shall be entitled to the entire award granted for the fee owner, Landlord and Tenant. In consideration of such

entire award, Tenant shall not be entitled to any reduction of Rent or other charges payable by Tenant under this Lease.

(e) **GENERAL.** Should Landlord and Tenant be unable to agree as to the division of any singular award or the amount of any reduction of Rents and other charges payable by Tenant under this Lease, such dispute shall be submitted for resolve to the court exercising jurisdiction of the condemnation proceedings, each party bearing its prospective costs for such determination. Landlord shall not agree to any settlement in lieu of condemnation with the condemning authority without Tenant's consent.

Landlord represents and warrants that at the Effective Date it has no actual or constructive knowledge of any proposed condemnation of any part of the Property. In the event that subsequent to the Effective Date, but prior to the Commencement Date, a total or partial condemnation, either permanent or temporary, is proposed by any competent authority, Tenant shall be under no obligation to commence or continue construction of the building and other improvements and rent and other charges, if any, payable by Tenant under this Lease shall abate until such time as it can be ascertained that the Property shall not be affected in Tenant's sole discretion and Tenant shall be entitled to all rights, damages and awards pursuant to the appropriate provisions of this Section 20.

21. **LITIGATION.** In the event of litigation between the parties with respect to this Lease, the performance of their respective obligations hereunder or the effect of a termination under this Lease, the losing party shall pay all costs and expenses incurred by the prevailing party in connection with such litigation, including, but not limited to, reasonable attorneys' fees of counsel selected by the prevailing party. Notwithstanding any provision of this Lease to the contrary, the obligations of the parties under this section shall survive termination of this Lease. Whenever Landlord or Tenant shall be in default of this Lease, and such default shall cause either party to incur any damages or expenses, such damages or expenses so incurred, with legal interest, and including penalties, costs and reasonable attorneys' fees, may be added or deducted from the next accruing rental payment(s) due.

22. **COMPETITIVE USES.**

(a) With the exception of the Property leased to Tenant, Landlord covenants that it will not lease, rent or permit to be occupied as Tenant's Intended Use, any premises or real estate owned, controlled, leased or occupied by Landlord, its legal representatives, successors or assigns, not presently occupied as such, within a distance of a five (5) mile radius of the Property. For purposes of this section, the term "owned" shall also include any indirect ownership as through partnership, land trust, corporations, and the like.

(b) Landlord does further covenant and agree, that it will not lease, rent or permit to be occupied any premises or real estate within five hundred feet (500') of the Property and owned, controlled, leased or occupied by Landlord, its legal representatives, successors or assigns, not presently occupied as such a store, adult book store, adult theater, adult amusement facility, any facility selling or displaying pornographic materials or having such displays, any use involving the use, storage, disposal or handling of

hazardous materials or underground storage tanks, or any use which creates a nuisance.

(c)     In the event that there is a breach of any of the provisions of this section, Tenant shall have the following rights and remedies, none of which shall be exclusive of the others or any other remedy otherwise available to Tenant:

i.      Tenant may institute proceedings to enjoin the violation in its name or in the name of Landlord.

ii.     If such conflicting use continues for a period of thirty (30) days after written notice thereof shall have been given by Tenant to Landlord, Tenant may, at any time thereafter, elect to terminate this Lease, and upon such election, this Lease shall, on the date fixed in the notice of such election, be terminated and Tenant shall be released and discharged of and from any and all further liability hereunder.

iii.    So long as such condition exists, and Tenant has not elected to terminate this Lease, Tenant's only obligation with respect to rental shall be the payment of one-half (½) the then applicable Rent, so long as such condition shall continue.

iv.     Tenant may hold Landlord liable for any costs and expenses, including counsel fees, sustained or incurred in connection with any proceedings instituted by Tenant to enforce the provision of this Section, and in the event Landlord does not institute and proceed diligently with suit to enjoin such conflicting use may hold Landlord liable for any and all other damages sustained or to be sustained by reason of Landlord's breach.

23.     **ASSIGNMENT OR TRANSFER BY LANDLORD OR TENANT** .    No assignment or transfer of this Lease by Landlord shall be binding on Tenant unless the assignee or transferee shall assume and agree to be bound by the terms of this Lease and until notice of assignment or transfer together with an executed copy of such assignment or transfer instrument is received by Tenant. Tenant shall have the right to assign, sublet or transfer any or all of its rights and privileges under this Lease at any time during the term of this Lease or any extensions with Landlord's consent and approval, which shall not be unreasonably withheld or delayed and Landlord shall expressly acknowledge and agree to the release and novation of Tenant's obligations under this Lease.

24.     **NOTICE.** All notices and demands herein required shall be in writing and shall be sent by either (a) United States Certified Mail, return receipt requested, postage prepaid, or (b) national overnight delivery service with return receipt, delivery charge prepaid, to Landlord at Nick and Elaine Karagan 2046 Birchwood Drive Highland, Indiana 46322 and to Tenant at 636 Cambridge Court, No. 2B, Munster, Indiana 46321. Notices sent by United States Certified Mail as set forth above shall be effective three (3) days after the same is deposited with the United States Postal Service, postage prepaid. Notices sent by national overnight courier service shall be effective one (1) day after depositing the same with such courier service, delivery fee prepaid, marked for next day delivery. Either party may change the

Ground Lease                                                          Hands On Premium Car Wash, LLC

12

address for which notices are given, by providing to the other party such change of address as with any other notice.

25.    **HAZARDOUS SUBSTANCES** .

(a)    **LANDLORD'S REPRESENTATIONS AND WARRANTIES** . Landlord represents and warrants to the best of his knowledge without investigation the following:

i.    The Property does not presently contain and is free from all chemical substances or pollutants known to be hazardous wastes, hazardous substances, hazardous constituents, toxic substances or related materials, whether solid, liquid or gaseous, including but not limited to asbestos, radioactive materials, oil, gasoline, diesel fuel and other hydrocarbons, and any other substances defined as "hazardous wastes", "hazardous substances", "toxic substances", "pollutants", "contaminants", or other similar designations, or any other material, the removal, storage or presence of which is regulated or required and/or the maintenance of which is penalized by the Resources Conservation Recovery Act, 42 U.S.C. §6901, et seq., the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §9601, et seq., the Toxic Substances Control Act, 15 U.S.C. §2601, et seq., the Clean Water Act, 33 U.S.C. §1251, et seq., the Safe Drinking Water Act, 42 U.S.C. §300(f)-300(j) - 10, the Clean Air Act, 42 U.S.C. §7401, et seq., or any other local, state or federal agency, authority or governmental unit (collectively, "Hazardous Substances").

ii.    The Property has not in the past been used for storage, manufacture or sale of Hazardous Substances or for any activity involving Hazardous Substances.

iii.    No Hazardous Substances are located in the vicinity of the Property.

iv.    Landlord has not transported, or caused to be transported, any Hazardous Substances to or from the Property.

v.    Landlord has not received and is not aware of any notification from any federal, state, county or city agency or authority relating to Hazardous Substances, in or near the Property.

(b)    **LANDLORD'S INDEMNITY** . Landlord shall indemnify, defend and hold harmless Tenant from and against any and all liability arising from any and all claims, demands, litigation, or governmental action involving any of the following:

i.    Any breach of the representations and warranties contained in this Section 26.

ii.    The presence or suspected presence of Hazardous Substances on or in the Property, unless such presence is due solely to the acts of

Tenant or the acts of any party other than Landlord, its agents and employees, occurring after the Effective Date.

Without limiting the generality of the foregoing, this indemnification shall specifically cover fines, penalties, sums paid in settlement of claims or litigation, fees for attorneys, consultants and experts (to be selected by Tenant) and costs for investigation, clean-up, removal or restoration.

26.     **BROKERS' INDEMNITY** . Landlord hereby covenants and warrants that there are no real estate brokers involved in this transaction other than Diversified Commercial Real Estate and Investment Company (a division of Rose Real Estate Inc.) and Landlord hereby agrees to indemnify, defend (with counsel selected by Tenant) and hold Tenant harmless from any and all claims, costs or damages incurred by Tenant resulting from any person or firm claiming to have negotiated, instituted or brought about this Lease other than the foregoing describe broker(s).

27.     **APPLICABLE LAW.** This Lease shall be governed by and construed under the laws of the State of Indiana.

28.     **COVENANTS.** Landlord represents, covenants and warrants, in addition to any other representations, covenants and warranties contained in this Lease, that (a) Landlord is seized in full fee simple title to the Property and Landlord has the due power and authority to enter into this Lease without the consent or intervention of any other parties; (b) execution of this Lease by Landlord and construction and operation of Tenant's Intended Use on the Property will not violate any law or ordinance or the terms of any agreements that Landlord or its predecessors in title may have with any other parties, including leases, restrictive covenants, exclusives, mortgages, stand still agreements, and cease and desist orders and any by-laws of Landlord; (c) the Property is not subject to any use or occupancy restrictions (except those imposed by applicable zoning laws and regulations), special taxes and assessments; (d) there are no actions, suits or proceedings pending or threatened against, by or affecting Landlord which affect title to the Property or which questions the validity or enforceability of this Lease or of any action taken by Landlord under this Lease, in any court or before any governmental authority, domestic or foreign; and there are no pending, threatened or contemplated condemnation actions involving all or any portion of the Property, (e) there are no leases, including without limitation, billboard leases, or other agreements for use, occupancy or possession presently in force with respect to all or any portion of the Property; (f) the Property is not listed nor proposed for listing on any National Wetlands Inventory maps nor is the Property contained within a suspected "wetland" area; and (g) all information and data furnished by Landlord to Tenant with respect to the Property will be true, correct, complete and not misleading effective as of the Commencement Date.   All of the covenants, warranties, representations and agreements herein contained shall survive termination of this Lease and shall run with the land and extend to and be binding upon the heirs, executors, administrators, successors and assigns of the respective parties.

29.     **ESTOPPEL CERTIFICATE.** Tenant and Landlord agree at any time and from time to time, upon not less than ten (10) business days' prior written request from the other party, to execute, acknowledge and deliver to the requesting party a statement in writing, in form and content reasonably acceptable to both parties, an estoppel certificate certifying that this Lease is unmodified and in full force and

Ground Lease                                                                   Hands On Premium Car Wash, LLC

14

effect (or if there have been modifications, that the same is in full force and effect as modified and stating the modifications), the dates to which Rent has been paid and certifying that it is not in default (or if a default is alleged, stating the nature of the alleged default), and further certifying such other matters as the requesting party shall require.  It is intended that any such statement delivered pursuant to this Section may be relied upon by any prospective purchaser, lender, subtenant, assignee or any entity which is a party to a potential merger, consolidation with or to the acquisition of substantially all of the assets or stock of Landlord or Tenant. In the event either party shall fail to execute and deliver any such instrument within the foregoing time period as requested, such party hereby irrevocably appoints the requesting party as its attorney-in-fact to execute such instrument in its name, it being agreed that such assignment is one coupled with an interest and the statements contained in such instrument shall be deemed to be true and correct and binding on such party, who shall be estopped from denying or contesting the facts contained in such instrument.

30.    **TENANT'S CONDUCT OF BUSINESS.**  Notwithstanding anything contained in this Lease to the contrary, no term or provision of this Lease shall be construed as creating an obligation for Tenant to open or operate its business in the Property. Tenant shall have the right to remove Tenant's furniture, fixtures, equipment and inventory and cease operations in the Property at any time and from time to time and at Tenant's sole discretion.  However, the right to cease to operate its business shall not affect Tenant's obligation to pay all amounts due hereunder and to perform all covenants and obligations hereunder.  Furthermore, in no event shall Tenant be liable to Landlord for damages as a result of operating other stores in the area surrounding the Property or any other area, nor shall Tenant be limited or restricted in any way from opening or operating other stores in the area surrounding the Property or any other area.

31.    **MISCELLANEOUS.**

(a)    This Lease contains the entire agreement between the parties.  No rights are conferred upon Landlord until this Lease has been executed by Tenant. Neither Landlord nor Tenant nor any of their agents have made any statement, promises or agreements verbally or in writing in conflict with the terms of this Lease.  Any and all representations by either of the parties or their agents made during negotiations prior to execution of this Lease and which representations are not contained in this Lease shall not be binding upon either of the parties.

(b)    All terms and words used in this Lease, regardless of the number and gender in which they are used, shall be deemed and construed to include any other number, singular or plural, and any other gender, masculine, feminine or neuter, as the context or sense of this Lease or any portion of this Lease may require, the same as if such words had been fully and properly written in the number and gender.

(c)    This Lease may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, but such counterparts together shall constitute but one and the same instrument.

Ground Lease                                                          Hands On Premium Car Wash, LLC

(d)    Whenever Tenant may deduct costs from the rent pursuant to any Section of this Lease, such rent may be deducted from the next accruing rental payment(s) due.

(e)    Landlord and Tenant are not and shall not be considered joint venturers nor partners and neither shall have power to bind or obligate the other except as set forth in this Lease.

(f)  .  In the event Tenant continues to occupy the Property after the last day of the Term, as may have been extended, and Landlord elects to accept rent thereafter, a tenancy from month to month only shall be created.

(g)    Any legal proceedings initiated by reason of an alleged default of this Lease by either Landlord or Tenant must be commenced within one (1) year from the date that such alleged default occurred.

(h)    If any provision of this Lease or the application thereof to any person or circumstances shall, to any extent, be invalid or unenforceable, the remainder of this Lease, or the application of such term or provision to persons whose circumstances are other than those as to which it is held invalid or unenforceable, shall not be affected thereby.

(i)    No modification, alteration or amendment of this Lease shall be binding unless in writing and executed by the parties.

(j)    The head notes to the Sections of this Lease are inserted only as a matter of convenience and for reference, and in no way confine, limit or proscribe the scope or intent of any Section of this Lease, nor in any way affect this Lease.

(k)    This Lease shall be binding upon and inure to the benefit of the parties, their successors and assigns.

(l)    If Tenant is delayed or prevented from performing any of its obligations under this Lease by reason of strike, lockouts, labor troubles, failure of power, riots, insurrection, war, acts of God or any other cause beyond Tenant's control, the period of such delay or such prevention shall be deemed added to the time period herein provided for the performance of any such obligation by Tenant.

(m)    In the event any time period provided for in this Lease expires on a weekend or legal holiday (being defined as any holiday recognized by the United States Postal Service), the time period shall be automatically extended to the next business day.

(n)    This Lease shall be effective as of the date it is signed by all parties hereto (the "Effective Date"). This Lease shall not be binding on either party hereto until it is signed by all parties.

---

IN WITNESS WHEREOF, the parties hereto have duly executed this Ground Lease as of the day and year first above written.

Tenant:

Landlord:

HANDS ON PREMIUM
CAR WASH. LLC

By: _____

Name: Douglas Miller

Title: President

By: _____

Name: PETER N. KARAGAN

Title: POA FOR Nick KARAGAN
ELAINE KARAGAN

August 8, 2007 (4:12pm)    X:\HWB\Hands On Premium 16108\St. John Indiana-1\Documents\Ground Lease Agreement 2007-08-08.wpd

Ground Lease

Hands On Premium Car Wash, LLC

EXHIBIT "A"

[ATTACH LEGAL DESCRIPTION AND/OR SITE PLAN]

# MEMORANDUM OF LEASE

This Memorandum of Lease is by and between _Nick + Elaine Karagon_, a corporation ("Landlord") and Hands On Premium Car Wash, LLC, an Indiana limited liability company ("Tenant"), pursuant to which Landlord has demised to Tenant, and Tenant has accepted such demise from Landlord, certain real estate defined herein upon the following terms:

Date of Lease: _August   9_, 2007 (the "Effective Date").

Description of Property: See Exhibit A attached hereto (the "Property").

Commencement Date: _As Defined in Contract_

Term: Twenty (20) years from the Commencement Date.

Renewal Option(s): Four (4), five (5) year renewal options.

Exclusive: Tenant has exclusive use rights.

Right of First Refusal ~~and Option~~ to Purchase: Tenant has a right of first refusal ~~and an option~~ to purchase the Property.  _pnk 8-9-07_   _pnk 8-9-07_

The purpose of this Memorandum of Lease is to give record notice of the Lease and Tenant's rights in the Property set forth in the Lease.

**IN WITNESS WHEREOF**, the parties have executed this Memorandum of Lease as of the dates set forth in their respective acknowledgments.

Tenant:                                        Landlord:

HANDS ON PREMIUM
CAR WASH, LLC

By: _____  _Miller_          By: _Peter N. Karagon_

Name: _Douglas_                                  Name: _Peter N. Karagon_
Title: _President_                               Title: _POA for Nick + Elaine Karagon_

# EXHIBIT A

## LEGAL DESCRIPTION OF THE PROPERTY

TAX I.D. NUMBER: _____

Address of Property: _____

## FIRST AMENDMENT TO GROUND LEASE

THIS FIRST AMENDMENT TO GROUND LEASE ("Amendment") effective the 1st day of June, 2020, is by and between **ELAINE KARAGAN** ("Landlord") and **HANDS ON PREMIUM CAR WASH, LLC,** an Indiana limited liability company ("Tenant").

### R E C I T A L S:

**WHEREAS**, Hands On Premium Car Wash, as Tenant, and Nick Karagan and Elaine Karagan, as Landlord, entered into that certain Ground Lease dated August 9, 2007 (the "Lease"), with respect to that certain premises commonly described as 8445 Wicker Avenue, St. John, Indiana (the "Leased Premises");

**WHEREAS**, at the time that the Lease was executed, the Leased Premises were titled to Nick Karagan and Elaine Karagan, as husband and wife;

**WHEREAS**, Nick Karagan is now deceased with Elaine Karagan taking over as the sole title owner of the Leased Premises and the sole Landlord under the Lease; and

**WHEREAS**, Tenant and Landlord have agreed to amend the Lease as hereinafter set forth and to confirm and ratify the Lease in all other respects.

**NOW THEREFORE**, for and in consideration of these premises and other good and valuable considerations, it is agreed as follows:

1.      Recitals Incorporated. The foregoing recitals are hereby incorporated within and made an integral part of this Amendment as if fully set forth herein.

2.      Defined Terms. Capitalized terms utilized in this Amendment but not defined or re-defined herein shall have the meanings attributed to such terms in the Lease.

3.      Amendment to Sections 7(b) and 7(c) of the Lease. Effective as of June 1, 2020, Section 7(b) of the Lease is amended so that the monthly rent installments for the month of June 2020 and all subsequent months shall be paid in advance on June 15, 2020 and on or before the fifteenth (15th) day of each subsequent calendar month. Section 7(c) is further amended by replacing the phrase "on the first day of each and every calendar month" with the amended phrase of "on the fifteenth (15th) day of each and every calendar month".

4.      New Notice Address for Tenant. Section 24 of the Lease is amended by deleting Tenant's address of "636 Cambridge Court, No. 2B, Munster, Indiana 46321" and replacing same with "8445 Wicker Avenue, St. John, Indiana 46373".

5.      Amendment to EXHIBIT "A" of the Lease. Effective as of August 9, 2007, EXHIBIT "A" of the Lease is amended by deleting "[ATTACH LEGAL DESCRIPTION AND/OR SITE PLAN]" and replacing same with the following:

1

Lot 2 in Gardenia Gardens, an Addition to the Town of St. John, as per plat thereof, recorded in Plat Book 102 page 6, in the office of the Recorder of Lake County, Indiana.

6.     Amendment to EXHIBIT "A" of the Memorandum of Lease. Effective as of August 9, 2007, EXHIBIT A of the Memorandum of Lease attached to the Lease is amended by

     a.     inserting the following after the "LEGAL DESCIPTION OF THE PROPERTY":

Lot 2 in Gardenia Gardens, an Addition to the Town of St. John, as per plat thereof, recorded in Plat Book 102 page 6, in the office of the Recorder of Lake County, Indiana.

     b.     inserting "45-11-21-351-019.000-035" on the line after "TAX I.D. NUMBER:"; and

     c.     inserting "8445 Wicker Ave., St. John, IN 46373" on the line after "Address of Property:".

7.     Attorneys' fees arising from Tenant's breach of the Lease. Notwithstanding any terms and provisions in the Lease to the contrary, in the event that Tenant breaches any obligation under Lease, including but not limited to Tenant's failure to timely pay rent in accordance with the terms and provisions of this Lease, and such breach lasts more than five (5) business days, upon the passing of such five (5) business day grace period, Tenant shall then be responsible to reimburse Landlord all reasonable attorneys' fees and costs incurred by Landlord relating to the preparation of any notice of default and the resolution of such default. The reasonable attorneys' fees and costs recouped by Landlord pursuant to this Amendment shall be in addition to any and all other costs and expenses that Landlord may recover under Section 21 of the Lease.

8.     Counterparts. This Amendment may be executed in multiple counterparts via facsimile, each of which shall constitute an original, but all of which shall constitute but one instrument. Electronic and/or facsimile signatures of this Amendment shall be deemed original signatures.

9.     Ratification. In the event of any conflict between the terms and provisions of this Amendment and the original terms and provisions of the Lease, the terms and provisions of this Amendment shall prevail. Except as expressly amended hereby, all terms and provisions of the Lease remain in full force and effect and are hereby ratified and reaffirmed by Tenant and Landlord.

2

WITNESS the hands and seals of the duly authorized representatives of the undersigned as of the date and year next to each such signature.

LANDLORD:

TENANT:

**HANDS ON PREMIUM CAR WASH, LLC**

**ELAINE KARAGAN by Peter Karagan as attorney-in-fact, pursuant to that Power of Attorney of Nick Karagan and Elaine Karagan to Peter Karagan dated November 16, 2006 and included as an attachment to that Affidavit of Peter Karagan recorded with the Lake County Recorder's Office on February 22, 2008 as Instrument Number 2008 012749**

By:

Name: _____

Title: _____

WITNESS the hands and seals of the duly authorized representatives of the undersigned as of the date and year next to each such signature.

LANDLORD:                                              TENANT:

*For Elaine Karagan (PoA)*

**ELAINE KARAGAN by Peter Karagan**
as attorney-in-fact, pursuant to that Power
of Attorney of Nick Karagan and Elaine
Karagan to Peter Karagan dated November
16, 2006 and included as an attachment to
that Affidavit of Peter Karagan recorded
with the Lake County Recorder's Office on
February 22, 2008 as Instrument Number
2008 012749

**HANDS ON PREMIUM CAR WASH, LLC**

By: _____

Name: _Edward M Miller_
Title: _Vice President of Operations_

1122.003638/Second Amendment to Lease 07.10.20

3

 **KORANSKY, BOUWER & PORACKY, P.C.**

*Attorneys and Counselors at Law*

James M. Yannakopoulos
JYannako@KBLegal.net

425 Joliet Street, Suite 425
Dyer, Indiana 46311

Telephone: 219.865.6700
Facsimile: 219.865.5839

## NOTICE OF DEFAULT

**VIA CERTIFIED MAIL AND FIRST-CLASS MAIL**

July 9, 2024

**EXHIBIT**
**B**

Hands On Premium Car Wash, LLC
8445 Wicker Avenue
St. John, Indiana 46373

Douglas Miller, Registered Agent
Hands On Premium Car Wash, LLC
8445 Wicker Avenue
St. John, IN 46373

Old Plank Trail Community Bank, N.A.
3256 Ridge Road
Lansing, IL 60438

First National Bank of Illinois, N.A.
3256 Ridge Road
Lansing, IL 60438

RE:  Landlord:  Nick and Elaine Karagan
     Tenant:    Hands On Premium Car Wash, LLC
     Lender:    First National Bank of Illinois, N.A. and/or Old Plank Trail Community Bank,
                N.A. as successor in interest to First National Bank of Illinois, N.A.
     Lease:     Ground Lease dated August 9, 2007, and
                First Amendment to Ground Lease dated June 1, 2020
     Property:  8445 Wicker Avenue, St. John, Indiana 46373
     Our File:  1890.005797

To Whom It May Concern:

This firm represents the Landlord, Elaine Karagan, with respect to the above referenced Lease. Landlord has engaged the firm to put the Tenant, Hands On Premium Car Wash LLC, on notice that it is in breach of the Lease. According to the online records of the Lake County Treasurer As of May 10, 2024, the Tenant was to pay the now delinquent amount of Twenty One Thousand Nine Hundred Eighty-one and 62/100 Dollars ($21,981.62). According to the online records of the Lake County Treasurer, such $21,981.62 amount remains past due and it is likely that additional amounts are now owed for the delinquent penalty relating to same. In accordance with Section 12, the Landlord requests that the Tenant provide a receipted tax bill showing a zero balance for the property tax installment that was due on May 10, 2024.

Furthermore, in light of the Tenant's defaults under Section 12 of the Lease, the Landlord also wants to ensure that the Tenant is satisfying its requirements to insure the Property, pursuant to Section 13 of the Lease. Therefore, pursuant to Section 13 of the Lease, Landlord is now requesting a certificate of insurance to confirm that the insurance requirements under the Lease are met. Under Section 13 of the Lease, the Tenant now has thirty (30) days to provide the requested certificate of insurance.

# KORANSKY, BOUWER & PORACKY, P.C.

*Attorneys and Counselors at Law*

Hands On Premium Car Wash, LLC
July 9, 2024

Within thirty days of this notice, please remit (a) the receipted tax bill showing a zero balance for the property tax installment that was due on May 10, 2024, and (b) a certificate of insurance to confirm that the insurance requirements under the Lease are met to Landlord at the following addresses:

Elaine Karagan
c/o Pete Karagan
1930 Cherrywood Ct.
Munster, IN 46321

with a copy to the undersigned as follows:

James M. Yannakopoulos
Koransky, Bouwer & Poracky, P.C.
425 Joliet St., Ste. 425
Dyer, IN 46311.

This notice shall constitute a 30-day cure notice to Tenant required under Sections 19 and 24 of the Lease and a 60-day cure notice to Lender required under Section 5 of the Non-Disturbance and Attornment Agreement dated February 11, 2008 and recorded with the Lake County Recorder's Office on February 22, 2008 as document number 2008 012753. In the event that either Tenant or Lender fails to cure the current delinquency pursuant to this letter on or before the expiration of the applicable notice period, then Landlord reserves its rights to exercise any and all remedies available under the Lease and Indiana law. Such rights may include, but are not limited to, the filing of a formal complaint with the Courts of Lake County Indiana.

Nothing in this letter shall be construed to amend or waive any of Landlord's rights or remedies under the Lease. Nothing in this letter shall constitute a consent to any action or inaction by the Tenant or any other party, or a waiver of any provision of the Lease, nor a waiver of any default or event of default under Lease. No delay by the Landlord in exercising and enforcing any rights or remedies shall operate as a waiver of any rights or remedies the Landlord may have. Any and all rights and remedies available to the Landlord shall be cumulative and may be exercised separately, successively, or concurrently at the sole discretion of the Landlord. Any future negotiations or discussions with any agent or representative of the Landlord regarding the Lease shall not be binding upon the Landlord unless and until it is in writing and signed by an authorized agent or representative of the Landlord. The terms and provisions of the Lease are and shall remain in full force and effect.

In no event and under no circumstances shall any past or future discussions with the Landlord and/or the Landlord's forbearance from exercising any of its rights or remedies under the Lease (i) cause a modification of the Lease; (ii) establish a custom with respect to the Lease; (iii) operate as a waiver of any existing or future defaults or event of default under the Lease; (iv) entitle Tenant to any other or further notice or demand whatsoever; (v) in any way modify, change, impair, affect, diminish, or release any obligations or liability of Tenant under or pursuant to the Lease; or (vi) waive, limit, or condition the

# KORANSKY, BOUWER & PORACKY, P.C.

*Attorneys and Counselors at Law*

Hands On Premium Car Wash, LLC
July 9, 2024

rights and remedies available to the Landlord under the Lease, all of which rights and remedies are expressly reserved.

Very truly yours,
**KORANSKY, BOUWER & PORACKY, P.C.**

By:    JAMES M. YANNAKOPOULOS
JMY/lp

 **KORANSKY, BOUWER & PORACKY, P.C.**

*Attorneys and Counselors at Law*

425 Joliet Street, Suite 425
Dyer, Indiana 46311

James M. Yannakopoulos
JYannako@KBLegal.net

Telephone:  219.865.6700
Facsimile:  219.865.5839

## SECOND NOTICE OF SECOND DEFAULT

### VIA CERTIFIED MAIL AND FIRST-CLASS MAIL

August 14, 2024

Hands On Premium Car Wash, LLC
8445 Wicker Avenue
St. John, Indiana 46373

Douglas Miller, Registered Agent
Hands On Premium Car Wash, LLC
8445 Wicker Avenue
St. John, IN 46373

Old Plank Trail Community Bank, N.A.
3256 Ridge Road
Lansing, IL 60438

First National Bank of Illinois, N.A.
3256 Ridge Road
Lansing, IL 60438

| RE: | Landlord: | Nick and Elaine Karagan |
|---|---|---|
| | Tenant: | Hands On Premium Car Wash, LLC |
| | Lender: | First National Bank of Illinois, N.A. and/or Old Plank Trail Community Bank, N.A. as successor in interest to First National Bank of Illinois, N.A. |
| | Lease: | Ground Lease dated August 9, 2007, and First Amendment to Ground Lease dated June 1, 2020 (collectively the "Lease") |
| | Property: | 8445 Wicker Avenue, St. John, Indiana 46373 |
| | Our File: | 1890.005797 |

To Whom It May Concern:

This firm represents the Landlord, Elaine Karagan, with respect to the above referenced Lease. Landlord has engaged the firm to put the Tenant, Hands On Premium Car Wash LLC, on notice that it is in breach of the Lease referenced above. Tenant is in breach of the Lease because it has failed to pay the $6,250.00 monthly rent due on July 15, 2024, and Tenant will continue to breach the Lease for all months subsequent if it does not bring all outstanding past due rents current.

Under Section 19 of the Lease, the Tenant now has thirty (30) days to bring current any and all past due rents, including but not limited to the rental payment due on July 15, 2024, together with any and all other monthly rental payments that become due between the date of this notice and the time that the July 15th and any other past due monthly rental payments are brought current.

Within thirty days of this notice, please remit all past due rent to Landlord at the following addresses:

**EXHIBIT**

**C**

# KORANSKY, BOUWER & PORACKY, P.C.

*Attorneys and Counselors at Law*

Hands On Premium Car Wash, LLC
August 14, 2024

Elaine Karagan
c/o Pete Karagan
1930 Cherrywood Ct.
Munster, IN 46321

This notice shall constitute a 30-day cure notice to Tenant required under Sections 19 and 24 of the Lease and a 60-day cure notice to Lender required under Section 5 of the Non-Disturbance and Attornment Agreement dated February 11, 2008 and recorded with the Lake County Recorder's Office on February 22, 2008 as document number 2008 012753. In the event that either Tenant or Lender fails to cure the current delinquency pursuant to this letter on or before the expiration of the applicable notice period, then Landlord reserves its rights to exercise any and all remedies available under the Lease and Indiana law. Such rights may include, but are not limited to, the filing of a formal complaint with the Courts of Lake County Indiana.

Nothing in this letter shall be construed to amend or waive any of Landlord's rights or remedies under the Lease. Nothing in this letter shall constitute a consent to any action or inaction by the Tenant or any other party, or a waiver of any provision of the Lease, nor a waiver of any default or event of default under Lease. No delay by the Landlord in exercising and enforcing any rights or remedies shall operate as a waiver of any rights or remedies the Landlord may have. Any and all rights and remedies available to the Landlord shall be cumulative and may be exercised separately, successively, or concurrently at the sole discretion of the Landlord. Any future negotiations or discussions with any agent or representative of the Landlord regarding the Lease shall not be binding upon the Landlord unless and until it is in writing and signed by an authorized agent or representative of the Landlord. The terms and provisions of the Lease are and shall remain in full force and effect.

In no event and under no circumstances shall any past or future discussions with the Landlord and/or the Landlord's forbearance from exercising any of its rights or remedies under the Lease (i) cause a modification of the Lease; (ii) establish a custom with respect to the Lease; (iii) operate as a waiver of any existing or future defaults or event of default under the Lease; (iv) entitle Tenant to any other or further notice or demand whatsoever; (v) in any way modify, change, impair, affect, diminish, or release any obligations or liability of Tenant under or pursuant to the Lease; or (vi) waive, limit, or condition the rights and remedies available to the Landlord under the Lease, all of which rights and remedies are expressly reserved.

Very truly yours,
**KORANSKY, BOUWER & PORACKY, P.C.**

By:    JAMES M. YANNAKOPOULOS
JMY/lp

STATE FORM 53569 (R24 / 11-23)
APPROVED BY STATE BOARD OF ACCOUNTS, 2023

TREASURER FORM TS-1A
PRESCRIBED BY THE DEPARTMENT OF LOCAL GOVERNMENT FINANCE IC 6-1.1-22-8.1

## COUNTY:  45 - LAKE
## SPRING INSTALLMENT REMITTANCE COUPON

| PARCEL NUMBER | COUNTY PARCEL NUMBER | TAX YEAR | Late Payment Penalty: 5% penalty after May 10, 2024, if there is no delinquent amount; 10% penalty for previous delinquency or if payment is made after June 10, 2024. |
|---|---|---|---|
| 45-11-21-351-019.000-035 | 45-11-21-351-019.000-035 | 2023 Payable 2024 | |
| TAXING UNIT NAME | LEGAL DESCRIPTION | | |
| 035-St. John Corp | Gardenia Gardens Lot 2 | | |

PROPERTY ADDRESS
8445  WICKER AVE ST. JOHN IN 46373



*+000045202308114350241*

| SPRING AMOUNT DUE by May 10, 2024: | $ 21,981.62 |
|---|---|

Nick P and Elaine Karagan
8445  Wicker AVE
St. John,  IN 46373

T. S.

Pay by Phone:  (219) 755-3760
Pay online at: www.lakecountyin.org

Remit Payment and Make Check Payable to:
Lake County Treasurer
2293 N Main ST
Crown Point, IN 46307

45112135101900003520231000021981620

Please Keep this Receipt!
**Lake County Treasurer**

Friday, Aug 23 2024 11:20:19 AM

45-11-21-351-019.000-035     21,981.62

Total          21,981.62

Check          21,981.62

Change           0.00

Receipt #: bjb-08262024-83
Operator: BBruckman



**EXHIBIT**

D

**Please Keep this Receipt!**
Lake County Treasurer

Tuesday, Nov 12 2024 10:54:45 AM

45-11-21-351-019.000-036          6,361.58

| | |
|---|---|
| Total | 6,361.58 |
| Check | 6.361.58 |
| Change | 0.00 |

Receipt #: vhipp-11122024-55
Operator: VHipp



EXHIBIT
E

 **KORANSKY, BOUWER & PORACKY, P.C.**

*Attorneys and Counselors at Law*

425 Joliet Street, Suite 425
Dyer, Indiana 46311

James M. Yannakopoulos
JYannako@KBLegal.net

Telephone:  219.865.6700
Facsimile:  219.865.5839

## NOTICE OF TERMINATION

**VIA UPS OVERNIGHT**

October 15, 2024

Hands On Premium Car Wash, LLC
8445 Wicker Avenue
St. John, Indiana 46373

Douglas Miller, Registered Agent
Hands On Premium Car Wash, LLC
8445 Wicker Avenue
St. John, IN 46373

Old Plank Trail Community Bank, N.A.
3256 Ridge Road
Lansing, IL 60438

First National Bank of Illinois, N.A.
3256 Ridge Road
Lansing, IL 60438

RE:  Landlord:  Nick and Elaine Karagan
     Tenant:    Hands On Premium Car Wash, LLC
     Lender:    First National Bank of Illinois, N.A. and/or Old Plank Trail Community Bank, N.A. as successor in interest to First National Bank of Illinois, N.A.
     Lease:     Ground Lease dated August 9, 2007, and
                First Amendment to Ground Lease dated June 1, 2020
     Property:  8445 Wicker Avenue, St. John, Indiana 46373
     Our File:  1890.005797

To Whom It May Concern:

This firm represents the Landlord, Elaine Karagan, with respect to the above referenced Lease. Landlord previously engaged the firm to put the Tenant, Hands On Premium Car Wash LLC, on notice that it was in breach of the Lease, because it failed to properly address matters with respect to the outstanding taxes and because it failed to provide a copy of the certificate of insurance. With such defaults continuing to remain outstanding and with the appropriate cure periods having passed, Landlord hereby notifies the Tenant that it is terminating the Lease, pursuant to Section 19(b) of the Lease. The undersigned will then be following up with the Tenant in the coming days to execute the appropriate instruments in writing as required under Paragraph 19.

Very truly yours,
**KORANSKY, BOUWER & PORACKY, P.C.**

By:  JAMES M. YANNAKOPOULOS
JMY/lp

**EXHIBIT**
_F_

 **KORANSKY, BOUWER & PORACKY, P.C.**

*Attorneys and Counselors at Law*

James M. Yannakopoulos
JYannako@KBLegal.net

425 Joliet Street, Suite 425
Dyer, Indiana 46311

Telephone: 219.865.6700
Facsimile: 219.865.5839

## SECOND NOTICE OF TERMINATION

**VIA UPS OVERNIGHT**

December 16, 2024

Hands On Premium Car Wash, LLC
8445 Wicker Avenue
St. John, Indiana 46373

Douglas Miller, Registered Agent
Hands On Premium Car Wash, LLC
8445 Wicker Avenue
St. John, IN 46373

Old Plank Trail Community Bank, N.A.
3256 Ridge Road
Lansing, IL 60438

First National Bank of Illinois, N.A.
3256 Ridge Road
Lansing, IL 60438

RE:  Landlord:  Nick and Elaine Karagan
     Tenant:    Hands On Premium Car Wash, LLC
     Lender:    First National Bank of Illinois, N.A. and/or Old Plank Trail Community Bank,
                N.A. as successor in interest to First National Bank of Illinois, N.A.
     Lease:     Ground Lease dated August 9, 2007, and
                First Amendment to Ground Lease dated June 1, 2020
     Property:  8445 Wicker Avenue, St. John, Indiana 46373
     Our File:  1890.005797

To Whom It May Concern:

This firm represents the Landlord, Elaine Karagan, with respect to the above referenced Lease. Landlord previously engaged the firm to put the Tenant Hands On Premium Car Wash LLC on notice that it was in breach of the Lease, because it failed to pay rent due on July 15, 2024. The Tenant has failed to cure such default, and in light of such default and the continuing defaults of unpaid rents since July 15th, Landlord hereby notifies the Tenant that it is terminating the Lease, pursuant to Section 19(b) of the Lease. Please be advised that Landlord's position is that Landlord previously terminated the Lease, pursuant to its notice of termination dated October 15, 2024, but in the event that any party wishes to challenge such notice, this second notice of termination is being sent out of an abundance of caution. The undersigned will then be following up with the Tenant's counsel, who is copied on this correspondence to execute the appropriate instruments in writing as required under Paragraph 19.

Very truly yours,

**KORANSKY, BOUWER & PORACKY, P.C.**

By.  JAMES M. YANNAKOPOULOS
JMY/lp
CC: Dan Freeland (via email)

**EXHIBIT**
G

45D01-2412-PL-000761

Lake Superior Court, Civil Division 1

Filed: 12/13/2024 12:52 PM
Clerk
Lake County, Indiana

| | | |
|---|---|---|
| STATE OF INDIANA | ) | LAKE SUPERIOR COURT |
| | ) SS: | COMMERCIAL COURT DOCKET CASE |
| COUNTY OF LAKE | ) | SITTING IN LAKE COUNTY, INDIANA |

ELAINE KARAGAN, )
          Plaintiff, )
         )
       v. )    No. 45D01-2412-CE-
         )
HANDS ON PREMIUM CAR WASH, LLC; )
FIRST NATIONAL BANK OF ILLINOIS; )
OLD PLANK TRAIL COMMUNITY BANK, )
N.A.; BUSINESS DEVELOPMENT )
CORPORATION; SMALL BUSINESS )
ADMINISTRATION, GENTLE TOUCH CAR )
WASH LLC; MANUEL MENDOZA; )
FLAGSHIP ENTERPRISE CENTER, INC.; )
CAPITAL ONE, N.A.; )
          Defendants. )

## COMPLAINT FOR IMMEDIATE POSSESSION AND QUIET TITLE

Plaintiff ELAINE KARAGAN, for this cause of action against Defendants Hands on Premium Car Wash, LLC and all other named Defendants states as follows:

1. Nick Karagan and Elaine Karagan were the prior owners as husband and wife, of the property commonly known as 8445 Wicker Avenue, St. John, Indiana (the "**Premises**").

2. Nick Karagan and Elane Karagan, as landlord, entered into a certain commercial Ground Lease, dated August 9, 2007, with Defendant Hands on Premium Car Wash, LLC, as tenant ("**Tenant**").

3. Nick Karagan passed away on November 19, 2019.

4. As a result of Nick Karagan's passing, Elaine Karagan became the sole owner of the Premises and the sole landlord under the Lease. (Elaine Karagan is hereinafter referred to as the "**Landlord**")

1


EXHIBIT
tabbies®
H

5.      Landlord and Tenant are parties to said Ground Lease, dated August 9, 2007, which was amended by a First Amendment to Ground Lease dated June 1, 2020 (the Ground Lease and the First Amendment to Ground Lease are hereinafter collectively referred to as the "**Lease**"). A true and correct copy of the Lease is attached hereto as **Exhibit A** and incorporated herein as if fully set forth herein. With respect to the Lease, A Memorandum of Gound Lease has been recorded with the Lake County Recorder's Office on February 22, 2008, as Instrument No. 2008 012750, as amended by a Memorandum of First Modification of Ground Lease recorded on November 25, 2008 as Instrument No. 2008 080283.

## COUNT I
## BREACH OF LEASE

6.      Landlord incorporates paragraphs 1 through 5 as though fully set forth herein.

7.      Tenant has breached the Lease on various grounds.

8.      Initially Tenant (a) failed to pay real estate taxes, pursuant to the terms of the Lease, and (b) failed to provide Landlord with a certificate of insurance as required under the Lease.

9.      On July 9, 2024, Landlord caused a first notice of default (the **"First Default Notice"**) to be issued to Tenant and First National Bank of Illinois, N.A. (**"First National"**) and Old Plank Trail Community Bank N.A. (**"Old Plank"**) (First National and Old Plank are hereinafter referred to as the "**Bank**"). A true and correct copy of the Default Notice is attached hereto as **Exhibit B** and incorporated herein as if fully set forth herein.

10.     Thereafter, Tenant failed to pay monthly rent pursuant to the terms of the Lease.

11.     On August 14, 2024, Landlord caused a second notice of default (the **"Second Default Notice"**) to be issued to Tenant and the Bank. A true and correct copy of the Second

2

Default Notice is attached hereto as **Exhibit C** and incorporated herein as if fully set forth herein.

12.     Thereafter, Tenant failed to timely cure the previously noticed defaults, and in addition to the previously noticed defaults, Landlord had to pay certain real estate taxes to avoid the Premises going into a tax sale and Landlord discovered that the Tenant had further breached the Lease by allowing certain liens arise against the property in violation of the Lease.

13.     Due to the ongoing defaults that remained uncured, Landlord exercised her right to terminate the Lease, pursuant to the terms and provisions of the Lease.

14.     On October 15, 2024, Landlord exercised her right to terminate the Lease, pursuant to the terms and provisions of the Lease, and Landlord caused a notice of termination (the "**Termination Notice**") to be issued to Tenant and the Bank. A true and correct copy of the Termination Notice is attached hereto as **Exhibit D** and incorporated herein as if fully set forth herein.

15.     Given the lack of any ongoing operations on the Premises, it appears that Tenant has abandoned the Premises.

16.     Landlord has incurred and will incur legal fees and costs in bringing this matter, for which Tenant is liable pursuant to the terms and provisions under Section 21 of the Lease.

WHEREFORE, Plaintiff Elaine Karagan prays for an order granting her immediate possession of the Premises, an order declaring that the Lease was terminated and that the Defendants no longer have any rights to the Premises; an order for the Court to schedule a preliminary hearing for immediate possession; and requests a money judgment for all attorneys' fees and damages recoverable under Section 21 of the Lease; and for other relief the Court deems just.

3

## COUNT II
## QUIET TITLE ACTION

17. Landlord incorporates paragraphs 1 through 16 as though fully set forth herein.

18. Due to the termination of the Lease, any and all third parties that created lien interests in the Premises through the Tenant should also be deemed to have terminated.

19. Therefore, Landlord has named additional Defendants so that their interests in the Premises can be deemed to no longer affect the Premises through a declaratory judgment.

20. Those Defendants include:

a. The Tenant, whose rights in the Premises have been terminated by Landlord's termination of the Lease;

b. The Bank because of a Construction Mortgage dated February 13, 2008 recorded with the Lake County Recorder's Office on February 22, 2008, as Instrument No. 2008 012751, as such document may have been modified from time to time; an Assignment of Rents dated February 13, 2008, recorded with the Lake County Recorder's Office on February 22, 2008, as Instrument No. 2008 012752, as such document may have been modified from time to time; and a Third Party Lender Agreement between the Bank and BDC, hereinafter defined, dated November 12, 2008, and recorded with the Lake County Recorder's Office on November 25, 2024 as Instrument No. 2008 080286;

c. The Small Business Administration, an agency of the United States Government, (the "**SBA**") because of an Assignment of Real Estate Mortgage dated February 12, 2008, recorded with the Lake County Recorder's Office on November 25, 2008, as Instrument No. 2008 080282, between the SBA, as assignee, and Business Development Corporation ("**BDC**"), as assignor,

4

wherein BDC assigned to the SBA a Mortgage dated November 12, 2008, recorded with the Lake County Recorder's Office on November 25, 2008, as Instrument No. 2008 080281, as modified from time to time;

d. The BDC because of an Assignment of Leases and Rents dated November 12, 2008, recorded with the Lake County Recorder's Office on November 25, 2008, as Instrument No. 2008 080284, as modified from time to time, and a Third Party Lender Agreement between the Bank and BDC dated November 12, 2008, and recorded with the Lake County Recorder's Office on November 25, 2024 as Instrument No. 2008 080286;

e. Gentle Touch Car Wash, LLC because of a separate lease with the Tenant, as documented by a Memorandum of Lease dated November 12, 2008, and recorded with the Lake County Recorder's Office on November 25, 2012, as Instrument No. 2008 080285;

f. Manuel Mendoza because of a judgment awarded against Tenant by the Lake County Superior Court under Cause No. 45D07-1903-SC-1738;

g. Flagship Enterprise Center, Inc. because of a Mortgage Agreement dated October 6, 2021, recorded with the Lake County Recorder's Office on October 20, 2021, as Instrument No. 2021 063800, as such document may have been modified from time to time; and

h. Capital One, NA because of a judgment awarded against Tenant by the Lake County Superior Court under Cause No. 45D11-2405-CC-5462.

WHEREFORE, Plaintiff Elaine Karagan prays for an order confirming that all of the above named Defendants have no further interests in the Premises due to the termination of the

Lease, and that the Court enter an Order confirming same, so that Plaintiff may record a copy of

such order with the Lake County Recorder's Office to confirm that the aforementioned recorded

documents no longer affect the Premises, and for other relief the Court deems just.

Respectfully submitted,

By: ___ /s/ *James M. Yannakopoulos* ___
James M. Yannakopoulos (#25164-45)
Koransky, Bouwer, & Poracky, P.C.
ATTORNEYS FOR PLAINTIFF
425 Joliet Street, Suite 425
Dyer, Indiana 46311
Phone: (219) 865-6700
Email: JYannako@KBLegal.net

6

# GROUND LEASE

*THIS GROUND LEASE* ("Lease") dated this __9__ day of August, 2007, between __Nick Karagan__ __Elaine Karagan__ (hereinafter, whether one or more, "Landlord") and Hands On Premium Car Wash, LLC, an Indiana limited liability company ("Tenant").

1. **EFFECTIVE DATE.** The effective date of this Lease ("Effective Date") shall be the date of final execution of this Lease.

2. **DESCRIPTION OF PROPERTY.** In consideration of the mutual covenants contained herein, Landlord hereby leases to Tenant and Tenant hereby leases from Landlord the property in the City of St. John, County of Lake and State of Indiana, as legally described and shown in Exhibit "A" attached hereto and incorporated herein by reference, having frontage along US Highway 41 (commonly known as 8445 Wicker Avenue); containing approximately fifty thousand (50,000) square feet and/or one and fourteen hundredths (1.14) acres, including roads, streets, or public rights-of-way, together with (a) all rights, easements, servitudes, rights-of-way, and appurtenances belonging or appertaining thereto, (b) all right, title and interest of Landlord in and to any and all roads, streets, alleys and ways, bounding such property, and (c) all buildings and other improvements thereon, if any ("Property").

   The Property shall be subject to a more definitive legal description as shall be obtained by Tenant from an accurate ALTA/ACSM Minimum Standard Detail Survey acceptable to Tenant, at Tenant's cost.

3. **TERM.** The term of this Lease shall commence on the Effective Date, and unless the term is terminated sooner as provided in this Lease, shall terminate twenty (20) years after the Commencement Date, subject to Tenant's options to extend the term.

4. **EXTENSIONS.** Tenant shall have the option of extending the Term for four (4) additional periods of five (5) years each ("Extension(s)"), commencing at midnight on the date on which the Term or any extension expires.. Tenant shall be deemed to have exercised its option to extend, and the term of this Lease shall automatically be extended unless Tenant notifies Landlord in writing of its election not to extend this Lease at least ninety (90) days prior to the expiration of the term then in effect or any Extension thereof.

5. **CONSTRUCTION OF PROJECT BY TENANT.** Tenant shall complete the construction of the improvements on the Property consisting of a building approximately 7,800 square foot in size to be used for a car wash, automotive detail shop and deli restaurant (collectively, "Tenant's Intended Use") constructed according to the Tenant's plans and specifications, together with curb cuts and off-street parking and signage acceptable to Tenant, including without limitation, Tenant's identification pole sign (which may need to be a part of a development sign), building sign and directional/entrance-exit signs (hereinafter referred to as the "Project"). The entire cost and expense of the Project shall be borne and paid by Tenant, including all liability (during construction of the Project only) and property (including "builder's risk") insurance. Tenant shall complete the Project not less than six (6) months after (a) Landlord secures the Governmental Approvals (as hereinafter defined in Section 8); (b) Tenant is issued a building permit for the Project; and (c) the completion of the Landlord's Work; whichever is the last to



S.C. EXHIBIT *

A

\* S.C. added in this copy to distinguish from other lettered exhibits

*Engineered Clean Fill only* PWk 8-9-07    PM 8-9-07

occur. The excavated spoil'from the Project may be stock piled on lots 1, 3 or 4 by Tenant.

6.   **INDEMNIFICATION AGAINST LIENS.** It is agreed and understood that no party shall permit or allow others to permit the Property or related easements or rights-of-way referred herein to provide access to the Property to be encumbered with a lien or claim of a mechanic or materialman. Each party does hereby indemnify, protect, defend and hold the other party harmless from and against any claims, losses, demands, liabilities, suits, costs, and damages, including consequential damages and attorney's fees of counsel selected by the indemnified party and other costs of defense, incurred, arising against, or suffered by the indemnified party or its assigns as a direct or indirect consequence of the filing of a mechanic or materialman lien.

7.   **RENT.** Tenant shall pay to Landlord the following rent, per annum (the " Rent"), in equal monthly installments:

(a)   **NO RENT DURING CONSTRUCTION.** Notwithstanding anything contained herein to the contrary, no Rent shall be due for the period that commences on the Effective Date and ends on the last of the following to occur (the "Commencement Date"): (i) satisfaction of the Conditions Precedent set forth in Section 8 below, (ii) Landlord providing Tenant with fully signed Non-Disturbance and Attornment Agreements (hereinafter defined) and with a fully signed Memorandum of Lease, (iii) satisfactory title as set forth in Section 10 below, and (iv) Landlord's completion of the Landlord's Work and Tenant's timely completion of the Project.

In the event the Commencement Date of this Lease shall not have occurred within one (1) year after the Effective Date, this Lease shall terminate and the parties shall be released from further liability.

(b)   **RENT DURING INITIAL TERM.** Tenant agrees to pay Landlord rent in equal monthly installments in advance on the first day of each and every calendar month following the Commencement Date and thereafter during the term of this Lease, as follows (hereinafter referred to as "Rent"):

|  | Annual | Monthly |
|---|---|---|
| Rent for Years 1-5: | $ 55,000.00 | $ 4,583.34 |
| Rent for Years 6-10: | $ 65,000.00 | $ 5,416.67 |
| Rent for Years 11-15: | $ 70,000.00 | $ 5,833.34 |
| Rent for Years 16-20: | $ 75,000.00 | $ 6,250.00 |

The first payment of Rent shall be due on the Commencement Date. In the event that the Commencement Date falls on a day other than the first day of a calendar month, the Rent for the first and last months of this Lease shall be prorated.

(c)   **RENT DURING EXTENSIONS.** In the event Tenant exercises any of the Extensions, the Rent for such Extension shall be payable in equal monthly installments in advance on the first day of each and every calendar month during such Extension, as follows:

|              | Annual      | Monthly    |
|--------------|-------------|------------|
| 1st Extension | $ 80,000.00 | $ 6,666.67 |
| 2nd Extension | $ 85,000.00 | $ 7,083.34 |
| 3rd Extension | $ 90,000.00 | $ 7,500.00 |
| 4th Extension | $ 95,000.00 | $ 7,916.67 |

8.    **CONDITIONS PRECEDENT** .   Landlord hereby acknowledges that Tenant's initial plans are to engage in the Tenant's Intended Use (as defined hereinabove) and the construction of the Project according to Tenant's plans and specifications, together with curb cuts and off-street parking and signage acceptable to Tenant, including without limitation, Tenant's identification pole sign (which may need to be a part of a development sign), building sign and directional/entrance-exit signs and thereafter for any lawful use.   Therefore, Tenant's obligation to pay Rent are subject to the satisfaction of the following conditions and covenants:

(a)    Landlord, at its cost and expense, shall obtain the approval of all public or governmental authorities as to all matters relating to zoning, subdivision, lot splits, development standard variances and site or development plan approval (hereinafter collectively, "Governmental Approvals"), as will permit the Tenant to operate the Property in accordance with Tenant's Intended Use and its Project. Landlord hereby covenants and agrees to file for and pursue such Governmental Approvals in good faith and with all due diligence. The cost of building permits only are Tenant's responsibility.

(b)    The water and gas mains, electric power and telephone lines and sanitary and storm sewers being located in the public right of way adjacent to the Property and available and adequate for Tenant's Intended Use. If any of said utilities are not located at the property line of the Property or are not available and adequate for Tenant's Intended Use, Landlord hereby covenants and agrees to extend same, in the public right of way or other location, to the property line, at Landlord's sole cost, within sixty (60) days after Tenant delivers its plans and specifications for said utilities to Landlord and Tenant waives all contingencies, except for utilities, but in no event later than thirty (30) days prior to the date Tenant takes vacant possession of the Property.

(c)    Tenant obtaining all necessary governmental permits, licenses, easements and approvals, of any type and from any necessary party, for Tenant's Intended Use, to which end Landlord shall execute such documents, make such appearances and do such other things as Tenant may reasonably request.

(d)    Tenant obtaining, if needed after reviewing Landlord's engineering drawing from Torringa Engineering, an ALTA/ACSM Minimum Standard Detail Survey reasonably satisfactory to Tenant bearing a legal description, made by a licensed surveyor, and showing, among other things, the area, dimensions and location of the Property to the nearest monuments, streets, alleys on all sides, the topography, the location of all available utilities in adjoining streets, alleys or property, the location of all recorded and apparent easements against or appurtenant to the Property, certifying the

Ground Lease                                    Hands On Premium Car Wash, LLC

3

applicable zoning and flood zone classifications and not disclosing any condition rendering the Property unusable, for Tenant's Intended Use.

(e)   Tenant, at it's expense but with Landlord's cooperation, shall conduct such review as Tenant deems desirable of the Property and the suitability of the Property for Tenant's Intended Use. At any time after the Effective Date, Tenant and its surveyors, engineers, soil testing companies and other agents shall have the right to enter upon the Property for the purpose of obtaining the survey, engineering studies, soil tests, and inspections as to the condition of the Property and any improvements thereon. Tenant agrees to indemnify and hold harmless Landlord against any cost, expense and damages incurred or suffered by Landlord in connection with such activities. Tenant, or its agents shall have liability insurance coverage.

(f)   Tenant obtaining ingress and egress to public thoroughfares adequate, in Tenant's reasonable opinion, for Tenant's Intended Use. Landlord shall pay for the cost of constructing the driveway to the Property and the cost of any retention pond required by the Town of St. John, Indiana.

(g)   The installation of sanitary sewer, potable water, electric, and telephone utilities stubbed to the property line of the Property.

In the event the foregoing conditions of this Lease have not been satisfied or complied with within one hundred and twenty (120) days, or if the conditions or contingencies do not meet with Tenant's approval or if they disclose matters which would make the Property unsuitable for the purposes stated in this Lease, Landlord or Tenant may, at any time after said time period, terminate this Lease. Landlord and Tenant covenant to act in good faith and use due diligence to satisfy all conditions for which they are responsible, and neither party shall have the right to terminate this Lease unless it has so performed. If Landlord elects to terminate this Lease as provided for in this section, Tenant shall have thirty (30) days after receiving Landlord's termination notice to waive, in writing, the foregoing conditions in this section. If Tenant waives the conditions in this section, the foregoing conditions are waived and the Commencement Date is triggered, provided that all other conditions precedent have been satisfied pursuant to Section 7. If Tenant does not waive the conditions in this section, this Lease will terminate and be of no further force or effect thirty (30) days after Landlord's notice of termination is received by Tenant.

9.   **SITE IMPROVEMENTS.** Landlord, at its sole cost and expense, shall perform or cause to be performed to completion, the following (hereinafter collectively referred to as "Landlord's Work"):

(a)   The installation of an eight inch (8") water main around lot 2 servicing lots 1, 3 and 4.

(b)   Storm water management facilities including sewer lines and retention or detention basins together with lift station pump and forcemain up to and including CB7 and CB3.

(c)   Sanitary sewer lines servicing lots 1-4, inclusive, with connections as specified by Torrenga Engineering and stubbed to the Property.

(d)   All lot corners shall be staked by an Indiana licensed surveyor.

(e)   The installation of all private roadways adjacent to the Property providing access to public streets and rights-of-way (with required fill), and all related curb cuts (including the INDOT specifications for the cut to Wicker Avenue), curbing and related landscaping.

(f)   The installation of electric and telephone utilities stubbed to the property line of the Property.

The Landlord's Work shall be completed no later than sixty (60) days after the satisfaction of the conditions set forth in Section 8 hereinabove. The Landlord's Work shall be performed in a manner which is generally customary for shopping centers in Lake County, Indiana and the region utilizing customary and standard design, engineering and construction methods, standards and specifications to provide for ingress and egress to the Property. Landlord's Work shall be in accordance with all local standards and ordinances.

10.   TITLE INSURANCE. Landlord shall provide to Tenant, at Landlord's expense, (a) a current Commitment for Leasehold Title Insurance ("Title Commitment") covering the Property issued by Ticor Title Insurance Company (the "Title Company"), whereby the Title Company commits to issue to Tenant an ALTA Leasehold Policy of Title Insurance on the current form of the American Land Title Association (the "Title Policy"), in an amount equal to the fair market value of the land and building with the standard exceptions to title deleted and subject only to exceptions agreed to by Tenant in writing; and (b) true and legible copies of all instruments listed or referred to as exceptions on the Title Commitment. Upon final execution of this Lease, Landlord shall deliver to Tenant any prior title evidence, such as a current abstract or title policy, it may have to expedite further examination of title. If the Title Commitment discloses any encumbrances or other matters affecting title (including mineral interests) not satisfactory to Tenant, Landlord shall have thirty (30) days from the date of Tenant's notice of such defects to make a good faith effort to cure such defects and to furnish a later report showing the defects as cured or removed. If such defects cannot be cured within said thirty (30) days, Tenant may, at its election, accept the leasehold interest with the objections or Tenant may terminate this Lease, in which case the parties shall be released from any further liability hereunder and this Lease shall thereafter be null and of no further force or effect.

11.   NON-DISTURBANCE AND ATTORNMENT. Landlord will obtain from every senior landlord, mortgagee and holder of a deed of trust upon the Property within sixty (60) days after the Effective Date, an agreement in recordable form acceptable to Tenant wherein the senior landlord(s), mortgagee(s) and holder(s) of the deed(s) of trust agree not to disturb Tenant's possession, deprive Tenant of any rights and increase Tenant's obligations, under this Lease ("Non-Disturbance and Attornment Agreement"). Landlord agrees not to further mortgage or encumber the fee or its leasehold estate from the Effective Date to the date of recording of a Memorandum of Lease unless Landlord obtains a Non-Disturbance and Attornment Agreement.

Upon the failure of Landlord to provide Tenant with an acceptable Non-Disturbance and Attornment Agreement pertaining to every senior lease, mortgage and deed of trust prior to Tenant's commencement of construction of the building, Tenant may terminate this Lease.

12.    **REAL ESTATE TAXES** . Tenant shall pay before they become delinquent real estate taxes imposed during the Term and any Extensions upon or against the Property and the building and/or other improvements constructed on the Property by Tenant ("Real Estate Taxes"). Nothing herein contained shall require Tenant to pay (a) corporation, franchise, income, estate, gift and inheritance taxes or charges imposed on rent or other similar taxes, charges or impositions which may be levied or assessed against Landlord, fee owner, or their successor in title or (b) real estate taxes on easement parcel(s). If, for Real Estate Tax purposes, the Property is assessed as part of a larger tract of land, Landlord shall use its best efforts to cause the Property to be separately assessed and taxed. If Landlord cannot cause the Property to be separately assessed and taxed, such assessments and taxes shall be equitably allocated.

Real Estate Taxes payable by Tenant shall be paid not later than the date on which such Real Estate Taxes become delinquent. A receipted tax bill shall be delivered to Landlord upon request. In the event Tenant fails to pay Real Estate Taxes within the time provided, Landlord may, after fifteen (15) days written notice, pay same, in which event Tenant shall remain liable to and obligated to repay Landlord the amount so advanced together with interest thereon at the rate of ten percent (10%) per annum. In the event any Real Estate Taxes may be payable in installments, Tenant shall have the right to pay same as such installments fall due. Real Estate Taxes for the year in which the Term shall begin and the year in which this Lease shall terminate shall be prorated so that Tenant shall pay only those portions thereof which correspond with the portion of said years as are within the Term, as may have been extended.

Tenant shall have the right, at its own cost and expense, to initiate and prosecute any proceedings permitted by law for the purpose of obtaining an abatement of or otherwise contesting the validity or amount of Real Estate Taxes assessed or levied upon the Property and the building and/or other improvements constructed on the Property by Tenant. If required by law, Tenant may take such action in the name of Landlord who shall cooperate with Tenant shall fully indemnify and save Landlord harmless from all loss, cost, damage and expense incurred by or to be incurred by Landlord as a result thereof, and further provided Tenant shall, at Landlord's request, escrow or post a bond for the full amount of the Real Estate Taxes claimed pending such proceedings.

13.    **INSURANCE.** From the Effective Date and continuing during the Term and any Extensions, Tenant shall protect, indemnify and save harmless Landlord from and against any and all liability to third parties incurred by any act or neglect of Tenant, or any of its agents, servants, or employees, in, on, or about the Property, and shall at all times at its own cost protect Landlord with commercial general liability insurance, in the amount of One Million Dollars ($1,000,000.00) combined single limit (bodily injury and property damage). Tenant will, within thirty (30) days of written request, deliver to Landlord a certificate showing such insurance to be then in effect.

14.    LANDLORD'S TITLE AND QUIET ENJOYMENT . Landlord represents and warrants that Landlord is seized in fee simple title to the Property, free, clear and unencumbered. Landlord covenants that so long as Tenant fulfills the conditions and covenants required of it to be performed, Tenant will have peaceful and quiet possession thereof. Landlord further represents and warrants that it has good right, full power and lawful authority to enter into this Lease for the Term and any Extensions.

15.    IMPROVEMENTS AND ALTERATIONS.

(a)    Landlord covenants that it shall (i) immediately demolish and remove all existing, if any, in accordance and in compliance with all local, state and federal building, demolition and environmental codes, laws and ordinances(ii) deliver sole and vacant possession of the Property to Tenant, free and clear of all tenancies and parties in possession within ten (10) days after Tenant notifies Landlord that all conditions precedent have been satisfied and Tenant provides Landlord with such standards and specifications. In the event Landlord fails to perform the work required of it under this Section and deliver vacant possession to Tenant on a timely basis, Tenant, at its option, may perform such work and take such action as may be necessary to obtain such vacant possession and the costs therefore shall be deducted from Tenant's Rent.

(b)    From and after the Effective Date, Tenant shall have the right from time to time to construct a building and/or other improvements upon the Property and to alter, renovate, add, remodel, modify, change the building as Tenant may deem desirable. The building and/or other improvements upon the Property shall be and remain the property of Tenant during the Term and any Extensions, and for a period of fifteen (15) days after the termination or expiration of this Lease. Tenant shall not be required to remove the building and/or other improvements upon the Property and Tenant's failure to do so after the expiration of such period shall be deemed to be an abandonment thereof, whereby title shall become vested in the Landlord.

16.    LIENS. Landlord and Tenant covenant each with the other not to permit any judgment, attachment and/or lien to be filed against the Property except for any liens permitted expressly by the terms of this Lease. Should any judgment, attachment and/or lien of any nature be filed against the Property, except as expressly permitted by this Lease, the party from whose fault or alleged debt such lien arises shall within thirty (30) days cause such judgment, attachment and/or lien to be removed by substitution of collateral or otherwise.

17.    LEASEHOLD MORTGAGE. Notwithstanding any other provision of this Lease to the contrary, Tenant shall have the unrestricted right to execute and deliver a mortgage, deed of trust, pledge and/or collateral assignment of this Lease ("Mortgage") as security for any indebtedness in any form whatsoever. In the event Tenant shall execute and deliver a Mortgage, and if the holder of the indebtedness secured by this Lease ("Mortgagee") notifies Landlord of the execution of such Mortgage, and the name and place for service of notices upon such Mortgagee, then and in such event, Landlord hereby agrees for the benefit of Tenant and such Mortgagee from time to time:

(a) That Landlord will give to any Mortgagee simultaneously with service on Tenant a duplicate of any and all notices or demands given by Landlord to Tenant and no such notice to Tenant shall be effective unless a copy is so serviced upon Mortgagee.

(b) Mortgagee shall have the privilege of performing any of Tenant's covenants or of curing any defaults by Tenant or of exercising any election, option or privilege conferred upon Tenant by the terms of this Lease.

(c) Landlord shall not terminate this Lease or Tenant's right of possession for any default of Tenant if, within a period of thirty (30) days after the expiration of the period of time within which Tenant might cure such default, such default is cured or caused to be cured by Mortgagee or, if within a period of thirty (30) days after the expiration of the period of time within which Tenant might commence to eliminate the cause of such default, Mortgagee diligently commences to eliminate the cause of such default.

(d) No liability for the payment of rent or the performance of any of Tenant's covenants and obligations of this Lease shall attach to or be imposed upon any Mortgagee, while not in possession of the Property, all such liability being hereby expressly waived by Landlord.

(e) With exception of those portions of this Lease dealing with rent and term, Landlord shall, if requested by Tenant, not unreasonably refuse to make any clarifications and/or corrections to this Lease, as may be required by Mortgagee.

(f) No provisions of this Lease as may restrict the use of the Property to less than for any lawful purpose, require the Property to be used for a particular purpose, inhibit free assignment or subletting or require or imply specified times of business operation shall be binding upon a Mortgagee in possession or its successors in interest, except Tenant, its parent, subsidiary or affiliated companies.

18. **FIRST RIGHT OF REFUSAL.** Landlord hereby grants to Tenant a first right of refusal to purchase from Landlord the Property. If and when Landlord decides to sell the Property and receives a bona fide offer to purchase from any third party, in writing, prior to accepting said offer, Landlord shall forward said written offer to purchase to Tenant. Tenant is hereby granted thirty (30) days after receipt of notice of such third party written offer to Landlord in which to notify Landlord of Tenant's acceptance of the terms of such third party offer to Landlord by submitting to Landlord, Tenant's written offer in the amount of the third party offeror's purchase price. The sale from Landlord to Tenant shall be consummated by closing within thirty (30) days after the date of Tenant's acceptance notice to Landlord, or such longer time as provided in Landlord's bona fide offer received by such third party. Landlord shall supply to Tenant at closing a title insurance policy in the amount of the purchase price, subject only to taxes, easements and restrictions, highways and legal right-of-way.

19. **DEFAULT.** In the event Tenant shall fail to pay the Rent when due or shall fail to perform any of its other obligations under this Lease, after notice of such default

shall have been given as provided below. Landlord may as its sole and exclusive remedy elect either:

(a)    to re-enter the Property by summary proceedings or similar proceedings and re-let the Property, using its best efforts therefor, and receiving the rent therefrom, applying the same first to the payment of Rent accruing hereunder, the balance, if any, to be paid to Tenant; but, Tenant shall remain liable for the equivalent of the amount of all Rent reserved herein less the receipts of re-letting, if any, and such amount shall be due and payable to Landlord as damages or Rent, as the case may be, on the successive rent days provided above, and Landlord may recover such amount periodically on such successive days:

(b)    to terminate this Lease and to resume possession of the Property wholly discharged from this Lease; or

(c)    demand a late payment fee of Three Hundred Dollars ($300.00) per month for each failure to pay Rent.

Such election shall be made by written notice to Tenant at any time on or before the doing of any act or the commencement of any proceedings to recover possession of the Property by reason of the default then existing and shall be final. If Landlord shall elect to terminate this Lease, all rights and obligations of Tenant relating to the unexpired portion of this Lease shall cease. Within ten (10) days after receipt by Tenant of notice of election by Landlord to terminate this Lease, the parties shall by an instrument in writing, in recordable form, terminate this Lease and Tenant shall surrender and deliver to Landlord the Property, including the building and other improvements, except trade fixtures, signs, equipment and other personal property. Upon any default by Tenant in so doing, Landlord shall have the right to re-enter the Property by summary proceedings or similar proceedings.

Neither bankruptcy, insolvency, nor the appointment of a receiver or trustee shall affect this Lease so long as the obligations of Tenant are performed by Tenant, its successors or assigns.

No default hereunder shall be deemed to have occurred on the part of Tenant until thirty (30) days after written notice of such default shall have been given to Tenant, and Tenant within such time shall have failed to remedy such default. If any default by Tenant, except payment of the Rent, cannot reasonably be cured within thirty (30) days after notice then Tenant shall have additional time as may be reasonably necessary.

20.    **CONDEMNATION.** From and after the Effective Date, Tenant shall have the following rights in the event of a taking of the entire Property or any part thereof, by reason of any exercise of the power of eminent domain, including any transfer in lieu thereof:

(a)    **TOTAL PERMANENT**. In the event of a taking of the entire Property or, in the judgment of Tenant, a substantial portion as would render the balance of the Property not suitable for Tenant's use, this Lease shall terminate upon the date that possession is surrendered to the condemning authority, at which time all rights and obligations between the parties shall cease and Rent and

Ground Lease                                                    Hands On Premium Car Wash, LLC

9

other charges payable by Tenant under this Lease shall be apportioned. The taking of any portion of the building, twenty percent (20%) or more of the then existing parking area, or the loss of the rights of ingress and egress as then established, shall be at Tenant's election, but not exclusively then established, shall be at Tenant's election, but not exclusively considered, such a substantial taking as would render the use of the Property not suitable for Tenant's use. Notwithstanding any provision of this Lease or by operation of law that leasehold improvements may be or shall become the property of Landlord at the termination of this Lease, the loss of the building and other improvements paid for by Tenant, the loss of Tenant's leasehold estate and such additional relief as may be provided by law shall be the basis of Tenant's damages against the condemning authority if a separate claim therefor is allowable under applicable law, or the basis of Tenant's damages to a portion of the total award if only one award is made.

(b)    **PARTIAL PERMANENT.** In the event of a taking of less than the entire Property or, in the judgment of Tenant, less than a substantial portion as would render the balance of the Property not suitable for Tenant's use, Tenant shall be entitled to a reduction of Rent in such amount as shall be just and equitable. In consideration of such reduction of Rent, Tenant waives any claim for damage to or loss of its leasehold estate, all of such award being payable to Landlord, who shall use so much thereof as may be necessary to restore the Property as nearly as possible to its condition immediately prior to the taking. Tenant shall have the option to perform such restoration and Landlord shall upon Tenant's election provide the whole of such award or such portion thereof as may be necessary for Tenant to accomplish the restoration. Notwithstanding any provision of this Lease or by operation of law that leasehold improvements may be or shall become the property of Landlord at the termination of this Lease, the loss of the building or other improvements paid for by Tenant and such additional relief as may be provided by law shall be the basis of Tenant's damages against the condemning authority if a separate claim therefor is allowable under applicable law, or the basis of Tenant's damages to a portion of the total award if only one award is made.

(c)    **TOTAL TEMPORARY.** In the event of a taking of the entire Property or, in the judgment of Tenant, a substantial portion as would render the balance of the Property not suitable for Tenant's use, for a period of one (1) year or less, this Lease shall be suspended or tolled from the time the Property is surrendered to the condemning authority and recommence when possession is restored to Tenant. Tenant shall be entitled to the entire award granted for the fee owner, Landlord and Tenant. In consideration of such entire award, Tenant shall not be entitled to any reduction of Rent or other charges payable by Tenant under this Lease. If such taking shall extend beyond one (1) year, the taking shall, at the option of Tenant, be considered permanent and Tenant shall be entitled to all rights, damages and awards pursuant to Section 20(a) of this Lease.

(d)    **PARTIAL TEMPORARY.** In the event of a taking of less than the entire Property or, in the judgment of Tenant, less than a substantial portion as would render the balance of the Property not suitable for Tenant's use, for a period of one (1) year or less, Tenant shall be entitled to the entire award granted for the fee owner, Landlord and Tenant. In consideration of such

Hands On Premium Car Wash, LLC

Ground Lease

10

entire award, Tenant shall not be entitled to any reduction of Rent or other charges payable by Tenant under this Lease.

(e)  **GENERAL.**  Should Landlord and Tenant be unable to agree as to the division of any singular award or the amount of any reduction of Rents and other charges payable by Tenant under this Lease, such dispute shall be submitted for resolve to the court exercising jurisdiction of the condemnation proceedings, each party bearing its prospective costs for such determination. Landlord shall not agree to any settlement in lieu of condemnation with the condemning authority without Tenant's consent.

Landlord represents and warrants that at the Effective Date it has no actual or constructive knowledge of any proposed condemnation of any part of the Property. In the event that subsequent to the Effective Date, but prior to the Commencement Date, a total or partial condemnation, either permanent or temporary, is proposed by any competent authority, Tenant shall be under no obligation to commence or continue construction of the building and other improvements and rent and other charges, if any, payable by Tenant under this Lease shall abate until such time as it can be ascertained that the Property shall not be affected in Tenant's sole discretion and Tenant shall be entitled to all rights, damages and awards pursuant to the appropriate provisions of this Section 20.

21.  **LITIGATION.**  In the event of litigation between the parties with respect to this Lease, the performance of their respective obligations hereunder or the effect of a termination under this Lease, the losing party shall pay all costs and expenses incurred by the prevailing party in connection with such litigation, including, but not limited to, reasonable attorneys' fees of counsel selected by the prevailing party. Notwithstanding any provision of this Lease to the contrary, the obligations of the parties under this section shall survive termination of this Lease.    Whenever Landlord or Tenant shall be in default of this Lease, and such default shall cause either party to incur any damages or expenses, such damages or expenses so incurred, with legal interest, and including penalties, costs and reasonable attorneys' fees, may be added or deducted from the next accruing rental payment(s) due.

22.  **COMPETITIVE USES.**

(a)  With the exception of the Property leased to Tenant, Landlord covenants that it will not lease, rent or permit to be occupied as Tenant's Intended Use, any premises or real estate owned, controlled, leased or occupied by Landlord, its legal representatives, successors or assigns, not presently occupied as such, within a distance of a five (5) mile radius of the Property.  For purposes of this section, the term "owned" shall also include any indirect ownership as through partnership, land trust, corporations, and the like.

(b)  Landlord does further covenant and agree, that it will not lease, rent or permit to be occupied any premises or real estate within five hundred feet (500') of the Property and owned, controlled, leased or occupied by Landlord, its legal representatives, successors or assigns, not presently occupied as such a store, adult book store, adult theater, adult amusement facility, any facility selling or displaying pornographic materials or having such displays, any use involving the use, storage, disposal or handling of

hazardous materials or underground storage tanks, or any use which creates a nuisance.

(c)    In the event that there is a breach of any of the provisions of this section, Tenant shall have the following rights and remedies, none of which shall be exclusive of the others or any other remedy otherwise available to Tenant:

   i.    Tenant may institute proceedings to enjoin the violation in its name or in the name of Landlord.

   ii.   If such conflicting use continues for a period of thirty (30) days after written notice thereof shall have been given by Tenant to Landlord, Tenant may, at any time thereafter, elect to terminate this Lease, and upon such election, this Lease shall, on the date fixed in the notice of such election, be terminated and Tenant shall be released and discharged of and from any and all further liability hereunder.

   iii.  So long as such condition exists, and Tenant has not elected to terminate this Lease, Tenant's only obligation with respect to rental shall be the payment of one-half (½) the then applicable Rent, so long as such condition shall continue.

   iv.   Tenant may hold Landlord liable for any costs and expenses, including counsel fees, sustained or incurred in connection with any proceedings instituted by Tenant to enforce the provision of this Section, and in the event Landlord does not institute and proceed diligently with suit to enjoin such conflicting use may hold Landlord liable for any and all other damages sustained or to be sustained by reason of Landlord's breach.

23.   **ASSIGNMENT OR TRANSFER BY LANDLORD OR TENANT**      .    No assignment or transfer of this Lease by Landlord shall be binding on Tenant unless the assignee or transferee shall assume and agree to be bound by the terms of this Lease and until notice of assignment or transfer together with an executed copy of such assignment or transfer instrument is received by Tenant. Tenant shall have the right to assign, sublet or transfer any or all of its rights and privileges under this Lease at any time during the term of this Lease or any extensions with Landlord's consent and approval, which shall not be unreasonably withheld or delayed and Landlord shall expressly acknowledge and agree to the release and novation of Tenant's obligations under this Lease.

24.   **NOTICE.** All notices and demands herein required shall be in writing and shall be sent by either (a) United States Certified Mail, return receipt requested, postage prepaid, or (b) national overnight delivery service with return receipt, delivery charge prepaid, to Landlord at Nick and Elaine Karagan 2046 Birchwood Drive Highland, Indiana 46322 and to Tenant at 636 Cambridge Court, No. 2B, Munster, Indiana 46321. Notices sent by United States Certified Mail as set forth above shall be effective three (3) days after the same is deposited with the United States Postal Service, postage prepaid. Notices sent by national overnight courier service shall be effective one (1) day after depositing the same with such courier service, delivery fee prepaid, marked for next day delivery. Either party may change the

address for which notices are given, by providing to the other party such change of address as with any other notice.

25.  **HAZARDOUS SUBSTANCES.**

(a)  **LANDLORD'S REPRESENTATIONS AND WARRANTIES.** Landlord represents and warrants to the best of his knowledge without investigation the following:

i.  The Property does not presently contain and is free from all chemical substances or pollutants known to be hazardous wastes, hazardous substances, hazardous constituents, toxic substances or related materials, whether solid, liquid or gaseous, including but not limited to asbestos, radioactive materials, oil, gasoline, diesel fuel and other hydrocarbons, and any other substances defined as "hazardous wastes", "hazardous substances", "toxic substances", "pollutants", "contaminants", or other similar designations, or any other material, the removal, storage or presence of which is regulated or required and/or the maintenance of which is penalized by the Resources Conservation Recovery Act, 42 U.S.C. §6901, et seq., the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §9601, et seq., the Toxic Substances Control Act, 15 U.S.C. §2601, et seq., the Clean Water Act, 33 U.S.C. §1251, et seq., the Safe Drinking Water Act, 42 U.S.C. §300(f)-300(j) - 10, the Clean Air Act, 42 U.S.C. §7401, et seq., or any other local, state or federal agency, authority or governmental unit (collectively, "Hazardous Substances").

ii.  The Property has not in the past been used for storage, manufacture or sale of Hazardous Substances or for any activity involving Hazardous Substances.

iii.  No Hazardous Substances are located in the vicinity of the Property.

iv.  Landlord has not transported, or caused to be transported, any Hazardous Substances to or from the Property.

v.  Landlord has not received and is not aware of any notification from any federal, state, county or city agency or authority relating to Hazardous Substances, in or near the Property.

(b)  **LANDLORD'S INDEMNITY.** Landlord shall indemnify, defend and hold harmless Tenant from and against any and all liability arising from any and all claims, demands, litigation, or governmental action involving any of the following:

i.  Any breach of the representations and warranties contained in this Section 26.

ii.  The presence or suspected presence of Hazardous Substances on or in the Property, unless such presence is due solely to the acts of

Ground Lease

Hands On Premium Car Wash, LLC

13

Tenant or the acts of any party other than Landlord, its agents and employees, occurring after the Effective Date.

Without limiting the generality of the foregoing, this indemnification shall specifically cover fines, penalties, sums paid in settlement of claims or litigation, fees for attorneys, consultants and experts (to be selected by Tenant) and costs for investigation, clean-up, removal or restoration.

26. **BROKERS' INDEMNITY** . Landlord hereby covenants and warrants that there are no real estate brokers involved in this transaction other than Diversified Commercial Real Estate and Investment Company (a division of Rose Real Estate Inc.) and Landlord hereby agrees to indemnify, defend (with counsel selected by Tenant) and hold Tenant harmless from any and all claims, costs or damages incurred by Tenant resulting from any person or firm claiming to have negotiated, instituted or brought about this Lease other than the foregoing describe broker(s).

27. **APPLICABLE LAW.** This Lease shall be governed by and construed under the laws of the State of Indiana.

28. **COVENANTS.** Landlord represents, covenants and warrants, in addition to any other representations, covenants and warranties contained in this Lease, that (a) Landlord is seized in full fee simple title to the Property and Landlord has the due power and authority to enter into this Lease without the consent or intervention of any other parties; (b) execution of this Lease by Landlord and construction and operation of Tenant's Intended Use on the Property will not violate any law or ordinance or the terms of any agreements that Landlord or its predecessors in title may have with any other parties, including leases, restrictive covenants, exclusives, mortgages, stand still agreements, and cease and desist orders and any by-laws of Landlord; (c) the Property is not subject to any use or occupancy restrictions (except those imposed by applicable zoning laws and regulations), special taxes and assessments; (d) there are no actions, suits or proceedings pending or threatened against, by or affecting Landlord which affect title to the Property or which questions the validity or enforceability of this Lease or of any action taken by Landlord under this Lease, in any court or before any governmental authority, domestic or foreign; and there are no pending, threatened or contemplated condemnation actions involving all or any portion of the Property, (e) there are no leases, including without limitation, billboard leases, or other agreements for use, occupancy or possession presently in force with respect to all or any portion of the Property; (f) the Property is not listed nor proposed for listing on any National Wetlands Inventory maps nor is the Property contained within a suspected "wetland" area; and (g) all information and data furnished by Landlord to Tenant with respect to the Property will be true, correct, complete and not misleading effective as of the Commencement Date. All of the covenants, warranties, representations and agreements herein contained shall survive termination of this Lease and shall run with the land and extend to and be binding upon the heirs, executors, administrators, successors and assigns of the respective parties.

29. **ESTOPPEL CERTIFICATE.** Tenant and Landlord agree at any time and from time to time, upon not less than ten (10) business days' prior written request from the other party, to execute, acknowledge and deliver to the requesting party a statement in writing, in form and content reasonably acceptable to both parties, an estoppel certificate certifying that this Lease is unmodified and in full force and

Ground Lease                                                                 Hands On Premium Car Wash, LLC

14

effect (or if there have been modifications, that the same is in full force and effect as modified and stating the modifications), the dates to which Rent has been paid and certifying that it is not in default (or if a default is alleged, stating the nature of the alleged default), and further certifying such other matters as the requesting party shall require. It is intended that any such statement delivered pursuant to this Section may be relied upon by any prospective purchaser, lender, subtenant, assignee or any entity which is a party to a potential merger, consolidation with or to the acquisition of substantially all of the assets or stock of Landlord or Tenant. In the event either party shall fail to execute and deliver any such instrument within the foregoing time period as requested, such party hereby irrevocably appoints the requesting party as its attorney-in-fact to execute such instrument in its name, it being agreed that such assignment is one coupled with an interest and the statements contained in such instrument shall be deemed to be true and correct and binding on such party, who shall be estopped from denying or contesting the facts contained in such instrument.

30. **TENANT'S CONDUCT OF BUSINESS.** Notwithstanding anything contained in this Lease to the contrary, no term or provision of this Lease shall be construed as creating an obligation for Tenant to open or operate its business in the Property. Tenant shall have the right to remove Tenant's furniture, fixtures, equipment and inventory and cease operations in the Property at any time and from time to time and at Tenant's sole discretion. However, the right to cease to operate its business shall not affect Tenant's obligation to pay all amounts due hereunder and to perform all covenants and obligations hereunder. Furthermore, in no event shall Tenant be liable to Landlord for damages as a result of operating other stores in the area surrounding the Property or any other area, nor shall Tenant be limited or restricted in any way from opening or operating other stores in the area surrounding the Property or any other area.

31. **MISCELLANEOUS.**

(a) This Lease contains the entire agreement between the parties. No rights are conferred upon Landlord until this Lease has been executed by Tenant. Neither Landlord nor Tenant nor any of their agents have made any statement, promises or agreements verbally or in writing in conflict with the terms of this Lease. Any and all representations by either of the parties or their agents made during negotiations prior to execution of this Lease and which representations are not contained in this Lease shall not be binding upon either of the parties.

(b) All terms and words used in this Lease, regardless of the number and gender in which they are used, shall be deemed and construed to include any other number, singular or plural, and any other gender, masculine, feminine or neuter, as the context or sense of this Lease or any portion of this Lease may require, the same as if such words had been fully and properly written in the number and gender.

(c) This Lease may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, but such counterparts together shall constitute but one and the same instrument.

Ground Lease                                                    Hands On Premium Car Wash, LLC

15

(d)     Whenever Tenant may deduct costs from the rent pursuant to any Section of this Lease, such rent may be deducted from the next accruing rental payment(s) due.

(e)     Landlord and Tenant are not and shall not be considered joint venturers nor partners and neither shall have power to bind or obligate the other except as set forth in this Lease.

(f)     In the event Tenant continues to occupy the Property after the last day of the Term, as may have been extended, and Landlord elects to accept rent thereafter, a tenancy from month to month only shall be created.

(g)     Any legal proceedings initiated by reason of an alleged default of this Lease by either Landlord or Tenant must be commenced within one (1) year from the date that such alleged default occurred.

(h)     If any provision of this Lease or the application thereof to any person or circumstances shall, to any extent, be invalid or unenforceable, the remainder of this Lease, or the application of such term or provision to persons whose circumstances are other than those as to which it is held invalid or unenforceable, shall not be affected thereby.

(i)     No modification, alteration or amendment of this Lease shall be binding unless in writing and executed by the parties.

(j)     The head notes to the Sections of this Lease are inserted only as a matter of convenience and for reference, and in no way confine, limit or proscribe the scope or intent of any Section of this Lease, nor in any way affect this Lease.

(k)     This Lease shall be binding upon and inure to the benefit of the parties, their successors and assigns.

(l)     If Tenant is delayed or prevented from performing any of its obligations under this Lease by reason of strike, lockouts, labor troubles, failure of power, riots, insurrection, war, acts of God or any other cause beyond Tenant's control, the period of such delay or such prevention shall be deemed added to the time period herein provided for the performance of any such obligation by Tenant.

(m)     In the event any time period provided for in this Lease expires on a weekend or legal holiday (being defined as any holiday recognized by the United States Postal Service), the time period shall be automatically extended to the next business day.

(n)     This Lease shall be effective as of the date it is signed by all parties hereto (the "Effective Date"). This Lease shall not be binding on either party hereto until it is signed by all parties.

Ground Lease

Hands On Premium Car Wash, LLC

16

*IN WITNESS WHEREOF*, the parties hereto have duly executed this Ground Lease as of the day and year first above written.

Tenant:                                      Landlord:

HANDS ON PREMIUM
CAR WASH. LLC

By: _____

Name: Douglas Miller
Title: President

By: _Peter DiKaragu_____
Name: PETER-N. KARAGAN
Title: POA for Nick KARAGAN
                    ELAINE KARAGAN

August 8, 2007 (4:12pm)    X:\HWE\Hands On Premium 16108\St. John Indiana-1\Documents\Ground Lease Agreement 2007-08-08.wpd

Ground Lease

17

Hands On Premium Car Wash, LLC

## EXHIBIT "A"

### [ATTACH LEGAL DESCRIPTION AND/OR SITE PLAN]

# MEMORANDUM OF LEASE

This Memorandum of Lease is by and between _Nick + Elaine Karacon_, a corporation ("Landlord") and Hands On Premium Car Wash, LLC, an Indiana limited liability company ("Tenant"), pursuant to which Landlord has demised to Tenant, and Tenant has accepted such demise from Landlord, certain real estate defined herein upon the following terms:

Date of Lease: _August 9_, 2007 (the "Effective Date").

Description of Property: See Exhibit A attached hereto (the "Property").

Commencement Date: _As Defined in Contract_

Term: Twenty (20) years from the Commencement Date.

Renewal Option(s): Four (4), five (5) year renewal options.

Exclusive: Tenant has exclusive use rights.

pnk 8-9-07                                                                    ppk 8-9-07

Right of First Refusal and Option to Purchase: Tenant has a right of first refusal and an option to purchase the Property.

The purpose of this Memorandum of Lease is to give record notice of the Lease and Tenant's rights in the Property set forth in the Lease.

IN WITNESS WHEREOF, the parties have executed this Memorandum of Lease as of the dates set forth in their respective acknowledgments.

Tenant:                                                        Landlord:

HANDS ON PREMIUM
CAR WASH, LLC

By: _____

Name: Douglas Miller
Title: President

By: _Peter N. Koracan_

Name: Peter N. Karacan
Title: POA for Nick + Elaine Karacan

## EXHIBIT A

### LEGAL DESCRIPTION OF THE PROPERTY

TAX I.D. NUMBER: _____

Address of Property: _____

## FIRST AMENDMENT TO GROUND LEASE

THIS FIRST AMENDMENT TO GROUND LEASE ("Amendment") effective the 1st day of June, 2020, is by and between **ELAINE KARAGAN** ("Landlord") and **HANDS ON PREMIUM CAR WASH, LLC**, an Indiana limited liability company ("Tenant").

### RECITALS:

**WHEREAS**, Hands On Premium Car Wash, as Tenant, and Nick Karagan and Elaine Karagan, as Landlord, entered into that certain Ground Lease dated August 9, 2007 (the "Lease"), with respect to that certain premises commonly described as 8445 Wicker Avenue, St. John, Indiana (the "Leased Premises");

**WHEREAS**, at the time that the Lease was executed, the Leased Premises were titled to Nick Karagan and Elaine Karagan, as husband and wife;

**WHEREAS**, Nick Karagan is now deceased with Elaine Karagan taking over as the sole title owner of the Leased Premises and the sole Landlord under the Lease; and

**WHEREAS**, Tenant and Landlord have agreed to amend the Lease as hereinafter set forth and to confirm and ratify the Lease in all other respects.

**NOW THEREFORE**, for and in consideration of these premises and other good and valuable considerations, it is agreed as follows:

1.      Recitals Incorporated. The foregoing recitals are hereby incorporated within and made an integral part of this Amendment as if fully set forth herein.

2.      Defined Terms. Capitalized terms utilized in this Amendment but not defined or re-defined herein shall have the meanings attributed to such terms in the Lease.

3.      Amendment to Sections 7(b) and 7(c) of the Lease. Effective as of June 1, 2020, Section 7(b) of the Lease is amended so that the monthly rent installments for the month of June 2020 and all subsequent months shall be paid in advance on June 15, 2020 and on or before the fifteenth (15th) day of each subsequent calendar month. Section 7(c) is further amended by replacing the phrase "on the first day of each and every calendar month" with the amended phrase of "on the fifteenth (15th) day of each and every calendar month".

4.      New Notice Address for Tenant. Section 24 of the Lease is amended by deleting Tenant's address of "636 Cambridge Court, No. 2B, Munster, Indiana 46321" and replacing same with "8445 Wicker Avenue, St. John, Indiana 46373".

5.      Amendment to EXHIBIT "A" of the Lease. Effective as of August 9, 2007, EXHIBIT "A" of the Lease is amended by deleting "[ATTACH LEGAL DESCRIPTION AND/OR SITE PLAN]" and replacing same with the following:

1

1122.003638/Second Amendment to Lease 07.10.20

Lot 2 in Gardenia Gardens, an Addition to the Town of St. John, as per plat thereof, recorded in Plat Book 102 page 6, in the office of the Recorder of Lake County, Indiana.

6.    Amendment to EXHIBIT "A" of the Memorandum of Lease. Effective as of August 9, 2007, EXHIBIT A of the Memorandum of Lease attached to the Lease is amended by

a.    inserting the following after the "LEGAL DESCIPTION OF THE PROPERTY":

Lot 2 in Gardenia Gardens, an Addition to the Town of St. John, as per plat thereof, recorded in Plat Book 102 page 6, in the office of the Recorder of Lake County, Indiana.

b.    inserting "45-11-21-351-019.000-035" on the line after "TAX I.D. NUMBER:"; and

c.    inserting "8445 Wicker Ave., St. John, IN 46373" on the line after "Address of Property:".

7.    Attorneys' fees arising from Tenant's breach of the Lease. Notwithstanding any terms and provisions in the Lease to the contrary, in the event that Tenant breaches any obligation under Lease, including but not limited to Tenant's failure to timely pay rent in accordance with the terms and provisions of this Lease, and such breach lasts more than five (5) business days, upon the passing of such five (5) business day grace period, Tenant shall then be responsible to reimburse Landlord all reasonable attorneys' fees and costs incurred by Landlord relating to the preparation of any notice of default and the resolution of such default. The reasonable attorneys' fees and costs recouped by Landlord pursuant to this Amendment shall be in addition to any and all other costs and expenses that Landlord may recover under Section 21 of the Lease.

8.    Counterparts. This Amendment may be executed in multiple counterparts via facsimile, each of which shall constitute an original, but all of which shall constitute but one instrument. Electronic and/or facsimile signatures of this Amendment shall be deemed original signatures.

9.    Ratification. In the event of any conflict between the terms and provisions of this Amendment and the original terms and provisions of the Lease, the terms and provisions of this Amendment shall prevail. Except as expressly amended hereby, all terms and provisions of the Lease remain in full force and effect and are hereby ratified and reaffirmed by Tenant and Landlord.

2

1122.003638/Second Amendment to Lease 07.10.20

WITNESS the hands and seals of the duly authorized representatives of the undersigned as of the date and year next to each such signature.

LANDLORD:                                      TENANT:

**HANDS ON PREMIUM CAR WASH, LLC**

By:

ELAINE KARAGAN by Peter Karagan          Name: _____
as attorney-in-fact, pursuant to that Power     Title: _____
of Attorney of Nick Karagan and Elaine
Karagan to Peter Karagan dated November
16, 2006 and included as an attachment to
that Affidavit of Peter Karagan recorded
with the Lake County Recorder's Office on
February 22, 2008 as Instrument Number
2008 012749

3

1122.003638/Second Amendment to Lease 07.10.20

WITNESS the hands and seals of the duly authorized representatives of the undersigned as of the date and year next to each such signature.

LANDLORD:

*For ELAINE Karagan (PoA)*

ELAINE KARAGAN by Peter Karagan as attorney-in-fact, pursuant to that Power of Attorney of Nick Karagan and Elaine Karagan to Peter Karagan dated November 16, 2006 and included as an attachment to that Affidavit of Peter Karagan recorded with the Lake County Recorder's Office on February 22, 2008 as Instrument Number 2008 012749

TENANT:

HANDS ON PREMIUM CAR WASH LLC

By: 

Name: *Edward M Miller*
Title: *Vice President of Operations*

1122.003638/Second Amendment to Lease 07.10.20

3



# KORANSKY, BOUWER & PORACKY, P.C.

*Attorneys and Counselors at Law*

425 Joliet Street, Suite 425
Dyer, Indiana 46311

James M. Yannakopoulos
JYannako@KBLegal.net

Telephone: 219.865.6700
Facsimile: 219.865.5839

## NOTICE OF DEFAULT

### VIA CERTIFIED MAIL AND FIRST-CLASS MAIL

July 9, 2024

Hands On Premium Car Wash, LLC
8445 Wicker Avenue
St. John, Indiana 46373

Douglas Miller, Registered Agent
Hands On Premium Car Wash, LLC
8445 Wicker Avenue
St. John, IN 46373

S.C. EXHIBIT ✳
B

✱ S.C. added to
distinguish from
other lettered
exhibits

Old Plank Trail Community Bank, N.A.
3256 Ridge Road
Lansing, IL 60438

First National Bank of Illinois, N.A.
3256 Ridge Road
Lansing, IL 60438

RE:  Landlord:  Nick and Elaine Karagan
     Tenant:    Hands On Premium Car Wash, LLC
     Lender:    First National Bank of Illinois, N.A. and/or Old Plank Trail Community Bank, N.A. as successor in interest to First National Bank of Illinois, N.A.
     Lease:     Ground Lease dated August 9, 2007, and
                First Amendment to Ground Lease dated June 1, 2020
     Property:  8445 Wicker Avenue, St. John, Indiana 46373
     Our File:  1890.005797

To Whom It May Concern:

This firm represents the Landlord, Elaine Karagan, with respect to the above referenced Lease. Landlord has engaged the firm to put the Tenant, Hands On Premium Car Wash LLC, on notice that it is in breach of the Lease. According to the online records of the Lake County Treasurer As of May 10, 2024, the Tenant was to pay the now delinquent amount of Twenty One Thousand Nine Hundred Eighty-one and 62/100 Dollars ($21,981.62). According to the online records of the Lake County Treasurer, such $21,981.62 amount remains past due and it is likely that additional amounts are now owed for the delinquent penalty relating to same. In accordance with Section 12, the Landlord requests that the Tenant provide a receipted tax bill showing a zero balance for the property tax installment that was due on May 10, 2024.

Furthermore, in light of the Tenant's defaults under Section 12 of the Lease, the Landlord also wants to ensure that the Tenant is satisfying its requirements to insure the Property, pursuant to Section 13 of the Lease. Therefore, pursuant to Section 13 of the Lease, Landlord is now requesting a certificate of insurance to confirm that the insurance requirements under the Lease are met. Under Section 13 of the Lease, the Tenant now has thirty (30) days to provide the requested certificate of insurance.

# KORANSKY, BOUWER & PORACKY, P.C.
Attorneys and Counselors at Law

Hands On Premium Car Wash, LLC
July 9, 2024

Within thirty days of this notice, please remit (a) the receipted tax bill showing a zero balance for the property tax installment that was due on May 10, 2024, and (b) a certificate of insurance to confirm that the insurance requirements under the Lease are met to Landlord at the following addresses:

Elaine Karagan
c/o Pete Karagan
1930 Cherrywood Ct.
Munster, IN 46321

with a copy to the undersigned as follows:

James M. Yannakopoulos
Koransky, Bouwer & Poracky, P.C.
425 Joliet St., Ste. 425
Dyer, IN 46311.

This notice shall constitute a 30-day cure notice to Tenant required under Sections 19 and 24 of the Lease and a 60-day cure notice to Lender required under Section 5 of the Non-Disturbance and Attornment Agreement dated February 11, 2008 and recorded with the Lake County Recorder's Office on February 22, 2008 as document number 2008 012753. In the event that either Tenant or Lender fails to cure the current delinquency pursuant to this letter on or before the expiration of the applicable notice period, then Landlord reserves its rights to exercise any and all remedies available under the Lease and Indiana law. Such rights may include, but are not limited to, the filing of a formal complaint with the Courts of Lake County Indiana.

Nothing in this letter shall be construed to amend or waive any of Landlord's rights or remedies under the Lease. Nothing in this letter shall constitute a consent to any action or inaction by the Tenant or any other party, or a waiver of any provision of the Lease, nor a waiver of any default or event of default under Lease. No delay by the Landlord in exercising and enforcing any rights or remedies shall operate as a waiver of any rights or remedies the Landlord may have. Any and all rights and remedies available to the Landlord shall be cumulative and may be exercised separately, successively, or concurrently at the sole discretion of the Landlord. Any future negotiations or discussions with any agent or representative of the Landlord regarding the Lease shall not be binding upon the Landlord unless and until it is in writing and signed by an authorized agent or representative of the Landlord. The terms and provisions of the Lease are and shall remain in full force and effect.

In no event and under no circumstances shall any past or future discussions with the Landlord and/or the Landlord's forbearance from exercising any of its rights or remedies under the Lease (i) cause a modification of the Lease; (ii) establish a custom with respect to the Lease; (iii) operate as a waiver of any existing or future defaults or event of default under the Lease; (iv) entitle Tenant to any other or further notice or demand whatsoever; (v) in any way modify, change, impair, affect, diminish, or release any obligations or liability of Tenant under or pursuant to the Lease; or (vi) waive, limit, or condition the

# KORANSKY, BOUWER & PORACKY, P.C.

*Attorneys and Counselors at Law*

Hands On Premium Car Wash, LLC
July 9, 2024

rights and remedies available to the Landlord under the Lease, all of which rights and remedies are expressly reserved.

Very truly yours,
**KORANSKY, BOUWER & PORACKY, P.C.**

By:   JAMES M. YANNAKOPOULOS
JMY/jp



# KORANSKY, BOUWER & PORACKY, P.C.

*Attorneys and Counselors at Law*

James M. Yannakopoulos
JYannako@KBLegal.net

425 Joliet Street, Suite 425
Dyer, Indiana 46311

Telephone: 219.865.6700
Facsimile: 219.865.5839

## SECOND NOTICE OF SECOND DEFAULT

### VIA CERTIFIED MAIL AND FIRST-CLASS MAIL

August 14, 2024

Hands On Premium Car Wash, LLC
8445 Wicker Avenue
St. John, Indiana 46373

Douglas Miller, Registered Agent
Hands On Premium Car Wash, LLC
8445 Wicker Avenue
St. John, IN 46373

Old Plank Trail Community Bank, N.A.
3256 Ridge Road
Lansing, IL 60438

First National Bank of Illinois, N.A.
3256 Ridge Road
Lansing, IL 60438

RE:  Landlord:  Nick and Elaine Karagan
     Tenant:  Hands On Premium Car Wash, LLC
     Lender:  First National Bank of Illinois, N.A. and/or Old Plank Trail Community Bank, N.A. as successor in interest to First National Bank of Illinois, N.A.
     Lease:  Ground Lease dated August 9, 2007, and
             First Amendment to Ground Lease dated June 1, 2020 (collectively the "Lease")
     Property:  8445 Wicker Avenue, St. John, Indiana 46373
     Our File:  1890.005797

To Whom It May Concern:

This firm represents the Landlord, Elaine Karagan, with respect to the above referenced Lease. Landlord has engaged the firm to put the Tenant, Hands On Premium Car Wash LLC, on notice that it is in breach of the Lease referenced above. Tenant is in breach of the Lease because it has failed to pay the $6,250.00 monthly rent due on July 15, 2024, and Tenant will continue to breach the Lease for all months subsequent if it does not bring all outstanding past due rents current.

Under Section 19 of the Lease, the Tenant now has thirty (30) days to bring current any and all past due rents, including but not limited to the rental payment due on July 15, 2024, together with any and all other monthly rental payments that become due between the date of this notice and the time that the July 15th and any other past due monthly rental payments are brought current.

Within thirty days of this notice, please remit all past due rent to Landlord at the following addresses:

S.C. **EXHIBIT**

**C**

\* S.C. added to distinguish from other lettered exhibits

# KORANSKY, BOUWER & PORACKY, P.C.

*Attorneys and Counselors at Law*

Hands On Premium Car Wash, LLC
August 14, 2024

Elaine Karagan
c/o Pete Karagan
1930 Cherrywood Ct.
Munster, IN 46321

This notice shall constitute a 30-day cure notice to Tenant required under Sections 19 and 24 of the Lease and a 60-day cure notice to Lender required under Section 5 of the Non-Disturbance and Attornment Agreement dated February 11, 2008 and recorded with the Lake County Recorder's Office on February 22, 2008 as document number 2008 012753. In the event that either Tenant or Lender fails to cure the current delinquency pursuant to this letter on or before the expiration of the applicable notice period, then Landlord reserves its rights to exercise any and all remedies available under the Lease and Indiana law. Such rights may include, but are not limited to, the filing of a formal complaint with the Courts of Lake County Indiana.

Nothing in this letter shall be construed to amend or waive any of Landlord's rights or remedies under the Lease. Nothing in this letter shall constitute a consent to any action or inaction by the Tenant or any other party, or a waiver of any provision of the Lease, nor a waiver of any default or event of default under Lease. No delay by the Landlord in exercising and enforcing any rights or remedies shall operate as a waiver of any rights or remedies the Landlord may have. Any and all rights and remedies available to the Landlord shall be cumulative and may be exercised separately, successively, or concurrently at the sole discretion of the Landlord. Any future negotiations or discussions with any agent or representative of the Landlord regarding the Lease shall not be binding upon the Landlord unless and until it is in writing and signed by an authorized agent or representative of the Landlord. The terms and provisions of the Lease are and shall remain in full force and effect.

In no event and under no circumstances shall any past or future discussions with the Landlord and/or the Landlord's forbearance from exercising any of its rights or remedies under the Lease (i) cause a modification of the Lease; (ii) establish a custom with respect to the Lease; (iii) operate as a waiver of any existing or future defaults or event of default under the Lease; (iv) entitle Tenant to any other or further notice or demand whatsoever; (v) in any way modify, change, impair, affect, diminish, or release any obligations or liability of Tenant under or pursuant to the Lease; or (vi) waive, limit, or condition the rights and remedies available to the Landlord under the Lease, all of which rights and remedies are expressly reserved.

Very truly yours,
**KORANSKY, BOUWER & PORACKY, P.C.**

By:      JAMES M. YANNAKOPOULOS
JMY/lp

 **KORANSKY, BOUWER & PORACKY, P.C.**

*Attorneys and Counselors at Law*

James M. Yannakopoulos
JYannako@KBLegal.net

425 Joliet Street, Suite 425
Dyer, Indiana 46311

Telephone: 219.865.6700
Facsimile: 219.865.5839

## NOTICE OF TERMINATION

**VIA UPS OVERNIGHT**

October 15, 2024

Hands On Premium Car Wash, LLC
8445 Wicker Avenue
St. John, Indiana 46373

Douglas Miller, Registered Agent
Hands On Premium Car Wash, LLC
8445 Wicker Avenue
St. John, IN 46373

Old Plank Trail Community Bank, N.A.
3256 Ridge Road
Lansing, IL 60438

First National Bank of Illinois, N.A.
3256 Ridge Road
Lansing, IL 60438

RE:   Landlord:   Nick and Elaine Karagan
      Tenant:     Hands On Premium Car Wash, LLC
      Lender:     First National Bank of Illinois, N.A. and/or Old Plank Trail Community Bank,
                  N.A. as successor in interest to First National Bank of Illinois, N.A.
      Lease:      Ground Lease dated August 9, 2007, and
                  First Amendment to Ground Lease dated June 1, 2020
      Property:   8445 Wicker Avenue, St. John, Indiana 46373
      Our File:   1890.005797

To Whom It May Concern:

This firm represents the Landlord, Elaine Karagan, with respect to the above referenced Lease. Landlord previously engaged the firm to put the Tenant, Hands On Premium Car Wash LLC, on notice that it was in breach of the Lease, because it failed to properly address matters with respect to the outstanding taxes and because it failed to provide a copy of the certificate of insurance. With such defaults continuing to remain outstanding and with the appropriate cure periods having passed, Landlord hereby notifies the Tenant that it is terminating the Lease, pursuant to Section 19(b) of the Lease. The undersigned will then be following up with the Tenant in the coming days to execute the appropriate instruments in writing as required under Paragraph 19.

Very truly yours,
**KORANSKY, BOUWER & PORACKY, P.C.**

By   JAMES M. YANNAKOPOULOS
JMY/lp

S.C.EXHIBIT

D

\* S.C. added to distinguish from other lettered exhibits

STATE OF INDIANA          )
                          ) SS:
COUNTY OF LAKE            )

LAKE SUPERIOR COURT
COMMERCIAL COURT DOCKET CASE
SITTING IN LAKE COUNTY, INDIANA

ELAINE KARAGAN,                    )
              Plaintiff,           )
        v.                         )
HANDS ON PREMIUM CAR WASH, LLC,    )
ET. AL.,                           )
              Defendants.          )

CAUSE NO. 45D01-2412-PL-000761

**Filed in Open Court**

**February 10, 2025**

CLERK LAKE SUPERIOR COURT

MW

### ORDER RESETTING HEARING ON IMMEDIATE POSSESSION AND ORDER TO SHOW CAUSE

As noted in open court during the hearing conducted by the Court on February 7, 2025, in the above referenced case, the Court, having reviewed the Affidavit of Peter Karagan filed by the Plaintiff on February 7, 2025, and noting the Objection to Motion for Hearing on Immediate Possession, hereby schedules a hearing directing the Defendants to appear to controvert said affidavit or to show cause why the Court should not remove the Defendants from the property and put the Plaintiff in possession of the property at issue in this case. Said hearing shall be scheduled for February 18, 2025, at 2:00P.M.

Pursuant to Ind. Code §32-30-3-2, Defendants are advised: (1) Defendants may file supporting affidavits with the Court; (2) Defendants may appear and present supporting testimony at the hearing scheduled herein above; (3) Defendants may file with the Court a written undertaking to stay the delivery of the property under this chapter; (4) The Court may issue a judgment of possession in favor of the Plaintiff if the Defendants fail to appear at the hearing.

SO ORDERED ON ___**February 10, 2025**___

_____
JUDGE, LAKE SUPERIOR COURT

Distribution:
Parties of record and Counsel for Plaintiff to transmit copies of Order to parties that do not receive electronic case filing notices via first-class mail.

**EXHIBIT**

**I**

**COUNTY: 45 – LAKE**

| PARCEL NUMBER 45-11-21-351-019.000-035 | COUNTY PARCEL NUMBER 45-11-21-351-019.000-035 | TAX YEAR 2024 Payable 2025 | DUE DATES SPRING – May 12, 2025 FALL – November 10, 2025 |
|---|---|---|---|
| TAXING UNIT NAME 035-St. John Corp | LEGAL DESCRIPTION Gardenia Gardens Lot 2 | | |

**DATE OF STATEMENT: 04/01/2025.**

| PROPERTY ADDRESS 8445 WICKER AVE ST. JOHN, IN 46373 | |
|---|---|
| PROPERTY TYPE Real Property | TOWNSHIP St John Township |
| ACRES 1.0749 | COUNTY SPECIFIC RATE/CREDIT ALL PTR-17.8114 |

Elaine Karagan
2046 Birchwood LN
Highland, IN 46322

**TOTAL DUE FOR 24 PAY 25: $13,487.79**

| ITEMIZED CHARGES | SPRING TOTAL | FALL TOTAL |
|---|---|---|
| Tax | $5,706.09 | $5,706.09 |
| Delinquent Tax | $0.00 | $0.00 |
| Delinquent Penalty | $0.00 | $0.00 |
| Other Assessment (OA) | $1,895.61 | $180.00 |
| Delinquent OA Tax | $0.00 | $0.00 |
| Delinquent OA Penalty | $0.00 | $0.00 |
| Fees | $0.00 | $0.00 |
| Amount Due | $7,601.70 | $5,886.09 |
| Payment Received | $0.00 | $0.00 |
| Balance Due | $7,601.70 | $5,886.09 |



tabbies
EXHIBIT



**PAID**
PEOPLES BANK
SCHERERVILLE BRANCH

MAY 0 9 2025

✓# 3218

7601.70 CARWASH

FOR YOUR RECORDS

FIRST INSTALLMENT

| Check Number | Date Sent | Amount |
|---|---|---|
|  |  |  |

SECOND INSTALLMENT

| Check Number | Date Sent | Amount |
|---|---|---|
|  |  |  |

**PAID**
PEOPLES BANK
MUNSTER BRANCH

NOV 0 4 2025

✓# 3248

5886.09 CARWASH
2050. HOUSE

tabbles
EXHIBIT
K

Case 25-02013-jra   Doc 19-2   Filed 04/16/26   Page 73 of 93

EXHIBIT

1

*To occupy the following:*

+07

**Building Permit Number:** 2007-0882

**Use:** New Construction                                   **Zoning:** B3(B1)

**Owner of Building:** Hands on Premium Car Wash LLC **Address:** _____

**Address:** 8445 Wicker Av St. John  46373   **Subdivision:** Gardenia Gardens   **Lot:** 02

**Drainage Swales: Individual lots are designed, as per topographical consideration to have drainage swales, that must be in place at the time of occupancy: and must thereafter be maintained by the respective property owner.**

_____

**Building Commissioner of the Town of St. John**            **Water/Sewer Superintendent:**

**Plumbing Inspector:**

_____

**Plan Commission of the Town of St. John:**                **Electrical Inspector:**

**Description of Additional Charge(s):**

| | |
|---|---|
| CO Date of Issuance: | 10/14/2008 |
| Certificate of Occupancy Number: | 2062 |
| CO Receipt Number: | 5512 |
| Final Survey Received Date | |
| CO Receipt Date: | |
| Escrow Released to Clerk | |
| Cost of Certificate of Occupancy: | $10.00 |
| Escrow Check Number | 22292 |
| Number of Reinspection(s): | 0 |
| Escrow Return Date | 1/19/2009 |
| Cost of Reinspection(s): | $25.00 |
| Escrow Amount | $2,000.00 |
| Recycle Bin Fee | $0.00 |
| Escrow Paid By | |
| Permit Receipt Number | 6563 |
| Additional Permit(s) Cost: | $0.00 |
| Permit Receipt Date | 12/3/2007 |
| Renewal of Building Permit Cost: | $0.00 |
| Date Finaled | |
| Total: | $10.00 |

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

HANDS ON PREMIUM CAR          )
WASH, LLC,                     )          CASE NO: 25-20255
    Debtor.                    )

HANDS ON PREMIUM               )
CAR WASH, LLC,                 )
    Plaintiff,                 )
vs.                            )          ADVERSARY NO: 25-02013
ELAINE KARAGAN,                )
    Defendant.                 )

### AFFIDAVIT OF PETER KARAGAN
### IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Peter Karagan, Attorney-in-fact on behalf of Elaine Karagan, pursuant to that certain Power of Attorney of Nick Karagan and Elaine Karagan to Peter Karagan dated November 16, 2006 and included as an attachment to that Affidavit of Peter Karagan recorded with the Lake County Recorder's Office on February 22, 2008 as Instrument Number 2008 012749 ("POA"), a copy of the Affidavit is attached hereto as Exhibit 1 and incorporated herein as if fully set forth herein, and being duly sworn upon oath, states as follows:

1.    I am over eighteen (18) years of age and have personal knowledge of the matters set forth herein. If called upon to do so, I could and would competently testify as to those matters. I am authorized to submit this Affidavit because of the POA.

2.    I am the son of Nick and Elaine Karagan, who were the original owners of the property commonly known as 8445 Wicker Avenue, St. John, Indiana (the "Premises").

3.    Nick Karagan and Elane Karagan, as landlord, entered into a certain commercial Ground Lease, dated August 9, 2007 (the "Gound Lease"), with Defendant Hands on Premium Car Wash, LLC, as tenant ("Tenant").

1

EXHIBIT

tabbles

M

4.    I am familiar with the terms of the Lease and the details of this matter because I have been dealing with matters relating to the Lease, as such term is defined hereinafter, on behalf of my parents.

5.    Nick Karagan passed away on November 19, 2019.

6.    As a result of Nick Karagan's passing, Elaine Karagan became the sole owner of the Premises and the sole landlord under the Lease. (Elaine Karagan is hereinafter referred to as the "Landlord").

7.    Landlord and Tenant are parties to the Ground Lease, which was amended by a First Amendment to Ground Lease dated June 1, 2020 (the Ground Lease and the First Amendment to Ground Lease are hereinafter collectively referred to as the "Lease"). A true and correct copy of the Lease was attached to the simultaneously filed Memorandum of Law in Support of Summary Judgment (the "Memo") as Exhibit A and incorporated herein as if fully set forth herein.

8.    Tenant has breached the Lease on various grounds. Initially by (a) failing to pay real estate taxes, pursuant to the terms of the Lease, and (b) by failing to provide Landlord with a certificate of insurance as required under the Lease.

9.    On July 9, 2024, Landlord caused a first notice of default (the "First Default Notice") to be issued to Tenant, First National Bank of Illinois, N.A. ("First National"), and Old Plank Trail Community Bank N.A. ("Old Plank") (First National and Old Plank are hereinafter collectively referred to as the "Bank"). A true and correct copy of the First Default Notice was attached to the Memo as Exhibit B and incorporated herein as if fully set forth herein.

10.    Thereafter, Tenant failed to pay monthly rent pursuant to the terms of the Lease.

11.    On August 14, 2024, Landlord caused a second notice of default (the "Second Default Notice") to be issued to Tenant and the Bank. A true and correct copy of the Second

2

Default Notice was attached to the Memo as Exhibit C and incorporated herein as if fully set forth herein.

12.    To date, Tenant has failed to timely cure the previously noticed defaults, as set forth in the First and Second Default Notices.

13.    In addition to the previously noticed defaults, Landlord had to pay certain real estate taxes to avoid the Premises going into a tax sale and Landlord discovered that the Tenant had further breached the Lease by allowing certain liens arise against the property in violation of the Lease.

14.    On behalf of the Landlord, on August 23, 2024, and November 12, 2024, I walked into the office of the Lake County Treasurer and paid the delinquent real estate taxes and the upcoming due real estate taxes for the Premises in two installments of $21,981.62 and $6,361.58, respectively. The $21,981.62 first installment amount included $6,561.58 for the 2023 pay 2024 real estate taxes and other charges, and the remaining balance of such installment included delinquent taxes and delinquent penalties.   The $6361.58 amount related to the second installment for the 2023 pay 2024 real estate taxes and other charges. Copies of the receipts that I received from the Lake County Treasurer's office are attached to the Memo as Exhibits D and E, respectively, and incorporated herein as if fully set forth herein.

15.    Due to the ongoing defaults that remained uncured, Landlord exercised her right to terminate the Lease, pursuant to the terms and provisions of the Lease.

16.    On October 15, 2024, Landlord exercised her right to terminate the Lease, pursuant to the terms and provisions of the Lease, and Landlord caused a notice of termination (the "Termination Notice") to be issued to Tenant and the Bank.  A true and correct copy of the

3

Termination Notice was attached to the Memo as Exhibit F and incorporated herein as if fully set forth herein.

17.    Out of an abundance of caution, Landlord sent a second termination notice to the Tenant and Bank (the "Second Termination Notice') on December 16, 2024. A true and accurate copy of the Second Termination Notice is attached to the Memo as Exhibit G and incorporated herein as if fully set forth herein.

18.    The decision to terminate the Lease was the decision of the undersigned acting in accordance with the POA executed by the Landlord based on (a) the terms and provisions of the Lease and (b) Tenant's breach of the Lease Terms, as outlined above, and neither Tenant nor any other third party had any input on Landlord's decision to terminate the Lease.

19.    At this time, Tenant remains in possession of the Premises even though Tenant is not conducting any business operations out of the Premises.

20.    I drive by the Premises on a regular basis and from what I can see the Tenant has not been conducting any business operations out of the Premises since approximately around either the end of May or early June of 2024..

21.    Prior to the above captioned bankruptcy petition being filed, I instructed my attorney to file a Complaint for Immediate Possession and Quiet Title (the "State Complaint") to have the Tenant removed from the Premises. A true and accurate copy of the State Complaint is attached to the Memo as Exhibit H and incorporated herein as if fully set forth herein.

22.    Landlord is unaware of any factual or legal basis to remain on the Premises.

23.    At this time, the Landlord's position is that the Lease was terminated pursuant to the terms and provisions of the Lease, with Landlord having the right to terminate the Lease and resume possession of the Premises discharged of the Lease, pursuant to Section 19.b. of the

4

Lease. Landlord's position is that the Landlord's right to possession of the Premises arose on should have occurred on October 15, 2024, but the Tenants failed to surrender the Premises within ten days after October 15, 2024, and after additional settlement efforts failed between the Landlord and Tenant, Landlord pursued an immediate possession hearing through the state court eviction proceedings initiated by the State Complaint.

24.    On February 10, 2025, the Lake Superior Court scheduled an immediate possession hearing for February 18, 2025, at 2:00PM, pursuant to an Order Resetting Hearing on Immediate Possession and Order to Show Cause. A true and accurate copy of the Order Resetting Hearing on Immediate Possession and Order to Show Cause is attached to the Memo as Exhibit I and incorporated herein as if fully set forth herein.

25.    However, to date Tenant remains in possession of the Premises, because the state court eviction proceedings have been stayed by the automatic stay arising from the above captioned bankruptcy case, and to date Tenant has yet to either surrender possession of the premises, provide any proof of insurance, or attempted to make any rental payment under the Lease.

26.    Because Landlord has terminated the Lease effective as of October 15, 2024, and because Landlord has no prospect of ensuring that the Tenant will pay the real estate taxes for the Premises, I paid the 2024 pay 2025 real estate taxes that totaled $13,487.79 in two installments on May 9, 2025, and on November 4, 2025. A true and accurate copy of the Lake County tax bill and tax that I retrieved from the Lake County Treasurer, along with the stamps from Peoples Bank showing my payment of the 2024 pay 2025 real estate taxes are attached to the Memo as Exhibits J and K, respectively and incorporated herein as if fully set forth herein.

27. Because I was not actively involved in the management of the Premises until after Nick Karagan passed away in 2019, and because to date, I have been unable to locate any document confirming the "Commencement Date," as such date is defined under the Lease, I had my counsel reach out to the Town of St. John to see if there were any public records relating to the issuance of a certificate of occupancy for the Premises, which would constitute substantial completion of Landlord's Work and Tenant's Project, as such terms are used under 7(a)(iv) of the Lease.

28. After my review of the screenshot record attached as attached to the Memo as Exhibit L and incorporated herein as if fully set forth herein, which my counsel received from the Town of St. John Building & Planning Administrator and Town Manager on September 29, 2025, and which shows a certificate of occupancy issuance date of October 14, 2008, I concluded that the Commencement Date under the Lease was October 14, 2008, and it appears that the original twenty year term of the Lease would have expired on October 14, 2028.

29. Therefore, as a result of the Lease terminating on October 15, 2024, in addition to not having to pay for any unpaid real estate taxes, related to the November installment of the 2023 pay 2024 real estate taxes and all installments thereafter, the Landlord's termination of the Lease has also absolved the Tenant of having to pay monthly rent from October 15, 2024, and each month thereafter, at the monthly rental amount of $6,250.00, pursuant to Section 19 of the Lease, which provides that upon termination of the Lease Tenant ceases to be liable for payments to Landlord as such payments would relate to the unexpired potion of the Lease, as set forth on page 9 of the Lease.

30. Even though the Commencement Date of October 14, 2008, may fall beyond the one year period calling for a release and termination of the Lease under Section 7(a) of the

Lease, to my knowledge it appears that the Landlord and Tenant previously waived their right to terminate and release the Lease under such paragraph given the continuous occupancy of the Tenant of the Premises after October 14, 2008 and the Tenant's continuous monthly rental payments and payment of taxes up to and including June 15, 2024.

31.    At this time, Landlord seeks to prevail on its motion for summary judgment so that it may put an end to the pending adversary case, obtain an order for relief from stay and abandonment with respect to the Tenant's possessory interest in the Premises arising from the Tenant's holdover possession of the Premises, so that it may return to the Lake Superior Court and obtain an order of immediate possession with respect to the Premises.

**FURTHER AFFIANT SAYETH NAUGHT.**

Under penalties as provided by law the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief, and as to such matters, the undersigned certified as aforesaid that he verily believes the same to be true.

Dated: April __16__, 2026

_____
Peter Karagan

7

STATE OF _____ )

COUNTY OF _____ )

2008 012749

2008 FEB 22 A 9:18

RECORDER



**EXHIBIT**
**1**

## AFFIDAVIT OF PETER KARAGAN

Peter Karagan, being duly deposed on oath, hereby furnishes this affidavit to First National Bank of Illinois, a national banking association, also known as First National Bank, Small Business Administration - United States of America, Hands-On Premium Car Wash, LLC, Business Development Corporation, Ticor Title Insurance Company, Mel's Kitchen, LLC, Wax and Go Detailing, LLC, Gentle Touch Car Wash, LLC, and states to the best of his knowledge, as follows:

22-12-311-7

1. That the attached instrument is a true copy of the Power of Attorney of Nick Karagan and Elaine Karagan;

2. That the named principals/grantors, Nick Karagan and Elaine Karagan, are alive;

3. That the Power of Attorney was valid when granted and executed;

4. That the relevant powers granted to me as attorney-in-fact have not been altered or terminated;

5. That there is no successor attorney-in-fact, and that I have not failed or ceased to serve, and that I am still empowered to act on behalf of the principals/grantors, Nick Karagan and Elaine Karagan;

6. That the Power of Attorney began on November 16, 2006, and that I am the attorney-in-fact authorized to act under the Power of Attorney.

AFFIANT FURTHER SAYETH NAUGHT.

_____
PETER KARAGAN

**FILED**

FEB 20 2008

PEGGY HOLINGA KATONA
LAKE COUNTY AUDITOR

Before me, the undersigned, a notary in and for said County and State, personally appeared Peter Karagan, on _____, 2008, and acknowledged the execution of this affidavit as his voluntary act.

My commission expires:

_____

_____
Notary Public

Resident of _LAKE_ County _INDIANA_

727-7854

TICOR TITLE INSURANCE
Crown Point, Indiana

001348

PHILIP J. IGNARSKI
Lake County
My Commission Expires
July 5, 2014

Prepared by Peter Karagan

# POWER OF ATTORNEY

## OF

## NICK KARAGAN AND ELAINE KARAGAN

## TO

## PETER KARAGAN

THIS IS TO CERTIFY THAT THIS IS A TRUE AND EXACT COPY OF THE ORIGINAL INSTRUMENT.

TICOR TITLE INSURANCE
11055 BROADWAY SUITE A
CROWN POINT, INDIANA 46307.

*22-12-311-2*

The undersigned hereby nominates, constitutes and appoints Peter Karagan whose address is 1930 Cherrywood Court, Munster, Indiana 46321 as my true and lawful attorney-in-fact (my "Agent") to act for me and in my name, place and stead in all matters affecting my property and interest; will full power of substitution and revocation, hereby ratifying and affirming all that my said Agent or his substitute shall lawfully do or cause to be done by virtue of this Power of Attorney.

Without limiting the generality and plenary scope of the foregoing, I do hereby empower and authorize my said Agent to perform for me and in my name the following:

1.  Banking and Financial Transactions- (a) To open accounts, in my name or on my behalf, in any bank or trust company, savings and loan company, insurance company, credit union, or any other banking or savings institution, and to deposit into such accounts, any money, checks, notes, drafts, acceptances or other evidences or indebtness payable to or belonging to me, including but not being limited to checks or drafts issued by the Treasurer of the United States or any other official, bureau, department or agency of the United States Government or by the Treasurer or similar official of any state, or any other official, bureau, department or agency of any state, municipality or other government body; and to disburse, withdraw or receive from such accounts, all or any part of the balance therein; (b) to make such endorsements and to sign such documents as may be required in connection with deposit into any of such accounts; (c) to sign checks, withdrawals, drafts, receipts or other documents as may be required in connection with disbursements or withdrawal from or receipt of such accounts; and (d) to have access to and to remove any of all of my property contained or held in any safety deposit box.

2.  Motor Vehicles- To sell, lease, maintain, insure, license and re-license any motor vehicle which I may own or in which I may have an interest and to execute and deliver any instruments required so to do.

3.  Tax Matters- (a) To prepare, execute and file on behalf income and other tax returns and pay any amount determined due; (b) to prepare, execute and file on my behalf documents pertaining to real estate and personal property taxes, assessments, and applications for exemptions; and (c) to act on my behalf in tax



TICOR TITLE INSU...
Crown Point, Indiana

matters where it may be necessary to negotiate, compromise and settle tax disputes, including appealing determinations of value assessments and taxes due.

4. Conduct of Business- (a) To manage my property and to conduct my business affairs, including, but not limited to, leasing, managing and maintaining any real or personal property which I may own; (b) to recover, obtain and hold possession of any real estate, monies, goods, chattels, debts, or any other think in which I may have an interest; and (c) to pay, discharge or compromise any of my debts or other obligations.

5. Securities Transactions- (a) To purchase or otherwise acquire, to sell or otherwise dispose of, securities including, but not limited to, stocks, bonds, notes, and other securities or evidences of indebtness, all at such price and on such terms as my attorney-in-fact may determine; (b) to vote any such securities in my name, in person or by proxy; and (c) to receive dividends and other distributions on such securities.

6. Transfer of Interest in Real Estate- To sell, convey, lease, grant and option to purchase, or otherwise transfer, for such consideration and upon such terms as my attorney-in-fact shall deem advisable, including a contract for conditional sale, and also to execute and deliver any deed, sales agreement, lease, contract and any other document(s) in such manner and form as may be necessary or required for my attorney-in-fact to transfer all or any part of any real estate which I now hold, or may hereinafter acquire, and interest.

7. Health Care- (a) To employ or contract with servants, companions or health care providers to care of me; (b) to consent to or refuse health care for me; (c) to admit or release me from a hospital or health care facility; (d) to have access to records including medical records concerning my condition; (e) to make plans for the disposition of my body.

**IN FURTHERANCE OF THESE POWERS** I give my attorney-in-fact power and authority to do for me and in my name those things which such attorney deems expedient to and necessary to effectuate the intent of this instrument, as fully as I could do professionally for myself, reserving unto myself, however, the power to act on my own behalf and also to revoke the powers given in this instrument.

Any act or things lawfully done by my attorney-in-fact under this instrument shall be binding on me and on my heirs, assigns and legal representatives.

Persons to whom this instrument may be delivered may rely on its being in effect and unrevoked unless I shall have executed a proper instrument of revocation and recorded it, or caused it to be recorded, in the records of Lake County Indiana in Crown Point, Indiana. This power shall not be affected by my subsequent disability or incapacity, nor by lapse of time it being my intention that this instrument constitute a durable power of attorney.

The attorney-in-fact represents and warrants that within her knowledge this power is unrevoked and is still in full force and effect upon each and every exercise of the powers herein granted.

_____
Peter Karagan          **Attorney-in-Fact**

Signed this _16TH_ day of November, 2006 before the person named below, as witness, who has duly witnessed my signing of this instrument.


Nick Karagan, Grantor

Grantor's Social Security Number

2046 Birchwood
Highland, Indiana  46322


Elaine Karagan, Grántor

Grantor's Social Security Number

2046 Birchwood
Highland, Indiana  46322


WITNESS TO SIGNING BY GRANTOR


STATE OF     INDIANA
                              )SS:
COUNTY     LAKE     )


Before me, the undersigned, a Notary Public in and for said County and State, this _16th_ day of November, 2006 personally appeared the Grantorsnamed above, and acknowledged the execution of the above instrument to be his voluntary act and deed, for the uses and purposes therein stated.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal the day and year last above written.


George Sidaris
NOTARY PUBLIC


MY COMMISSION EXPIRES _____

RESIDNET OF _LAKE_ County, _____

George Sidaris
Resident Of
Lake County
My Commission Expires:
7/6/2015

"I affirm, under the penalties for perjury, that I have taken reasonable care to redact each Social Security number in this document, unless required by law." Charlene Simko

Charlene Simko

The attorney-in-fact represents and warrants that within her knowledge this power is unrevoked and is still in full force and effect upon each and every exercise of the powers herein granted.

_____
Peter Karagan          **Attorney-in-Fact**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| HANDS ON PREMIUM CAR WASH, LLC, <br> Debtor. | ) ) ) | CASE NO: 25-20255 |
| HANDS ON PREMIUM CAR WASH, LLC, <br> Plaintiff, <br> vs. <br> ELAINE KARAGAN, <br> Defendant. | ) ) ) ) ) ) | ADVERSARY NO: 25-02013 |

## STATEMENT OF MATERIAL FACTS ATTACHED TO DEFENDANTS' MEMORANDUM IN SUPPORT OF SUMMARY JUDGEMENT

Adversary Defendant Elaine Karagan, by counsel, pursuant to N.D. Ind. L.B.R. B-7056-1, attaches this Statement of Material Facts as Exhibit N to her Memorandum in Support of Summary Judgment, and for this Statement of Material Facts, states the following:

1. Nick and Elaine Karagan were the original owners of the property commonly known as 8445 Wicker Avenue, St. John, Indiana (the "Premises"). (Affidavit of Peter Karagran in support of Motion for Summary Judgment ("Karagan Affidavit") ¶ 2)

2. Nick Karagan and Elaine Karagan, as landlord, entered into a certain commercial Ground Lease, dated August 9, 2007 (the "Gound Lease"), with Defendant Hands on Premium Car Wash, LLC, as tenant ("Tenant"). (Karagan Affidavit ¶ 3)

3. Peter Karagran is familiar with the terms of the Lease and the details of this matter because Peter Karagan has been dealing with matters relating to the Lease, as such term is defined hereinafter, on behalf of Nick and Elaine Karagan. (Karagan Affidavit ¶ 4)

4. Nick Karagan passed away on November 19, 2019. (Karagan Affidavit ¶ 5)



5.      As a result of Nick Karagan's passing, Elaine Karagan became the sole owner of the Premises and the sole landlord under the Lease. (Elaine Karagan is hereinafter referred to as the "Landlord"). (Karagan Affidavit ¶ 6)

6.      Landlord and Tenant are parties to the Ground Lease, which was amended by a First Amendment to Ground Lease dated June 1, 2020 (the Ground Lease and the First Amendment to Ground Lease are hereinafter collectively referred to as the "Lease"). A true and correct copy of the Lease was attached to the simultaneously filed Memorandum of Law in Support of Summary Judgment (the "Memo") as Exhibit A and incorporated herein as if fully set forth herein. (Karagan Affidavit ¶ 7)

7.      Tenant has breached the Lease on various grounds. Initially by (a) failing to pay real estate taxes, pursuant to the terms of the Lease, and (b) by failing to provide Landlord with a certificate of insurance as required under the Lease. (Karagan Affidavit ¶ 8)

8.      On July 9, 2024, Landlord caused a first notice of default (the "First Default Notice") to be issued to Tenant, First National Bank of Illinois, N.A. ("First National"), and Old Plank Trail Community Bank N.A. ("Old Plank") (First National and Old Plank are hereinafter collectively referred to as the "Bank"). A true and correct copy of the First Default Notice was attached to the Memo as Exhibit B and incorporated herein as if fully set forth herein. (Karagan Affidavit ¶ 9)

9.      Thereafter, Tenant failed to pay monthly rent pursuant to the terms of the Lease. (Karagan Affidavit ¶ 10)

10.     On August 14, 2024, Landlord caused a second notice of default (the "Second Default Notice") to be issued to Tenant and the Bank. A true and correct copy of the Second

Default Notice was attached to the Memo as Exhibit C and incorporated herein as if fully set forth herein. (Karagan Affidavit ¶ 11)

11.    To date, Tenant has failed to timely cure the previously noticed defaults, as set forth in the First and Second Default Notices. (Karagan Affidavit ¶ 12)

12.    In addition to the previously noticed defaults, Landlord had to pay certain real estate taxes to avoid the Premises going into a tax sale and Landlord discovered that the Tenant had further breached the Lease by allowing certain liens arise against the property in violation of the Lease. (Karagan Affidavit ¶ 13)

13.    On behalf of the Landlord, on August 23, 2024, and November 12, 2024, Peter Karagran walked into the office of the Lake County Treasurer and paid the delinquent real estate taxes and the upcoming due real estate taxes for the Premises in two installments of $21,981.62 and $6,361.58, respectively.  The $21,981.62 first installment amount included $6,561.58 for the 2023 pay 2024 real estate taxes and other charges, and the remaining balance of such installment included delinquent taxes and delinquent penalties.  The $6,361.58 amount related to the second installment for the 2023 pay 2024 real estate taxes and other charges. Copies of the receipts that Peter Karagan received from the Lake County Treasurer's office are attached to the Memo as Exhibits D and E, respectively, and incorporated herein as if fully set forth herein. (Karagan Affidavit ¶ 14)

14.    Due to the ongoing defaults that remained uncured, Landlord exercised her right to terminate the Lease, pursuant to the terms and provisions of the Lease. (Karagan Affidavit ¶ 15)

15.    On October 15, 2024, Landlord exercised her right to terminate the Lease, pursuant to the terms and provisions of the Lease, and Landlord caused a notice of termination (the "Termination Notice") to be issued to Tenant and the Bank.  A true and correct copy of the

Termination Notice was attached to the Memo as Exhibit F and incorporated herein as if fully set forth herein. (Karagan Affidavit ¶ 16)

16.     Out of an abundance of caution, Landlord sent a second termination notice to the Tenant and Bank (the "Second Termination Notice') on December 16, 2024. A true and accurate copy of the Second Termination Notice is attached to the Memo as Exhibit G and incorporated herein as if fully set forth herein. (Karagan Affidavit ¶ 17)

17.     The decision to terminate the Lease was the decision of the Peter Karagan acting in accordance with the POA executed by the Landlord based on (a) the terms and provisions of the Lease and (b) Tenant's breach of the Lease Terms, as outlined above, and neither Tenant nor any other third party had any input on Landlord's decision to terminate the Lease. (Karagan Affidavit ¶ 18)

18.     At this time, Tenant remains in possession of the Premises even though Tenant is not conducting any business operations out of the Premises.  (Karagan Affidavit ¶ 19)

19.     Peter Karagran drives by the Premises on a regular basis and from what he can see the Tenant has not been conducting any business operations out of the Premises since approximately around either the end of May or early June of 2024. (Karagan Affidavit ¶ 20)

20.     Prior to the above captioned bankruptcy petition being filed, Peter Karagarn instructed his attorney to file a Complaint for Immediate Possession and Quiet Title (the "State Complaint") to have the Tenant removed from the Premises.  A true and accurate copy of the State Complaint is attached to the Memo as Exhibit H and incorporated herein as if fully set forth herein. (Karagan Affidavit ¶ 21)

21.     Landlord is unaware of any factual or legal basis to remain on the Premises. (Karagan Affidavit ¶ 22)

22. At this time, the Landlord's position is that the Lease was terminated pursuant to the terms and provisions of the Lease, with Landlord having the right to terminate the Lease and resume possession of the Premises discharged of the Lease, pursuant to Section 19.b. of the Lease. Landlord's position is that the Landlord's right to possession of the Premises arose on should have occurred on October 15, 2024, but the Tenants failed to surrender the Premises within ten days after October 15, 2024, and after additional settlement efforts failed between the Landlord and Tenant, Landlord pursued an immediate possession hearing through the state court eviction proceedings initiated by the State Complaint. (Karagan Affidavit ¶ 23)

23. On February 10, 2025, the Lake Superior Court scheduled an immediate possession hearing for February 18, 2025, at 2:00PM, pursuant to an Order Resetting Hearing on Immediate Possession and Order to Show Cause. A true and accurate copy of the Order Resetting Hearing on Immediate Possession and Order to Show Cause is attached to the Memo as Exhibit I and incorporated herein as if fully set forth herein. (Karagan Affidavit ¶ 24)

24. However, to date Tenant remains in possession of the Premises, because the state court eviction proceedings have been stayed by the automatic stay arising from the above captioned bankruptcy case, and to date Tenant has yet to either surrender possession of the premises, provide any proof of insurance, or attempted to make any rental payment under the Lease. (Karagan Affidavit ¶ 25)

25. Because Landlord has terminated the Lease effective as of October 15, 2024, and because Landlord has no prospect of ensuring that the Tenant will pay the real estate taxes for the Premises, Peter Karagan paid the 2024 pay 2025 real estate taxes that totaled $13,487.79 in two installments on May 9, 2025, and on November 4, 2025. A true and accurate copy of the Lake County tax bill and tax that Peter Karagan retrieved from the Lake County Treasurer, along with

Page 5 of 7

the stamps from Peoples Bank showing his payment of the 2024 pay 2025 real estate taxes are attached to the Memo as Exhibits J and K, respectively and incorporated herein as if fully set forth herein. (Karagan Affidavit ¶ 26)

26.    Because Peter Karagan was not actively involved in the management of the Premises until after Nick Karagan passed away in 2019, and because to date, Peter Karagan has been unable to locate any document confirming the "Commencement Date," as such date is defined under the Lease, Peter Karagan had his counsel reach out to the Town of St. John to see if there were any public records relating to the issuance of a certificate of occupancy for the Premises, which would constitute substantial completion of Landlord's Work and Tenant's Project, as such terms are used under 7(a)(iv) of the Lease.  (Karagan Affidavit ¶ 27)

27.    After Peter Karagan's review of the screenshot record attached as attached to the Memo as Exhibit L and incorporated herein as if fully set forth herein, which Peter Karagan's counsel received from the Town of St. John Building & Planning Administrator and Town Manager on September 29, 2025, and which shows a certificate of occupancy issuance date of October 14, 2008, Peter Karagan concluded that the Commencement Date under the Lease was October 14, 2008, and it appears that the original twenty year term of the Lease would have expired on October 14, 2028. (Karagan Affidavit ¶ 28)

28.    Therefore, as a result of the Lease terminating on October 15, 2024, in addition to not having to pay for any unpaid real estate taxes, related to the November installment of the 2023 pay 2024 real estate taxes and all installments thereafter, the Landlord's termination of the Lease has also absolved the Tenant of having to pay monthly rent from October 15, 2024, and each month thereafter, at the monthly rental amount of $6,250.00, pursuant to Section 19 of the Lease, which provides that upon termination of the Lease Tenant ceases to be liable for payments to Landlord

Page 6 of 7

as such payments would relate to the unexpired potion of the Lease, as set forth on page 9 of the Lease. (Karagan Affidavit ¶ 29)

29.    Even though the Commencement Date of October 14, 2008, may fall beyond the one year period calling for a release and termination of the Lease under Section 7(a) of the Lease, to the knowledge of Peter Karagan it appears that the Landlord and Tenant previously waived their right to terminate and release the Lease under such paragraph given the continuous occupancy of the Tenant of the Premises after October 14, 2008 and the Tenant's continuous monthly rental payments and payment of taxes up to and including June 15, 2024. (Karagan Affidavit ¶ 30)

30.    At this time, Landlord seeks to prevail on its motion for summary judgment so that it may put an end to the pending adversary case, obtain an order for relief from stay and abandonment with respect to the Tenant's possessory interest in the Premises arising from the Tenant's holdover possession of the Premises, so that it may return to the Lake Superior Court and obtain an order of immediate possession with respect to the Premises. (Karagan Affidavit ¶ 31)